**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MALIK ELAWAD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08cv38-MHT |
| | ) | (CR No. 3:05-cr-00121-MHT-CSC) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**UNITED STATES'S RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America ("the Government") by and through its attorneys, Leura G. Canary, United States Attorney, and Sandra J. Stewart, Assistant United States Attorney, and in compliance with this Court's January 22, 2008 order, and February 15, 2008 order granting the Government an extension of time until March 6, 2008 to file a response, responds to Petitioner Malik Elawad's Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody, as follows:

**I. PROCEDURAL HISTORY AND RELEVANT FACTS**

On May 25, 2005, a grand jury for the Middle District of Alabama returned a two-count indictment against Petitioner Malik Elawad ("Elawad") charging him with bank robbery and using, carrying, and possessing a firearm in furtherance of a crime of violence, and discharging that firearm during that crime of violence. *See* GX A (Doc.8)[1], a copy of the indictment in this case, attached to this response. More specifically, count one of the indictment charged that, on or

---

[1]References to "Doc." are to the docket entries and documents in the criminal record in this case, criminal case number 3:05-cr-00121-MHT-CSC.

about May 2, 2005, in Russell County, in the Middle District of Alabama, Malik Elawad, by force, violence, and intimidation, took from the person and presence of another approximately $10,848, the exact amount being unknown to the grand jury, belonging to, and in the care, custody, control, management, and possession of Regions Bank, located at 3548 Highway 280/431 North, Phenix City, Alabama, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, assaulted and put in jeopardy the life of another person by the use of a dangerous weapon, in violation of 18 U.S.C. § 2113(a) and (d). *See* GX A at 1. Count two of the indictment charged that, on or about May 2, 2005, in Russell County, within the Middle District of Alabama, Malik Elawad, while aiding and abetting Morgan Chigawa, knowingly used and carried a firearm during and in relation to, and possessed a firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, namely bank robbery as charged in count one of his indictment, and during the course of committing the bank robbery offense, the firearm was discharged, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. *Id*. at 1-2. At his arraignment on June 8, 2005, Elawad initially pleaded not guilty to both counts in his indictment. *See* Doc. 14.

Subsequently, Elawad, represented by counsel, federal defenders Christine A. Freeman and Patricia Vanessa Kemp (Docs. 6 & 20), entered into a plea agreement with the Government. *See* GX B (Doc. 23), a copy of the plea agreement in this case, attached to this response. In exchange for Elawad's pleas of guilty to counts one and two of his indictment, the Government agreed that: (1) a two-level reduction in the applicable offense level was appropriate pursuant to

U.S.S.G.[2] § 3E1.1(a) for Elawad's acceptance of responsibility and that, if Elawad otherwise qualified for the third level reduction pursuant to U.S.S.G. § 3E1.1(b), the Government would move for that third-level reduction at sentencing; (2) Elawad was entitled to a minor role reduction of two levels, pursuant to U.S.S.G. § 3B1.12(b); (3) no enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(A) was applicable in the case, because Elawad was being sentenced for discharging a firearm pursuant to 18 U.S.C. § 924(c)(1)(A)(iii); (4) a sentence at the low end of the applicable Sentencing Guidelines range was appropriate, including the minimum sentence pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), i.e. 10 years; (5) to the extent the Court had the authority, to recommend that Elawad's federal sentence in this matter run concurrent with any sentence imposed by the State of Georgia for offenses related to Elawad's conduct in the instant matter; and (6) no cross-referencing provision under U.S.S.G. § 1B1.5 applied in the matter. *See* GX B at 3-4.

In addition to pleading guilty to counts one and two of his indictment, Elawad also agreed in the plea agreement:  (1) to not commit any other federal, state, or local offense while awaiting sentencing, whether or not the offense was charged or chargeable; (2) that the amount of loss for which he was criminally liable, and for which he should be sentenced, was greater than $10,000, and that therefore a one-level increase to his offense level was applicable pursuant to U.S.S.G. § 2B3.1(b)(7)(B); (3) that a two-level increase to his offense level was applicable under U.S.S.G. § 2B3.1(b)(1) because the property taken during the robbery was the property of a financial

---

[2]"U.S.S.G." is a reference to the United States Sentencing Guidelines, specifically, in this case, it is to the 2005 version of the United States Sentencing Guidelines Manual, which was the version of the Guidelines used in determining the Sentencing Guidelines range applicable in this case.

institution; (4) that a four-level increase to his offense level was applicable under U.S.S.G. § 2B3.1(b)(3)(B) because a law enforcement officer sustained serious bodily injury as a result of Elawad's and his accomplice's escape from the bank robbery in this case; (5) that the law enforcement officer sustained serious bodily injury as a result of Elawad's and his accomplice's escape from the bank robbery in this case; (6) that the accomplice in this matter actually shot a police officer and that Elawad did not fire any shot at any police officer, which fact was taken into consideration in the Government's agreement that Elawad was entitled to a minor role reduction under U.S.S.G. § 3B1.2(b); (7) that although the United States Sentencing Guidelines were merely advisory, Elawad agreed to be sentenced in accordance with those Guidelines; and (8) that the facts used to determine Elawad's Sentencing Guidelines offense level and sentence would be found by the Court at sentencing by a preponderance of the evidence and that the Court could consider any reliable evidence, including hearsay, in determining the facts. *Id.* at 4-5. In addition, Elawad agreed to waive certain appellate rights, as follows:

> . . . Defendant specifically waives the right to appeal the sentence on the grounds that the sentencing guidelines are in any respect unconstitutional, or that any fact found by the Court for sentencing was not alleged in the Indictment, admitted by the Defendant, found by a jury, or found beyond a reasonable doubt. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct.
>
> Notwithstanding the above, the defendant reserves the right to file a direct appeal of an upward departure from the applicable Guidelines range which the sentencing court specifies at the time of sentencing as having been imposed pursuant to either U.S.S.G. § 4A1.3 (from criminal history category) or § 5K2.0 (from offense level). The defendant understands and agrees that this waiver as to all other Guidelines findings would still be in force and effect notwithstanding the appealability of an upward departure. Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any

4

fact affecting Defendant's sentence.

*Id*. at 6.

The following factual basis for Elawad's plea was also contained in the plea agreement:

> 4. The defendant admits the allegations charged in Counts 1 and 2, and understands that the nature of the charge to which the plea is offered involves proof as to Counts 1 and 2, that on or about May 2, 2005, in Russell County, Alabama, the defendant, and Morgan Chigawa, by force, violence, and intimidation, took from the person and presence of another, approximately $10,848, belonging to and in the care, custody, control, management, and possession of Regions Bank, located at 3548 Highway 280/431 North, Phenix City, Alabama, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, Morgan Chigawa assaulted and put in jeopardy the life of another person by the use of a dangerous weapon, by discharging a firearm, during in [sic.] relation to a crime of violence, the bank robbery, all in violation of Title 18, United States Code, Sections 2113(a)(d), 924(c)(1)(A)(iii), and 2.

*Id*. at 5. In signing the plea agreement, Elawad specifically acknowledged and swore "under penalty of perjury that the facts in the 'factual basis' paragraph above [were] true and correct.... ." *Id*. at 11.

A change of plea hearing was held before a magistrate judge, pursuant to Elawad's consent (Doc. 22), on February 6, 2006. *See* GX C, a copy of the February 6, 2006 change of plea hearing, attached to this response. During that hearing, the magistrate judge reviewed the plea agreement and its terms with Elawad, and determined that he understood the terms of the agreement. *See* GX C at 10. She explained to Elawad the statutory maximum and minimum penalties applicable in his case. *Id*. at 11. She also noted that Elawad had given up certain appellate rights in his plea agreement and she asked him if he understood that he was doing so, and he replied that he did. *Id*. at 12. She reviewed the elements of Elawad's offense, and when asked if he understood what the Government would have to prove at a trial, he stated he

understood. *Id*. at 13-15. The magistrate judge also explained to Elawad that he was giving up certain rights by pleading guilty, and he acknowledged he understood that he was doing so. *Id*. at 12-13.

The district court also elicited from Elawad a factual basis for his plea, through questioning by his attorney as follows:

> MS. KEMP [DEFENSE COUNSEL]: Mr. Elawad, on May 2nd, 2005, in Russell County, did you and Morgan – were you and Morgan Chigawa present?
>
> THE DEFENDANT: Yes, we were.
>
> MS. KEMP: And did you and Morgan Chigawa, by force or intimidation, take $10,000 from the Regions Bank?
>
> THE DEFENDANT: Yes, we did.
>
> MS. KEMP: And was that Regions Bank located in Phenix City, Alabama?
>
> THE DEFENDANT: Yes, it was.
>
> MS. KEMP: And in committing that offense, did Morgan Chigawa discharge a firearm?
>
> THE DEFENDANT: Yes, he did.
>
> MS. KEMP: And was that – to your knowledge, do you have any reason to believe that that bank was not insured by the FDIC?
>
> THE DEFENDANT: No.
>
> THE COURT: Is the United States satisfied?
>
> MR. BROWN [AUSA]: Yes, Your Honor. I think it was clear that the $10,000 – $10,000 plus was money that belonged to the bank and not the patrons of the bank.
>
> THE COURT: You weren't given $10,848 as a gift by anybody at Regions Bank, were you, Mr. Elawad?

6

THE DEFENDANT:  No, ma'am.

THE COURT:  All right.  You and Mr. Morgan Chigawa used force or intimidation to actually get somebody there to give up the money that belonged to this federally insured institution?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  In the process, Mr. Chigawa discharged a dangerous weapon.

THE DEFENDANT:  Yes, he did.

*Id*. at 15-16.  At the conclusion of the change of plea hearing, the magistrate judge found that

Elawad was "fully competent and capable of entering an informed plea; that [he was] aware of

the nature of the charges and the consequences of the plea; and that [his] plea of guilty [was] a

knowing plea, it's a voluntary plea, and it is a plea that is supported by an independent basis in

fact which contains each of the essential elements of the offense charged in count one and the

offense charged in count two of the indictment.  *Id*. at 17.  The court then accepted Elawad's

guilty plea.  *Id*.

Elawad's case was then set for sentencing.  Before sentencing, counsel for Elawad filed a

number of documents with the Court in preparation for the sentencing hearing.  Counsel filed a

Forensic Expert Report by Dr. Marianne Rosenzweig, under seal, with the Court (Doc. 36); a

Notice of Exhibits, along with copies of those 27 exhibits, for the Court's consideration in

sentencing (Doc. 39)[3]; a Notice of Filing Of Additional Exhibit In Support Of Sentencing

Position, the additional exhibit being an Affidavit from Sudanese Culture Expert Osman Fadl,

---

[3]Due to the volume of exhibits, the Government has not attached that notice and exhibits to this response.  Those exhibits are not essential to the resolution of any issue before the Court, but the notice and documents demonstrate counsel's efforts with regard to the presentation of mitigation in this case.

*see* GX D (Doc. 44), a copy of the notice of additional exhibit along with the exhibit, the

affidavit of Osman Fadl, attached to this response; a Notice of Filing Psychiatric Evaluation,

along with the psychiatric evaluation, which was filed under seal (Doc. 43); and Defendant's

Memorandum In Support Of Sentencing Position, *see* GX E (Doc. 45), a copy of Elawad's

sentencing memorandum, attached to this response.

In the sentencing memorandum, counsel for Elawad urged the Court to sentence Elawad

to no more than 14 years in prison, a sentence counsel deemed reasonable based on Elawad's

background, character, and conduct. *See* GX E at 4. Among many other matters argued by

counsel in mitigation, counsel argued that Elawad acted under the direction and influence of

Morgan Chigawa, his cohort in the instant offense, who planned the bank robbery and

participated in it with Elawad, and who was killed by police officers while being apprehended for

the instant offense. *Id*. at 9-10. Counsel pointed out that Elawad was afraid of Chigawa, who

was aggressive and dangerous. *Id.* at 12-14. Counsel also argued that Elawad was using alcohol

and smoking marijuana heavily and that he became involved in the bank robbery as a result of

that substance abuse. *Id*. at 10. She also argued that, according to mental health experts retained

by her, events in Elawad's background led to depression, feelings of alienation, and questions of

masculinity and passivity, leading to substance abuse. *Id*. at 10-11, 12. Counsel also pointed out

that Elawad's participation in the robbery was "the antitheses to his otherwise law abiding life";

his participation in the robbery was aberrant behavior for him. *Id*. at 6-9, 10, 15.

After making the mitigation arguments to the court, counsel then asked the court to

downwardly depart under the Sentencing Guidelines pursuant to U.S.S.G. § 5K2.0. *Id*. at 15-16.

The downward departure request was based on the atypical behavior depicted by Elawad in

participating in the bank robbery; the fact that he might be subjected to rape in federal prisons; and his total lack of a prior criminal history. *Id*. Counsel for Elawad also filed Defendant's Motion For Downward Departure, which was based on all of the factors outlined in the sentencing memorandum. *See* GX F (Doc. 46), a copy of Defendant's Motion For Downward Departure, attached to this response.

After a presentence report was prepared, objections were filed, and a revised presentence report was filed (Doc. 54), a sentencing hearing was held for Elawad on January 18 and 19, 2007. *See* GX G (Doc. 55) and GX H (Doc. 56), copies of the January 18th and January 19th sentencing hearings, respectively, attached to this response. At that hearing, the Court first ascertained the terms of the guilty plea, and the statutory minimum sentence on count two of the indictment was discussed at length. *See* GX G at 2-18. The Court then accepted the plea agreement. *Id*. at 18.

Next, the Court heard from defense counsel on the motion for a downward departure under U.S.S.G. § 5K2.0. *Id*. at 18-28. During her argument, counsel argued that Elawad's behavior on the occasion of the bank robbery was atypical of him and was the antithesis of his life before that time. *Id*. at 18-28. She also seemed to be arguing that Elawad acted under coercion and duress in committing the crime because of his fear of Morgan Chigawa, his cultural background, and his depression and substance abuse. *Id*. at 18-28. She also argued he had suffered sexual abuse as a child and suffered from depression and other mental problems as a result. *Id*. at 19. Finally, she argued that Elawad deserved credit for attempting to turn himself in to authorities after initially fleeing, and that he surrendered peacefully. *Id*. at 25-26. In making her arguments to the Court, counsel for Elawad referred to the many exhibits she had filed with

the Court in support of those arguments.  *Id*. at 18-28.

After adjourning the sentencing hearing until the next day and eliciting law from defense counsel on Elawad's motion for a downward departure, the Court found that "while it ha[d] the authority to depart under five K two point zero, as well as based on duress, the circumstances [did] not warrant such."  *See* GX H at 2.  The Court then denied the motion for a downward departure under the Sentencing Guidelines, heard from Elawad, and proceeded to pronounce sentence.  *Id*.

The Court found that the offense level in the case was 22 and the criminal history category was I, resulting in a Sentencing Guidelines range of from 41 to 51 months in prison, a supervised release period of from three to five years, and a fine range of from $7500 to $75,000. *Id*. at 6.  It then sentenced Elawad to 41 months on count one of his indictment and to 120 months on count two of the indictment (the mandatory minimum sentence), the sentences to be served consecutively, resulting in a total sentence of incarceration of 161 months.  *Id*. at 6-7.  The Court also ordered that Elawad be placed on supervised release on his release from prison for a period of three years, subject to mandatory, standard, and special conditions; that he pay a special assessment feel of $200; and that he pay restitution to Regions Financial Corporation in the amount of $1796.66.  *Id*. at 7-8.  Imposition of a fine was waived.  *Id*. at 8.

Before the Court pronounced the sentence, there was an off-the-record bench conference with counsel for both parties being present.  *Id*.  Apparently, Elawad was not present at that bench conference.  *Id*.

A final judgment in this case was entered on January 23, 2007.  *See* GX I (Doc. 51), a copy of the final judgment in this case, attached to this response.   Elawad did not directly appeal

his conviction and sentence in this case, as he had waived that right in his plea agreement.  He

filed the instant § 2255 motion on January 14, 2008.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

In his § 2255 motion, Elawad appears to raise the following claims for relief:

1.  His counsel was ineffective for failing to file an appeal based on the sentence imposed.  (Ground One of the § 2255 motion)

2.  His counsel was ineffective for participating in an in-chambers discussion without his presence.  (Ground One of the § 2255 motion)

3.  The Court violated the rule prohibiting judicial involvement in sentencing negotiations when it held an in-chambers discussion during the sentencing hearing at which Elawad was not present.  (Ground Two of the § 2255 motion)

4.  The Court violated his right to be present at all critical stages of his trial and sentencing when it held an in-chambers discussion during the sentencing hearing without his presence.  (Ground Two of the § 2255 motion)

5.  His plea was not knowingly, intelligently, and voluntarily entered because he had no knowledge of what was discussed in-chambers outside his presence at the sentencing hearing.  (Ground Two of the § 2255 motion)

6.  His counsel was ineffective because she failed to present and properly argue mitigating circumstances for a downward departure, including (a) coercion and duress; (b) Elawad's personal psychological problems that impaired his judgment and made him more easily manipulated; (c) aberrant behavior; and (d) "other matters under § 5K2.0."  (Grounds One and Three of the § 2255 motion)

7.  His counsel was ineffective because she failed to attack the defective indictment in this case to which Elawad pled guilty.  (Ground Four of the § 2255 motion)

8.  His plea to the indictment was not knowing, intelligent, and voluntary because he was charged and sentenced in count two of the indictment with aiding and abetting the use and carrying of a firearm in furtherance of the bank robbery, but the indictment failed to charge him with aiding and

abetting under 18 U.S.C. § 2.  (Ground Four of the § 2255 motion)

9.    The indictment in his case was defective because it failed to allege a crime for which Elawad could be convicted, such defect being a jurisdictional one.  (Ground Four of the § 2255 motion)

10.    His plea agreement was not knowing and voluntary because the Court failed to advise Elawad of the mandatory minimum sentence applicable under count two of his indictment.  (Ground Five of the § 2255 motion)

11.    His counsel was ineffective at the plea hearing and on appeal because she failed to bring to the Court's attention its failure to advise Elawad of the mandatory minimum sentence applicable under count two of his indictment.  (Ground Five of the § 2255 motion)

12.    His counsel was ineffective for failing to challenge the four-level enhancement to his offense level under U.S.S.G. § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer by Elawad's cohort, Morgan Chigawa, during their flight from the bank robbery.  (Ground Six of the § 2255 motion)

13.    Application of the four-level enhancement under U.S.S.G. § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer violated *Booker*[4] where those facts were not charged in the indictment.  (Ground Six of the § 2255 motion)

14.    The facts in this case did not support application of § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer. (Ground Six of the § 2255 motion)

15.    His sentence was imposed in violation of Rules 11 and 32 of the Federal Rules of Criminal Procedure because he was sentenced on the basis of inaccurate information.  (Ground Seven of the § 2255 motion)

16.    His counsel was ineffective for failing to challenge the Government's charges against Elawad where there was no evidence that the bank involved in the bank robbery was federally insured so as to make the offense in the case a federal crime.  (Ground Eight of the § 2255 motion)

17.    The failure of the Government to establish that the bank involved in the bank robbery in this case was federally insured was a jurisdictional defect

---

[4]*United States v. Booker*, 543 U.S. 220 (2005).

that stripped the Court of jurisdiction in this case.  (Ground Eight of the § 2255 motion)

For the reasons that follow, Elawad is not entitled to relief on any of his claims.

### III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**     **Elawad Has Met The One-Year Statute of Limitations Under 28 U.S.C. § 2255.**

Elawad has filed his § 2255 motion in a timely manner under paragraph six of 28 U.S.C.

§ 2255, which provides a one-year period of time to seek relief under the rule.  Section 2255

states that a motion be filed within one year from

> (1)  the date on which the judgment of conviction becomes final;

> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution and laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.  The relevant date for purposes of Elawad's § 2255 motion is paragraph

(1), the date on which the judgment of conviction became final.

The final judgment in Elawad's criminal case was entered on January 23, 2007.  *See* GX I

(Doc. 51).  He did not appeal his conviction or sentence to the United States Court of Appeals for

the Eleventh Circuit because he waived such right as a part of his binding plea agreement.  His

sentence became final when the time for filing an appeal to the Eleventh Circuit expired.

Although not specifically addressing the application of the statute of limitations to the 10-day

notice of appeal requirement in a holding in a published opinion, the Eleventh Circuit has held

that a judgment of conviction becomes final for someone who appeals to an appellate court when

the time for seeking certiorari review in the Supreme Court expires. *See Kaufman v. United

States*, 282 F.3d 1336, 1337-39 (11th Cir. 2002). Likewise, a judgment of conviction becomes

final for someone who does not appeal when the time for seeking that appeal expires. *See*, *e.g.*,

*Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (citing Fed.R.App. P. 4(b)(1),

judgment became final ten days after it was entered where defendant did not file appeal);

*Ramirez v. United States*, No. 05-10010, 2005 WL 1706142, at *1 (11th Cir. July 22, 2005)

(unpub.). Elawad had 10 days from the January 23, 2007 entry of judgment by this Court to seek

review by the Eleventh Circuit, *see* Fed. R. App. P. 4(b)(1)(A)(i); his conviction and sentence

became final, therefore, on February 2, 2007. Under § 2255, Elawad then had until February 2,

2008 – one year after February 2, 2007 – to file his motion. He filed the instant motion on

January 14, 2008. It is, therefore, timely under the limitation period in § 2255 ¶ 6(1).

**B.**    **All Of Elawad's Claims For Relief, Except His Ineffective Assistance Of
Counsel Claims, Are Barred Because He Waived His Right To Seek Such
Relief Under 28 U.S.C. § 2255 When He Entered His Guilty Plea.**

Elawad agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255 when he

entered into his guilty plea agreement on February 6, 2006. *See* Attachment B at 6. Specifically,

Elawad agreed:

> . . . Defendant specifically waives the right to appeal the sentence on the grounds
> that the sentencing guidelines are in any respect unconstitutional, or that any fact
> found by the Court for sentencing was not alleged in the Indictment, admitted by
> the Defendant, found by a jury, or found beyond a reasonable doubt. Defendant
> further expressly waives the right to appeal the conviction and sentence on any
> other ground and waives the right to attack the sentence in any post-conviction
> proceeding. This waiver does not include the right to appeal on the grounds of

14

ineffective assistance of counsel and prosecutorial misconduct.

        Notwithstanding the above, the defendant reserves the right to file a direct appeal of an upward departure from the applicable Guidelines range which the sentencing court specifies at the time of sentencing as having been imposed pursuant to either U.S.S.G. § 4A1.3 (from criminal history category) or § 5K2.0 (from offense level).  The defendant understands and agrees that this waiver as to all other Guidelines findings would still be in force and effect notwithstanding the appealability of an upward departure.  Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any fact affecting Defendant's sentence.

*Id.*  Elawad's signature on his plea agreement indicates he understood the entire agreement, including the waiver of his right to seek post-conviction relief.  *Id.* at 11.  He also indicated at his guilty plea hearing that he understood he was waiving his right to appeal.  *See* Attachment C at 12.  The only exceptions to Elawad's waiver were that Elawad could appeal based on ineffective assistance of counsel, prosecutorial misconduct, and any upward departure in sentencing.  *See* Attachment B at 6.  Only Elawad's ineffective assistance of counsel claims are properly raised in this § 2255 motion under the terms of his plea agreement.

        The Eleventh Circuit views Elawad's waiver of his right to seek relief under § 2255 as a contract between the United States and a criminal defendant.  *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).  It has been held that "a waiver of the right to seek federal habeas review must be 'an intentional relinquishment or abandonment of a known right,' the right to federal habeas review."  *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998).  Similarly, waiver of the right to seek § 2255 relief must consist of an intentional abandonment of that right.  The record in this case demonstrates that the Court ascertained that Elawad's assent to the terms of his plea agreement was knowing and voluntary.  *See* GX C at 17.  Therefore, all but the claims reserved – the ineffective assistance of counsel claims – are procedurally barred from review by

this Court because Elawad has waived his right to raise all of his other claims.

**C.**    **Claims 3, 4, 5, 8, 9, 10, 13, 14, 15, and 17 Could Have Been Raised On Direct Appeal, But For Elawad's Waiver Of His Right To Appeal, But They Were Not, Therefore They Are Procedurally Defaulted And Not Properly Reviewed In This § 2255 Proceeding.**

In his §2255 motion, Elawad raises the following substantive claims for relief:

3.    The Court violated the rule prohibiting judicial involvement in sentencing negotiations when it held an in-chambers discussion during the sentencing hearing at which Elawad was not present.  (Ground Two of the § 2255 motion)

4.    The Court violated his right to be present at all critical stages of his trial and sentencing when it held an in-chambers discussion during the sentencing hearing without his presence.  (Ground Two of the § 2255 motion)

5.    His plea was not knowingly, intelligently, and voluntarily entered because he had no knowledge of what was discussed in-chambers outside his presence at the sentencing hearing.  (Ground Two of the § 2255 motion)

8.    His plea to the indictment was not knowing, intelligent, and voluntary because he was charged and sentenced in count two of the indictment with aiding and abetting the use and carrying of a firearm in furtherance of the bank robbery, but the indictment failed to charge him with aiding and abetting under 18 U.S.C. § 2.  (Ground Four of the § 2255 motion)

9.    The indictment in his case was defective because it failed to allege a crime for which Elawad could be convicted, such defect being a jurisdictional one.  (Ground Four of the § 2255 motion)

10.    His plea agreement was not knowing and voluntary because the Court failed to advise Elawad of the mandatory minimum sentence applicable under count two of his indictment.  (Ground Five of the § 2255 motion)

13.    Application of the four-level enhancement under U.S.S.G. § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer violated *Booker* where those facts were not charged in the indictment.  (Ground Six of the § 2255 motion)

14.    The facts in this case did not support application of § 2B3.1(b)(3)(B)

based on the serious bodily injury inflicted on a law enforcement officer.
(Ground Six of the § 2255 motion)

15.    His sentence was imposed in violation of Rules 11 and 32 of the Federal
Rules of Criminal Procedure because he was sentenced on the basis of
inaccurate information.  (Ground Seven of the § 2255 motion)

17.    The failure of the Government to establish that the bank involved in the
bank robbery in this case was federally insured was a jurisdictional defect
that stripped the Court of jurisdiction in this case.  (Ground Eight of the
§ 2255 motion)

All of these arguments were properly raised in a direct appeal, not in a § 2255 proceeding.

Because they could have been raised on direct appeal, but they were not, and because Elawad has

not presented this Court with any cause or prejudice to overcome his procedural defaults, the

claims should be rejected.

### 1.    The Identified Claims Are Procedurally Defaulted.

The arguments listed above that Elawad raises in his § 2255 motion could have been

raised on direct appeal of his conviction and sentence, but they were not.  A motion under § 2255

cannot be used as a substitute for appeal, *see Burke v. United States*, 152 F.3d 1329, 1331 (11th

Cir. 1998), and claims not raised on direct appeal that could have been are generally barred from

review in § 2255 proceedings, *see Massaro v. United States*, 538 U.S. 500, 504 (2003); *McCoy v.

United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  In *Mills v. United States*, 36 F.3d 1052

(11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning procedural

default as follows:

Generally speaking, an available challenge to a criminal conviction or
sentence must be advanced on direct appeal or else it will be considered
procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually
"available" on direct appeal when its merits can be reviewed without further
factual development....  When a defendant fails to pursue an available claim on

direct appeal, it will not be considered in a motion for [Section] 2255 relief unless he can establish  cause for the default and actual prejudice resulting from the alleged error....   Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

*Id*. at 1055-56 (internal citations omitted).  *See also McCoy v. United States*, 266 F.3d at 1258

("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish

cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of

demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See*, *e.g.*,

*Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually

innocent[.]' ").

As noted, Elawad offers nothing to support a cause and prejudice, or actual innocence,

analysis, and the burden to establish those things is on him.  Because he has failed in his burden,

this Court should reject the ten substantive claims raised in his § 2255 motion.[5]

**2.     The Identified Claims Have No Merit.**

Because the ten substantive claims identified in this section above, are clearly not

_____

[5]Elawad has also raised seven claims of ineffective assistance of counsel in his § 2255 motion, but he has not asserted ineffective assistance of counsel to overcome his procedural defaults.  To the extent that he does rely on any of those seven ineffective assistance of counsel claims to overcome his procedural defaults, for the reasons outlined below, his counsel was not ineffective and, therefore, Elawad has failed to demonstrate the necessary cause and prejudice to overcome his procedural defaults.  *See*, *e.g.*, *Black v. United States*, 373 F.3d 1140, 1146 (11th Cir. 2004) ("As [the defendant] cannot show that his ... counsel's performance was deficient, he cannot show that he received ineffective assistance of counsel as to overcome his procedural default for not raising this issue on direct appeal.").

properly before this Court in this § 2255 motion both because Elawad waived his rights to appeal

or collaterally attack his conviction or sentence based on such issues, and because, had he not

waived them, they were properly raised on direct appeal, not in this § 2255 proceeding, this

Court should reject those claims on that basis.  The Government will briefly address each issue,

below, however, because the issues have no merit, even if they were properly before the Court.

> **a.    Claim 3:  The Court violated the rule prohibiting judicial involvement in sentencing negotiations when it held an in-chambers discussion during the sentencing hearing at which Elawad was not present.  (Ground Two of the § 2255 motion)**

Elawad claims in his § 2255 motion that the sentencing court violated the rule prohibiting

judicial involvement in "sentencing negotiations" when it held an in-chambers discussion during

the sentencing hearing at which Elawad was not present.  The record only indicates one off-the-

record discussion during Elawad's sentencing proceedings at which he was not present.  *See* GX

H at 8.  That discussion occurred after Elawad's plea had been accepted by the Court, *see* GX G

at 18, and after the Court had outlined the sentence it intended to impose, *see* GX H at 6-8.  The

discussion occurred as the Court was determining where it should recommend that Elawad be

incarcerated, *id*., and counsel for Elawad, in her affidavit, represents that the discussions were

about where Elawad should be incarcerated, *see* Affidavit of Christine A. Freeman ("Affidavit")

at 1-2.  Nothing in the record indicates that the off-the-record discussions had anything to do with

Elawad's plea agreement; the agreement had already been entered and accepted at the time of this

discussion.  Therefore, although a judge may not participate in plea negotiations, *see, e.g., United

States v. Diaz*, 138 F.3d 1359 (11th Cir. 1998); *United States v. Johnson,* 89 F.3d 778, 782-84

(11th Cir. 1996), the record does not support an allegation that the judge in this case did so.

19

Therefore, this Court should reject Elawad's claim.

      **b.**      **Claim 4: The Court violated his right to be present at all critical stages of his trial and sentencing when it held an in-chambers discussion during the sentencing hearing without his presence. (Ground Two of the § 2255 motion)**

Elawad next argues that the Court violated his right to be present at all critical stages of his trial and sentencing when it held the in-chambers discussion already described in part III.C.2.a. above, without his presence. But while a defendant is entitled to be present at all critical stages of his criminal proceedings, he is not entitled to be present at *all* proceedings. "The right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984). A critical stage of a proceeding is only one at which the defendant's presence would contribute to the fairness of the proceeding. *See United States v. Parrish*, 427 F.2d 1345, 1347-48 (11th Cir. 2005); *United States v. Boyd*, 131 F.3d 951, 954 (11th Cir. 1987). "The rationale for requiring a defendant to be present at sentencing is to ensure that at sentencing ... the defendant has an opportunity to challenge the accuracy of information the sentencing judge may rely on, to argue about its reliability and the weight the information should be given, and to present any evidence in mitigation he may have." *United States v. Parrish*, 427 F.2d at 1347-48 (internal quotation marks and citations omitted).

In this case, Elawad was only excluded from a brief bench conference on where the Court should recommend he be incarcerated. *See* Affidavit at 1-2, ¶¶ 6,7. It had nothing to do with his sentence itself. This bench conference, attended by Elawad's counsel in which incidental matters

were discussed, was not a critical stage of the proceeding at which Elawad had a right to be present. *See United States v. Vasquez*, 732 F.2d at 849. Elawad's claim is therefore without merit, and it should be rejected.

        **c.**    **Claim 5: His plea was not knowingly, intelligently, and voluntarily entered because he had no knowledge of what was discussed in-chambers outside his presence at the sentencing hearing. (Ground Two of the § 2255 motion)**

Elawad also argues that his plea was not knowingly, intelligently, and voluntarily entered because he had no knowledge of what was discussed in-chambers outside his presence at the sentencing hearing. It is impossible to see how a discussion that happened after Elawad entered his plea, and after it was accepted by the Court, could have affected Elawad's decision to enter that plea, and he does not identify what about the discussion would have made the plea unknowing, involuntary, or unintelligent. Moreover, the discussion was about where to send Elawad for his term of incarceration, a matter over which the Court could only make a recommendation. *See* Affidavit at 1-2, ¶¶ 6,7; GX H at 8. The burden is on Elawad to demonstrate that error occurred and that he was harmed by that error. He has failed to demonstrate than any error occurred here, much less that he was harmed by that error. Therefore, this claim should also be rejected.

        **d.**    **Claim 8: His plea to the indictment was not knowing, intelligent, and voluntary because he was charged and sentenced in count two of the indictment with aiding and abetting the use and carrying of a firearm in furtherance of the bank robbery, but the indictment failed to charge him with aiding and abetting under 18 U.S.C. § 2. (Ground Four of the § 2255 motion)**

The indictment in this case does not support and directly refutes Elawad's next claim for

relief, that his indictment failed to charge him in count two with aiding and abetting the use and

carrying of a firearm in furtherance of the bank robbery under 18 U.S.C. § 2.  Count two of the

indictment charged:

> On or about May 2, 2005, in Russell County, within the Middle District of
> Alabama, the defendant,

> MALIK ELAWAD,

> *while aiding and abetting Morgan Chigawa*, knowingly used and carried a
> firearm during and in relation to, and possessed a firearm in furtherance of, a
> crime of violence for which he may be prosecuted in a court of the United States,
> namely, bank robbery, as charged in Count 1 of this indictment, and during the
> course of committing this offense, the firearm was discharged, in violation of *Title
> 18, United States Code, Sections* 924(c)(1)(A)(iii) and *2.*

*See* GX A at 1-2 (emphasis added).  This indictment clearly charged Elawad with aiding and

abetting the offense in count two of the indictment in violation of 18 U.S.C. § 2.  Elawad's

contrary claim is simply not supported by the record and it should, therefore, be rejected.

> **e.     Claim 9:  The indictment in his case was defective because it
> failed to allege a crime for which Elawad could be convicted,
> such defect being a jurisdictional one.  (Ground Four of the
> § 2255 motion)**

Elawad also claims under Ground Four of his § 2255 motion that his indictment was

defective because it failed to allege a crime for which he could be convicted.  As already noted in

the section immediately above, count two of Elawad's indictment did indeed charge him with an

aiding and abetting offense in violation of federal law.  To the extent he is arguing merely the

same thing, that issue has been answered.  However, to the degree he is arguing that the

indictment is otherwise defective in that it does not allege crimes for which he could be

convicted, he has failed to identify how he believes his indictment was otherwise defective.  Both

counts of his indictment clearly charge federal crimes under 18 U.S.C. §§ 2113(a) and (d), in

count one, and aiding and abetting the commission of the federal crime defined in 18 U.S.C. §§

924(C)(1)(A)(iii) and 2. This Court should also reject this additional defective indictment

claim.[6]

> **f.     Claim 10:  His plea agreement was not knowing and
> voluntary because the Court failed to advise Elawad of
> the mandatory minimum sentence applicable under count
> two of his indictment.  (Ground Five of the § 2255 motion)**

Contrary to Elawad's claim, the Court did advise him, as it was required to do under Rule

11(b)(1)(I) of the mandatory minimum sentence under count two of his indictment – 10 years.

*See* GX C at 11. She specifically told him that the sentence on count two was not less than 10

years. *Id*. Because the record squarely refutes Elawad's claim, this Court should reject it.

> **g.     Claim 13:  Application of the four-level enhancement under
> U.S.S.G. § 2B3.1(b)(3)(B) based on serious bodily injury inflicted
> on a law enforcement officer violated *Booker* where those facts
> were not charged in the indictment.  (Ground Six of the § 2255
> motion)**

In Ground Six of his § 2255 motion, Elawad claims that, in sentencing him, the

application of the four-level enhancement under U.S.S.G. § 2B3.1(b)(3)(B) based on serious

bodily injury inflicted on a law enforcement officer violated *United States v. Booker*, 543 U.S.

220 (2005), because those facts were not charged in his indictment. As a part of his plea

agreement with the Government, Elawad admitted that this sentencing enhancement applied in

his case. *See* GX B at 4. Moreover, it does not matter that those sentencing facts were not

---

[6]In his motion, Elawad identifies this claim as a jurisdictional one. While jurisdictional issues may be raised at any time, Elawad's vague, unsupported "jurisdictional" claim is not the type of claim that should be reviewed in a collateral proceeding.

alleged in Elawad's indictment; the failure to allege those sentencing facts in the indictment did not violate *Booker*, or any other provision of law.

In *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005), the Eleventh Circuit held that the "use of extra-verdict enhancements in a non-mandatory guidelines system is not unconstitutional... ." The Court, in sentencing Elawad, did not apply the guidelines in a mandatory fashion; instead it followed the advisory guidelines procedure outlined in *Booker*. *See* GX H at 6. "[T]he Eleventh Circuit has made clear that when a district court applies the guidelines in an advisory manner, nothing in *United States v. Booker*, 543 U.S. 220 ... (2005), prohibits the district court from imposing guidelines enhancements based on facts found by the judge by a preponderance of the evidence." *United States v. Douglas*, 489 F.3d 1117, 1129 (11th Cir.2007). Further, those sentencing facts need not be alleged in the indictment. *See United States v. Chau*, 426 F.3d 1318, 1320, 1323-24 (11th Cir. 2005) (holding *Booker* does not prohibit the district court from applying enhancements based on facts found by a preponderance of the evidence and not charged in the indictment as long as the sentence imposed is pursuant to an advisory guidelines system).

Because any applicable sentencing enhancements were not required to be alleged in Elawad's indictment, Elawad's claim for relief is without merit and should be denied.

> **h.    Claim 14: The facts in this case did not support application of § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer. (Ground Six of the § 2255 motion)**

Also in Ground Six of his § 2255 motion, Elawad argues that the facts in this case did not support application of the U.S.S.G. § 2B3.1(b)(3)(B) enhancement to his offense level based on the serious bodily injury inflicted on a law enforcement officer. Section 2B3.1(b)(3)(B) provides

for enhancements when the offense of conviction is robbery, as count one of Elawad's indictment charged and to which he pled guilty. That provision provides, in relevant part, that "[i]f the victim sustained bodily injury, increase the offense level according to the seriousness of the injury." *See* U.S.S.G. § 2B3.1(b)(3). If the injury was serious bodily injury, then the offense level is to be increased by four levels. *See* U.S.S.G. § 2B3.1(b)(3)(B). In this case, Elawad agreed that the following facts were true:

> e. The defendant agrees that a law enforcement officer sustained serious bodily injury as a result of the defendant and his accomplice's escape from the bank robbery in this case. Thus, a 4 level increase pursuant to § 2B3.1(b)(3)(B) is applicable. The defendant and the Government agree that the accomplice in this matter actually shot a police officer and that the defendant did not fire any shot at any law enforcement officer. ...

*See* GX B at 4-5. This admission by Elawad provided a sufficient factual basis for the enhancement. *See, e.g., United States v. Thomas*, 446 F.3d 1348, 1355 (11th Cir. 2006) (sentence enhancements were sufficiently established by defendant's own admissions). The Court did not err in applying the enhancement in this case because it was sufficiently supported by Elawad's own admission.

> **i.    Claim 15: His sentence was imposed in violation of Rules 11 and 32 of the Federal Rules of Criminal Procedure because he was sentenced on the basis of inaccurate information. (Ground Seven of the § 2255 motion)**

Elawad makes a vague argument in Ground Seven of his § 2255 motion, claiming he was sentenced on the basis of inaccurate information and that somehow that violated his rights under Rule 11 and Rule 32 of the Federal Rules of Criminal Procedure. Elawad does not identify any information that was provided at sentencing that the Court relied on in sentencing him that was inaccurate. Therefore, there is nothing on which this Court can rule in his favor. Because

Elawad bears the burden of proof in this § 2255 motion, and he present no facts in support of his claim, the claim should be rejected.

> **j.    Claim 17:  The failure of the Government to establish that the bank involved in the bank robbery in this case was federally insured was a jurisdictional defect that stripped the Court of jurisdiction in this case.  (Ground Eight of the § 2255 motion)**

Elawad's final substantive claim is that the Government's failure to establish that the bank involved in the bank robbery in this case was federally insured was a jurisdictional defect that stripped the Court of jurisdiction in this case.  That claim has no merit.  While the failure of the Government to allege in the indictment that the bank robbery in this case was a federally insured bank might have stripped the Court of jurisdiction to hear the case, the indictment in this case was not deficient in this manner.  It clearly charged that the bank involved was federally insured.  *See* GX A at 1 (". . . a bank whose deposits were then insured by the Federal Deposit Insurance Corporation").

Moreover, Elawad admitted as a part of his plea agreement that the bank was federally insured, *see* GX B at 5; thus, the Government was relieved of its obligation to prove that fact.  *See United States v. Bendicks*, 449 F.2d 313, 314 (5th Cir. 1971) ("It is a well-established principle of law that a guilty plea ... 'is an admission of all the elements of a formal criminal charge.' "), *citing McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Because the Government did establish the bank involved in the bank robbery in this case was federally insured through Elawad's guilty plea, his claim for relief is due to be denied.

Even if all of Elawad's substantive, non-ineffective assistance of counsel claims were not procedurally defaulted and/or he had established cause and prejudice to overcome those defaults,

because the claims have no merit, this Court should reject each of them.  It should also deny

Elawad any relief from his conviction or sentence on the basis of those claims.

**D.**    **All Of Elawad's Ineffective Assistance Of Counsel Claims Should Also Be Rejected Because, As To Each Claim, Elawad Has Failed To Establish Both That His Counsel's Performance Was Deficient And That He Was Prejudiced As A Result.**

In addition to the substantive claims addressed above and which are barred from this

Court's review, Elawad raises seven claims of ineffective assistance of counsel.  Those claims

are the following:

1.    His counsel was ineffective for failing to file an appeal based on the sentence imposed.  (Ground One of the § 2255 motion)

2.    His counsel was ineffective for participating in an in-chambers discussion without his presence.  (Ground One of the § 2255 motion)

6.    His counsel was ineffective because she failed to present and properly argue mitigating circumstances for a downward departure, including (a) coercion and duress; (b) Elawad's personal psychological problems that impaired his judgment and made him more easily manipulated; (c) aberrant behavior; and (d) "other matters under § 5K2.0."  (Grounds One and Three of the § 2255 motion)

7.    His counsel was ineffective because she failed to attack the defective indictment in this case to which Elawad pled guilty.  (Ground Four of the § 2255 motion)

11.    His counsel was ineffective at the plea hearing and on appeal because she failed to bring to the Court's attention its failure to advise Elawad of the mandatory minimum sentence applicable under count two of his indictment.  (Ground Five of the § 2255 motion)

12.    His counsel was ineffective for failing to challenge the four-level enhancement to his offense level under U.S.S.G. § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer by Elawad's cohort, Morgan Chigawa, during their flight from the bank robbery.  (Ground Six of the § 2255 motion)

16.    His counsel was ineffective for failing to challenge the Government's charges against Elawad where there was no evidence that the bank involved in the bank robbery was federally insured so as to make the offense in the case a federal crime. (Ground Eight of the § 2255 motion)

As demonstrated below, counsel's performance was not deficient with respect to any of these claims of ineffective assistance of counsel. Elawad has also failed to meet his burden of demonstrating prejudice.

### 1.    The *Strickland* Test For Ineffective Assistance Of Counsel Claims

To succeed on a claim of ineffective assistance of counsel, a petitioner must prove both that his counsel's performance was deficient and that that deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005) ("Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice."). More specifically, Elawad must show that: "(1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense." *Stewart v. Sec'y, Dep't. Of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007).

In reviewing counsel's performance to determine whether it meets constitutional requirements, a reviewing court must engage in a " 'highly deferential' review of counsel's performance and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007), *citing Strickland v. Washington*, 466 U.S. at 689. "As a result of this presumption, a petitioner must show that no

28

competent counsel would have taken the action that his counsel did take," and where the record

is incomplete or unclear about why counsel acted as he did, the reviewing court must "presume

that he did what he should have done, and that he exercised reasonable professional judgment."

*Jennings v. McDonough*, 490 F.3d at 1243 (internal quotation marks and citations omitted).

The standard for judging counsel's performance is "reasonableness under prevailing

professional norms." *Stewart v. Sec'y, Dep't. of Corr.*, 476 F.3d at 1209 (internal quotation

marks and citations omitted); *see also Rompilla v. Beard*, 545 U.S. at 380. Moreover, the test for

whether counsel's actions or inactions were reasonable "is not whether counsel could have done

something different; instead, [the court] must consider whether the performance fell within the

broad range of reasonable assistance... ." *Id.* "The burden of persuasion is on the petitioner to

prove by a preponderance of the evidence that counsel's performance was unreasonable." *Id.*

The Eleventh Circuit has described a petitioner's burden with regard to the deficient

performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a
> petitioner seeking to rebut the presumption of adequate performance must bear a
> heavy burden:
>
>> The test has nothing to do with what the best lawyers would have done.
>> Nor is the test even what most good lawyers would have done. We ask
>> only whether some reasonable lawyer at the trial could have acted, in the
>> circumstances, as defense counsel acted at trial. ... We are not interested
>> in grading lawyers' performances; we are interested in whether the
>> adversarial process at trial, in fact, worked adequately.
>
>> ... Thus, in order to show that counsel's performance was unreasonable, the
>> petitioner must establish that *no competent counsel would have taken the
>> action that his counsel did take....*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted); *accord*

*Grossman v. McDonough*, 466 F.3d 1325, 1345 (11th Cir. 2006).

To succeed on an ineffective assistance of counsel claim, the petitioner must not only show deficient performance, but must also show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See Jennings v. McDonough*, 490 F.3d at 1243. The Eleventh Circuit has described a petitioner's burden in demonstrating that his counsel's deficient performance prejudiced his case as also "high," noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *See Stewart v. Sec'y, Dep't. of Corr.*, 476 F.3d at 1209; *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002).

Finally, as the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord, Robinson v. Moore*, 300 F.3d at 1343. The reviewing court "can evaluate either the prejudice or the performance prong first and, if either one cannot be met, [the petitioner's] claim must fail." *Dingle v. Sec'y for Dep't. of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

### 2.    Claim 1:  His counsel was ineffective for failing to file an appeal based on the sentence imposed.  (Ground One of the § 2255 motion)

Elawad's first claim of ineffective assistance of counsel is that his counsel was ineffective for not filing an appeal based on the sentence imposed in his case. Elawad alleges he was dissatisfied with his sentence, but that when he told counsel this, she told him he could not appeal because he had no grounds to appeal based on the waiver of his right to appeal as a part of

his plea agreement.  Counsel's actions were not deficient as it relates to Elawad's right to appeal.

In her affidavit, Elawad's counsel, Ms. Freeman, states that she wrote a letter to Elawad informing him of his right to appeal, but that she received no correspondence from Elawad indicating his desire to pursue an appeal.  *See* Affidavit at 1, ¶ 5.  Moreover, in his § 2255 motion, Elawad does not allege he told his attorney to appeal.  The motion also reflects that Elawad consulted with his attorney at some time about a possible appeal, because he states that she told him that there was nothing to appeal in light of his appeal waiver.  In light of these facts, Elawad's counsel cannot be found to have been ineffective with respect to this claim.

"In Flores-Ortega, the Supreme Court 'reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se.' "  *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007), *citing Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005), *in turn citing Flores-Ortega*, 528 U.S. at 477, 120 S. Ct. 1029).  "Moreover, counsel generally has a duty to consult with the defendant about an appeal."  *Thompson v. United States,* 504 F.3d at 1206.  An "attorney has only acted unreasonably if he has ignored his client's wishes to appeal the case," or has wholly failed to consult with her client about an appeal.  *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).  The duty to consult with the client arises when "either (1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing."  *Id*.  In this case, according to both Elawad's § 2255 motion and counsel's Affidavit, counsel consulted with Elawad about taking an appeal, even though he had waived his right to appeal most issues.  Moreover, according to Elawad's counsel, Elawad never told her to file an appeal, see Affidavit at 1, ¶ 5, and Elawad does not claim to the

contrary.  Therefore, in light of these facts and the fact that Elawad agreed to waive all appeals except ineffective assistance of counsel (issues properly raised in this proceeding, not direct appeal), prosecutorial misconduct (no such claims are made), and any upward departure at sentencing (no such departures occurred in sentencing Elawad), counsel acted constitutionally reasonably in not filing an appeal in this case.  Elawad's first claim of ineffective assistance of counsel should, therefore, be rejected.

### 3. Claim 2:  His counsel was ineffective for participating in an in-chambers discussion without his presence.  (Ground One of the § 2255 motion)

Next, also in Ground One of his § 2255 motion, Elawad claims that his counsel was ineffective because she participated in an in-chambers discussion without his presence.  Elawad cannot establish either deficient performance or prejudice with respect to this claim.

First, counsel's performance was not deficient.  As she explained in her affidavit, counsel participated in the discussion without Elawad's presence because she did not want his family members, who were in the courtroom, to be apprised of the facts surrounding his unreported prior sexual abuse.  *See* Affidavit at 2, ¶ 7.  Moreover, she states that she advised Elawad about the issue that had been raised in-chambers with the sentencing judge.  Counsel's actions were reasonable with respect to this in-chambers discussion and, therefore, Elawad is not entitled to relief on his claim.

Further, Elawad has not established prejudice with regard to this claim.  First, as discussed in part III.B.2.b. of this response above, Elawad had no right to be present at the in-chambers hearing because it was not a critical stage of the proceeding requiring his presence.  Second, he does not cite what it was that he could have contributed if he had been permitted to be

present at the discussions regarding where he should be incarcerated.  And finally, the issue under discussion was not one that the Court was authorized to resolve.  Instead, the Court was only authorized to make a recommendation as to where Elawad should be incarcerated.  The Bureau of Prisons has the final say in such matters.  Therefore, it is highly unlikely that anything Elawad might have said would have made a difference in the decision as to where he would be incarcerated.  For all of these reasons, Elawad has failed to meet his burden of demonstrating prejudice.

Because ELAWAD has demonstrated neither deficient performance or prejudice with regard to this ineffective assistance of counsel claim, his claim is due to be denied.

**4.    Claim 6:  His counsel was ineffective because she failed to present and properly argue mitigating circumstances for a downward departure, including (a) coercion and duress; (b) Elawad's personal psychological problems that impaired his judgment and made him more easily manipulated; (c) aberrant behavior; and (d) other matters under § 5K2.0." (Grounds One and Three of the § 2255 motion)**

Elawad also argues that his counsel was ineffective because she failed to present and properly argue mitigating circumstances for a downward departure, including making arguments and presenting evidence on (a) coercion and duress; (b) Elawad's personal psychological problems that impaired his judgment and made him more easily manipulated; (c) aberrant behavior; and (d) other matters under § 5K1.0.  Contrary to Elawad's assertions, however, his counsel provided a great deal of evidence, and made effective arguments, on coercion and duress; Elawad's personal psychological problems that impaired his judgment and made him more easily manipulated; the aberrant nature of behavior as it related to this crime; and a number of other factors related to Elawad's character and background.  The record reflects that Elawad's counsel

filed psychological reports (Docs. 36, 43), a report from a cultural expert, *see* GX D, 27 exhibits (Doc. 39), a sentencing memorandum, *see* GX E, and a motion for a downward departure, *see* GX F.  Each of those documents supported one or more of the very mitigation issues identified by Elawad that he claims his counsel should have raised.  Moreover, counsel continued to argue this mitigation at the sentencing hearing.  *See* GX G at 18-28.

Elawad's counsel argued all the mitigation that Elawad now claims she should have argued, and more.  Moreover, he has not pointed to any way in which her presentation of evidence in that respect or her argument was deficient.  Her performance was not constitutionally deficient, and Elawad has not demonstrated that it was.  To the contrary, counsel for Elawad did an admirable job in representing him with respect to a mitigation case.

Furthermore, because Elawad's counsel presented all of the evidence he says she should have presented and his sentence was 161 months anyway, he has not demonstrated how he was prejudiced.  Therefore, because he fails both the deficient performance and prejudice prongs of *Strickland*, he is entitled to no relief on this claim.

5.    **Claim 7:  His counsel was ineffective because she failed to attack the defective indictment in this case to which Elawad pled guilty. (Ground Four of the § 2255 motion)**

In ground four of the § 2255 motion, Elawad alleges his counsel was ineffective because she failed to attack his defective indictment in this case.  Elawad claims his indictment was defective because it failed to charge him in count two with aiding and abetting the use and carrying of a firearm in furtherance of the bank robbery under 18 U.S.C. § 2, and because it otherwise failed to allege a crime for which he could be convicted.  But as noted in parts III.B.2.d. and e. of this response, above, Elawad's indictment was not defective.  It clearly

charged federal crimes for which Elawad could be convicted.  Because the indictment was not

defective as Elawad alleges, counsel's actions in not challenging the indictment on the grounds

now asserted could not be deficient.  Counsel is not ineffective for failing to raise non-

meritorious issues.  Nor was Elawad prejudiced by her failure to raise the non-meritorious issues.

Therefore, Elawad is not entitled to any relief on this ineffective assistance of counsel claim.

> **6.      Claim 11:  His counsel was ineffective at the plea hearing and on appeal
> because she failed to bring to the Court's attention its failure to advise
> Elawad of the mandatory minimum sentence applicable under count two
> of his indictment.  (Ground Five of the § 2255 motion)**

Next, Elawad claims his counsel was ineffective at the plea hearing and on appeal

because she failed to bring to the Court's attention its failure to advise Elawad of the mandatory

minimum sentence applicable under count two of his indictment.  As noted in part III.B.2.f. of

this response above, the Court did, in fact, advise Elawad at his plea hearing of the mandatory

minimum 10 year sentence on count two of his indictment.  *See* GX C at11.  Because the Court

did advise the Elawad's mandatory minimum sentence, there was no error for Elawad's counsel

to raise at the plea hearing or on appeal.  Her performance was not deficient, because counsel

cannot be faulted for failing to raise an issue without merit.  Further, Elawad cannot demonstrate

prejudice, because he was, in fact, advised of the mandatory minimum sentence.  For these

reasons, this claim of ineffective assistance of counsel is also without any merit and should be

rejected.

> **7.       Claim 12:  His counsel was ineffective for failing to challenge the
> four-level enhancement to his offense level under U.S.S.G.
> § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a
> law enforcement officer by Elawad's cohort, Morgan Chigawa, during
> their flight from the bank robbery.  (Ground Six of the § 2255 motion)**

Elawad's final claim of ineffective assistance of counsel is also without merit and due to be rejected.  In that final claim, Elawad claims that his counsel was ineffective for not challenging the four-level enhancement to his offense level under U.S.S.G. § 2B3.1(b)(3)(B) based on the serious bodily injury inflicted on a law enforcement officer by Elawad's cohort, Morgan Chigawa, during their flight from the bank robbery.

As counsel for Elawad notes in her affidavit, Elawad agreed that the four-level enhancement was applicable to his case in his plea agreement.  *See* GX B at 4-5; Affidavit at 3, ¶ 15.  For that reason, she alleges she did not challenge the application of the enhancement.  That reason was sufficient to support a finding that counsel acted constitutionally reasonably.

Moreover, Elawad has not demonstrated he was prejudiced by counsel's action.  He has failed to demonstrate any facts to demonstrate that the Court erred in applying the enhancement based on his admissions to the facts supporting the enhancement.  He has failed to demonstrate prejudice, and this ineffective assistance of counsel claim must be rejected as well.

### IV.  MISCELLANEOUS

Elawad has failed to plead facts or present sufficient evidence or argument demonstrating that he is entitled to an evidentiary hearing, and his claims for relief should be denied without such a hearing.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007) ("An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' "), *citing* 28 U.S.C. § 2255.; *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (Where a defendant fails to proffer any evidence that he would seek to introduce at a hearing, he is not entitled to an evidentiary hearing).  Should this Court determine that Elawad

has made any arguments not addressed in this response, the Government would request the opportunity to further respond to those arguments.

Any facts not specifically admitted in this response are denied, and the arguments made as to each claim raised are asserted in the alternative.

## V.  CONCLUSION

For the above reasons, Petitioner Malik Elawad has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 6th day of March, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MALIK ELAWAD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08cv38-MHT** |
| | ) | **(CR No. 3:05-cr-00121-MHT-CSC)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2008, I electronically filed the foregoing response and

attachments with the Clerk of the Court using the CM/ECF system and mailed, postage prepaid, a

copy of this response to the *pro se* Defendant/Petitioner as follows:

Malik Elawad
Rg. #56894-019 (Beta A)
FCI Talladega
PMB 1000
Talladega, AL  35160

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

GOVERNMENT
EXHIBIT

CASE
NO. _____

EXHIBIT
NO. A

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

FILED

MAY 2 5 2005

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:05CR121-F |
| | ) | [18 U.S.C. 2113(a) & (d); |
| v. | ) | 18 U.S.C. 924(c)(1)(A)(iii); |
| | ) | 18 U.S.C. 2] |
| | ) | |
| MALIK ELAWAD | ) | **INDICTMENT** |

The Grand Jury charges:

## COUNT 1

On or about May 2, 2005, in Russell County, within the Middle District of Alabama, the

defendant,

### MALIK ELAWAD,

by force, violence, and intimidation, did take from the person and presence of another approximately

$10,848, the exact amount being unknown to the Grand Jury, belonging to and in the care, custody,

control, management, and possession of Regions Bank, located at 3548 Highway 280/431 North,

Phenix City, Alabama, a bank whose deposits were then insured by the Federal Deposit Insurance

Corporation, and in committing said offense, assaulted and put in jeopardy the life of another person

by the use of a dangerous weapon, in violation of Title 18, United States Code, Section 2113(a) and

(d).

## COUNT 2

On or about May 2, 2005, in Russell County, within the Middle District of Alabama, the

defendant,

### MALIK ELAWAD,

while aiding and abetting Morgan Chigawa, knowingly used and carried a firearm during and in

relation to, and possessed a firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, namely, bank robbery, as charged in Count 1 of this indictment, and during the course of committing this offense, the firearm was discharged, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
UNITED STATES ATTORNEY

_____
Todd A. Brown
Assistant United States Attorney

2

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 03:05-CR-0121-F |
| | ) | |
| MALIK ELAWAD | ) | |

## PLEA AGREEMENT

**DEFENSE COUNSEL:**        **CHRISTINE A. FREEMAN**

**ASSISTANT U.S. ATTORNEY:**        **TODD A. BROWN**

## COUNT AND STATUTES CHARGED:

Count 1        18 U.S.C. § 2113(a), (d)
                    Bank Robbery

Count 2        18 U.S.C. § 924(c)(1)(A)(iii)
                    Discharge of Firearm in During Crime of Violence

## COUNT(S) PLEADING PURSUANT TO PLEA AGREEMENT:

Count 1        18 U.S.C. § 2113(a), (d)
                    Bank Robbery

Count 2        18 U.S.C. § 924(c)(1)(A)(iii)
                    Discharge of Firearm in During Crime of Violence

## PENALTIES BY COUNT - MAXIMUM PENALTY:

Count 1        18 U.S.C. § 2113(a), (d)
                    Bank Robbery

> A term of imprisonment which may not be more than 25 years, a fine not to exceed
> $250,000, or both fine and imprisonment; a term of supervised release of no more
> than 5 years; and an assessment fee of $100.00.

Count 2        18 U.S.C. § 924(c)(1)(A)(iii)



**GOVERNMENT EXHIBIT**

CASE NO.

EXHIBIT NO. B

Discharge of Firearm in During Crime of Violence

A term of imprisonment which may not be less than 10 years, not more than life, consecutive to the crime of violence, a fine not to exceed $250,000, or both fine and imprisonment; a term of supervised release of no more than 5 years; and an assessment fee of $100.00.

## ELEMENTS OF THE OFFENSE(S):

Count 1        18 U.S.C. § 2113(a), (d)
               Bank Robbery

1.    The defendant knowingly took from the person or the presence of the person described in the indictment, money or property then in the possession of a federally insured bank, as charged; and,

2.    The defendant did so by means of force and violence or by means of intimidation.

Count 2        18 U.S.C. § 924(c)(1)(A)(iii)
               Discharge of Firearm in During Crime of Violence

1.    The defendant committed a crime of violence, as charged;

2.    That during and in relation to the commission of that offense the defendant discharged a firearm; and,

3.    The defendant did so knowingly.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Todd A. Brown, Assistant United States Attorney, and Christine A. Freeman, Federal Defender, attorney for the defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment herein and a Plea Agreement has been reached by said parties.

## GOVERNMENT'S PROVISIONS

1. Upon entering a plea of guilty by the defendant to the offense charged in Counts 1 and 2 of the Indictment, the attorney for the Government will do the following:

a. The Government will agree that a 2-level reduction in the applicable offense level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate, so long as the defendant does not obstruct justice or otherwise fail to accept responsibility for the offense conduct. Should the Government find the defendant assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and this Court to allocate their resources efficiently, and if Defendant otherwise qualifies, the Government will move at sentencing for a further reduction of one level, pursuant to U.S.S.G. § 3E1.1(b). Determination of whether the defendant met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 3E1.1 is at the sole discretion of the United States.

b. That the defendant is entitled to a minor role reduction of 2 levels, pursuant to U.S.S.G. § 3B1.2(b).

c. The Government agrees that no enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(A) is applicable in this case, because the defendant is being sentenced for discharging of a firearm, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii).

d. The Government agrees to a sentence at the low end of the applicable guideline range. This agreement includes the minimum sentence pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), i.e., 10 years.

e. The Government agrees, to the extent that this Court has the authority, to

3

recommend that the federal sentence in this matter run concurrently with any sentence imposed by the State of Georgia for offenses related to the defendant's conduct in the instant matter.

      f.  The Government agrees that no cross-referencing provision under U.S.S.G. § 1B1.5 applies in this matter.

    2. The United States reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

    3. The defendant agrees to the following:

      a.  To plead guilty to Counts 1 and 2 of the Indictment.

      b.  Not to commit any other federal, state, or local offense while awaiting sentencing, whether that offense is charged or chargeable or not.  Such criminal activity would include, but is not limited to, witness tampering, or facilitation of any other criminal activity.  Determination of whether Defendant's conduct is a violation of this provision is at the complete discretion of the Government.

      c.  The defendant agrees that the amount of loss for which he is criminally liable, and for which he should be sentenced is greater than $10,000.  Therefore, a 1 level increase pursuant to U.S.S.G. § 2B3.1(b)(7)(B) is applicable.

      d.  The defendant agrees that a 2 level increase pursuant to § 2B3.1(b)(1) is applicable because the property taken was the property of a financial institution.

      e.  The defendant agrees that a law enforcement officer sustained serious bodily injury as a result of the defendant and his accomplice's escape from the bank robbery in this case.  Thus, a 4 level increase pursuant to § 2B3.1(b)(3)(B) is applicable.   The defendant and the Government agree that the accomplice in this matter actually shot a police officer and that the defendant did not

4

fire any shot at any law enforcement officer. This fact is taken into consideration in the Government's agreement that the defendant is entitled to a minor role reduction, as set forth in paragraph 1(b) of this agreement.

f. The defendant understands that while the United States Sentencing Guidelines are advisory, the defendant agrees to be sentenced in accordance with the United States Sentencing Guidelines.

g. The facts used to determine the defendant's Guidelines offense level and sentence will be found by the Court at sentencing by a preponderance of the evidence and that the Court may consider any reliable evidence, including hearsay.

## FACTUAL BASIS

4. The defendant admits the allegations charged in Counts 1 and 2, and understands that the nature of the charge to which the plea is offered involves proof as to Counts 1 and 2, that on or about May 2, 2005, in Russell County, Alabama, the defendant, and Morgan Chigawa, by force, violence, and intimidation, took from the person and presence of another, approximately $10,848, belonging to and in the care, custody, control, management, and possession of Regions Bank, located at 3548 Highway 280/431 North, Phenix City, Alabama, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, Morgan Chigawa assaulted and put in jeopardy the life of another person by the use of a dangerous weapon, by discharging a firearm, during in relation to a crime of violence, the bank robbery, all in violation of Title 18, United States Code, Sections 2113(a)(d), 924(c)(1)(A)(iii), and 2.

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

5. Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C.

5

§ 3742 to appeal the sentence. Defendant specifically waives the right to appeal the sentence on the grounds that the sentencing guidelines are in any respect unconstitutional, or that any fact found by the Court for sentencing was not alleged in the Indictment, admitted by the Defendant, found by a jury, or found beyond a reasonable doubt. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct.

Notwithstanding the above, the defendant reserves the right to file a direct appeal of an upward departure from the applicable Guidelines range which the sentencing court specifies at the time of sentencing as having been imposed pursuant to either U.S.S.G. § 4A1.3 (from criminal history category) or § 5K2.O (from offense level). The defendant understands and agrees that this waiver as to all other Guidelines findings would still be in force and effect notwithstanding the appealability of an upward departure. Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any fact affecting Defendant's sentence.

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case. The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver as to any issue the defendant may raise pursuant to 18 U.S.C. § 3742(a).

6

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

6. The defendant, before entering a plea of guilty to Counts 1 and 2, as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the Government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. The defendant further understands that, pursuant to 18 U.S.C. § 3013, said $100.00 assessment fee is to be paid by the defendant on the date of sentencing and that, if a fine is imposed by the Court at sentencing, the defendant shall meet with a member of the Financial Litigation Section of the United States Attorney's Office on the day of sentencing and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

c. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

d. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the

7

defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

e. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

f. The Defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the Government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

g. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

h. The defendant further understands that the Government can only make a recommendation, which is not binding upon the Court. However, if the Court does not accept the plea agreement, the Defendant would be permitted to withdraw the defendant's plea, if the defendant so chooses.

i. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant.

8

However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

j. The defendant understands that there is no possibility of a sentence of probation.

k. The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

7. The undersigned attorneys for the Government and for the defendant represent to the court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

9

8. The defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the U.S. Attorney.

This 3rd day of February, 2006.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Todd A. Brown
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101
(334)223-7280

Louis V. Franklin, Sr.
Chief, Criminal Division

10

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL.

Malik Elawad
Defendant

2/6/06
Date

Christine A. Freeman
Attorney for the Defendant

2/6/06
Date

11

United States of America v. Malik Elawad                                    February 6, 2006

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE MIDDLE DISTRICT OF ALABAMA
 3                        EASTERN DIVISION
 4
 5   UNITED STATES OF AMERICA
 6        vs.                   CASE NO:  3:05cr121-LSC
 7   MALIK ELAWAD,
 8           Defendant.
 9
10
                     * * * * * * * * * * *
11
                   CHANGE OF PLEA PROCEEDINGS
12
                     * * * * * * * * * * *
13
             BEFORE THE HONORABLE DELORES R. BOYD, UNITED STATES
14
     MAGISTRATE JUDGE, at Montgomery, Alabama, on Monday, February 6,
15
     2006, commencing at 12:51 p.m.
16
     APPEARANCES:
17
     FOR THE GOVERNMENT:       Mr. Todd A. Brown
18                             Assistant United States Attorney
                               OFFICE OF THE UNITED STATES ATTORNEY
19                             One Court Square, Suite 201
                               Montgomery, Alabama  36104
20
     FOR THE DEFENDANT:        Ms. Christine A. Freeman
21                             Ms. Patricia Vanessa Kemp
                               Attorneys at Law
22                             FEDERAL DEFENDERS
                               MIDDLE DISTRICT OF ALABAMA
23                             201 Monroe Street, Suite 407
                               Montgomery, Alabama  36104
24
                 Proceedings reported stenographically;
25                 transcript produced by computer.
```

**GOVERNMENT EXHIBIT**

CASE NO.

EXHIBIT NO. C

United States of America v. Malik Elawad                February 6, 2006

2

1    (The following proceedings were heard before the Honorable
2    Delores R. Boyd, United States Magistrate Judge, at
3    Montgomery, Alabama, on Monday, February 6, 2006,
4    commencing at 12:51 p.m.:)
5        THE COURT: If we're ready to proceed, Counsel, United
6    States versus Malik Elawad, Criminal Case Number 3:05cr0121.
7    The Court calls this case for Rule 11 proceedings pursuant to
8    notice of the defendant's desire to change his plea from not
9    guilty to guilty. The defendant appears in person and with
10   Federal Defender Christine Freeman and Assistant Federal
11   Defender Patricia Kemp. The United States appears by Todd
12   Brown, United States Attorney. The defendant will now be sworn
13   by the deputy.
14       THE CLERK: Raise your right hand.
15   (The defendant is sworn)
16       THE COURT: Let me address defense counsel first. The
17   Court is made aware the defendant has executed a written notice
18   of his consent to proceed before this Court. Was he advised of
19   his option to appear before a United States district judge,
20   lawyers?
21       MS. KEMP: Yes, Your Honor.
22       THE COURT: All right. Thank you very much. Pursuant
23   to the consent and the written plea agreement, the Court will
24   now proceed.
25       Mr. Elawad, the Court's going to be addressing you, and

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

United States of America v. Malik Elawad                February 6, 2006

4

1        THE COURT: Are you confident that you understood the
2    charges against you?
3        THE DEFENDANT: Yes, ma'am.
4        THE COURT: Are you fully satisfied with the advice and
5    representation you've gotten from the federal defender in this
6    case?
7        THE DEFENDANT: Yes, ma'am.
8        THE COURT: Did you authorize your lawyers to get with
9    the lawyers for the United States in order to reach the plea
10   agreement that has been submitted to the Court?
11       THE DEFENDANT: Yes, ma'am.
12       THE COURT: Before you signed your name to this plea
13   agreement at page 11, did you satisfy yourself by discussing
14   with your lawyer that you understood the terms and conditions
15   set forth in this plea agreement?
16       THE DEFENDANT: Yes, I have.
17       THE COURT: Your plea agreement is made under one of
18   our criminal procedural rules that will allow you to take it
19   back if the sentencing judge doesn't accept it. I'm going to
20   call this to your attention by directing you to page 8, the
21   section that's captioned H, wherein it's stated: The defendant
22   further understands that the government can only make a
23   recommendation, which is not binding upon the Court. However,
24   if the Court does not accept the plea agreement, the defendant
25   would be permitted to withdraw the defendant's plea if the

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

United States of America v. Malik Elawad                February 6, 2006

3

1    it's important that you understand the question before you
2    answer. So don't hesitate at all before you speak into that
3    mike to ask the Court to clarify or rephrase or whatever needs
4    to be done to make sure you understand the question.
5        THE DEFENDANT: Yes, ma'am.
6        THE COURT: Would you begin by stating your full name,
7    your age, and telling me the extent of any formal education you
8    have.
9        THE DEFENDANT: Malik Salman Elawad. Sophomore in
10   college. And 20 years old.
11       THE COURT: Have you been treated, Mr. Elawad, for any
12   mental illness, recent treatment, or addiction to narcotic drugs
13   of any kind?
14       THE DEFENDANT: No, ma'am.
15       THE COURT: Are you currently under the influence of
16   any drug, medication, or alcoholic beverage of any kind?
17       THE DEFENDANT: No, ma'am.
18       THE COURT: The indictment against you was filed May
19   25, 2005. Before today, had you received a copy of the
20   indictment?
21       THE DEFENDANT: Yes, I have.
22       THE COURT: And did you have an opportunity and take
23   advantage of the opportunity to discuss with your lawyers the
24   written charges in this indictment?
25       THE DEFENDANT: Yes, I have.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

United States of America v. Malik Elawad                February 6, 2006

5

1    defendant so chooses.
2        Understood?
3        THE DEFENDANT: Yes, ma'am.
4        THE COURT: I want you to listen now --
5        MS. KEMP: Your Honor --
6        THE COURT: -- as the Court highlights what it is you
7    have agreed to do principally in this agreement and what it is
8    the United States has agreed in return for your consideration.
9        MS. KEMP: Excuse me, Your Honor, before you continue.
10   I just wanted to make the Court aware that Mr. Elawad has met
11   with a psychologist at our advice. This was since his arrest.
12       THE COURT: All right. Can you give me a judgment on
13   when that occurred, given his indictment on May 25? I'm not
14   sure when he was arrested. Has it been in the last 30 days, the
15   last six months?
16       MS. KEMP: It has been within the last six months, Your
17   Honor.
18       THE COURT: And do you have any question, either
19   counsel, about Mr. Elawad's competence to proceed here today
20   based upon his consultation with that psychologist?
21       MS. KEMP: No, Your Honor.
22       THE COURT: All right. Thank you for at least making
23   clear on the record that he has conferred with a psychologist
24   who did not raise doubts about his competence or raise any
25   question about mental illness.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

6

1    Now, proceeding, Mr. Elawad, I just want to be sure
2  that your understanding of what you are to do and what you can
3  expect in return is the same as that the Court received upon
4  reading your plea agreement. You have a two-count indictment
5  charging you with violating, first, Section 2113(a) of the
6  federal code, (a) and (d), and, next, Section 924(c)(1)(A)(iii)
7  and (ii) of Title 18 of United States Code. You are agreeing in
8  fact to plead guilty to both of those counts. The first one is
9  one that charges the bank robbery, and the second is one that
10  charges discharge of a firearm during a crime of violence.
11  That's the first thing you've agreed to do.
12    You've also agreed not to commit another crime, whether
13  it is against federal, state, or local law, while you're waiting
14  for sentencing. And crime or criminal activity would include
15  witness tampering or facilitation of any other crime. You've
16  agreed that the amount of loss for which you are criminally
17  liable and for which you should be sentenced is greater than
18  $10,000, which means that a one-level increase pursuant to one
19  of the sentencing guidelines would apply.
20    Is that your understanding thus far?
21    THE DEFENDANT: Yes, ma'am.
22    THE COURT: You've also agreed that there would be a
23  two-level increase applicable because the property taken was the
24  property of a financial institution. Understood?
25    THE DEFENDANT: Yes, ma'am.

8

1    THE COURT: That's okay. It's apparent. I just want
2  to make sure that I do not misadvise him.
3    Mr. Elawad, did your lawyers discuss with you the
4  United States Sentencing Guidelines?
5    THE DEFENDANT: Yes, they have.
6    THE COURT: Did they advise you that the United States
7  Supreme Court no longer mandates or orders district judges to
8  follow them but tells them that it's advisory?
9    THE DEFENDANT: Yes, ma'am.
10    THE COURT: And you understand in your case that you
11  are agreeing to be sentenced in accordance with those
12  guidelines.
13    THE DEFENDANT: Yes, ma'am.
14    THE COURT: And at page 5, it's made clear that the
15  result of your agreement means that the Court at sentencing can
16  make any appropriate findings by a preponderance of the evidence
17  and can consider any reliable evidence, including hearsay. You
18  understand that?
19    THE DEFENDANT: Yes, ma'am.
20    THE COURT: Now, as to what offense level might apply,
21  I'm sure your lawyers told you that that's something that they
22  can't be certain about until there's been a presentence report.
23  Is that understood?
24    THE DEFENDANT: Yes, ma'am.
25    THE COURT: All right. The Court is satisfied that you

7

1    THE COURT: You've agreed -- and again, I'm referring
2  to page 4 of your agreement -- that a law enforcement officer
3  sustained serious bodily injury as a result of the defendant and
4  his accomplices' escape from the bank robbery, and that fact
5  means that a four-level increase would be in order pursuant to the
6  appropriate guideline. And there is an addition to that
7  statement. The defendant and the government agree that the
8  accomplice in that matter actually shot a police officer and
9  that the defendant did not fire any shot at any law enforcement
10  officer. This fact is taken into consideration in the
11  government's agreement that the defendant is entitled to a minor
12  role reduction, as set forth in paragraph 1.b. of this
13  agreement.
14    Counsel, I'm hesitating to be sure that I'm reading
15  from the correct agreement, because I did not see the minor role
16  reduction set forth at paragraph 1.b.
17    MR. BROWN: It's on page 3, Your Honor.
18    MS. FREEMAN: Your Honor, it's on page --
19    THE COURT: Let me have the original. Apparently you
20  did make a change.
21    (Brief pause)
22    THE COURT: All right, lawyers. You did change.
23    MR. BROWN: Your Honor, it's my understanding that
24  paragraph has always been in there. I don't know what might
25  have happened, but I have an extra copy, if you would like.

9

1  understand what you've agreed to do.
2    Now, with reference to what the United States has
3  agreed to do in return, starting at page 3 and continuing
4  through page 4, all of the government's sentencing
5  considerations for you are specified there. Do you need for the
6  Court to review any of them with you? That is, do you
7  understand that United States has agreed, first, that you're
8  going to get a two-level reduction because you're accepting
9  responsibility?
10    THE DEFENDANT: Yes, ma'am.
11    THE COURT: And that if the Court -- if the United
12  States decides that you've helped them save a lot of time in
13  getting ready for trial, they will move at sentencing for
14  another one-level reduction?
15    THE DEFENDANT: Yes, ma'am.
16    THE COURT: Also, the minor role reduction that we
17  referenced a little bit ago, that's a two-level -- that's two
18  levels to be reduced from your offense level?
19    THE DEFENDANT: Yes, they have.
20    THE COURT: No enhancement in this case, because you're
21  already going to be sentenced for discharging of a firearm. Do
22  you understand that --
23    THE DEFENDANT: Yes, ma'am.
24    THE COURT: -- at Section C? The government is also
25  agreeing to a sentence at the low end for you. That's going to

10

1  include the minimum sentence; that is, ten years. That's set
2  forth at Section D.
3      THE DEFENDANT: Yes, ma'am.
4      THE COURT: And to the extent of the United States'
5  authority, it will be recommending that any sentence you get
6  here in federal court will run concurrently with any sentence
7  imposed by the State of Georgia for the offenses that relate to
8  the conduct which occurred there in Georgia. Do you understand
9  that as well?
10     THE DEFENDANT: Yes, ma'am.
11     THE COURT: And this section about cross-referencing
12 and agreeing that no cross-referencing provision applies, you
13 understand that as well?
14     THE DEFENDANT: Yes, ma'am.
15     THE COURT: All right. Now, most importantly, the
16 Court needs to be sure you understand that what's in this
17 11-page agreement constitutes the entire understanding you
18 should have with the United States. To state that a different
19 way, you cannot expect to rely on any side agreement, any verbal
20 agreement of any kind.
21     THE DEFENDANT: Yes, ma'am.
22     THE COURT: Has anyone coerced you or forced you in any
23 manner to come in and change your plea today?
24     THE DEFENDANT: No, ma'am.
25     THE COURT: You're going to be pleading guilty to a

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

12

1  term or condition, part of your punishment may include time in
2  prison. Is that understood?
3      THE DEFENDANT: Yes, ma'am.
4      THE COURT: I remind you that you are in federal court
5  where there is no longer any parole. So if you receive a set
6  time in prison, you should expect to spend all of that time
7  without expecting to be released on parole. All right?
8      THE DEFENDANT: I understand.
9      THE COURT: Understand as well that at page 5 and
10 continuing through page 6 of your plea agreement, you're giving
11 up the right to take an appeal from this Court to a higher
12 court -- that is, an appeal from your conviction and sentence --
13 with a few exceptions that may relate to counsel's conduct and
14 the Court's upward departure from any guidelines. Do you need
15 me to review any of those exceptions or otherwise review that
16 section with you?
17     THE DEFENDANT: No, ma'am.
18     THE COURT: All right. Thank you, sir.
19     Right now, Mr. Elawad, you stand before the Court
20 presumed innocent because you've pled not guilty. That means
21 that it is the duty or burden of the United States to establish
22 or prove your guilt beyond a reasonable doubt at a trial by
23 jury. At such a trial, you have the right to appear, to be
24 present, so that you can see and hear the witnesses against
25 you. You'd have the continuing right to competent

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

11

1  felony. That means in addition to expecting certain things with
2  reference to your sentence, you will lose automatically some
3  rights that are considered valuable civil rights. That is, you
4  cannot vote. You will not be able to hold public office, to
5  serve on a jury, or to have in your possession any kind of
6  firearm. Is that understood?
7      THE DEFENDANT: Yes, ma'am.
8      THE COURT: For the bank robbery case which is
9  described in count one, the maximum penalty is 25 years.
10 Maximum fine is $250,000. The maximum time on supervised
11 release is five years, and there is an assessment fee of $100.
12     For the gun-related offense described in count two, the
13 maximum prison time is not less than ten years nor more than
14 life; that is, between ten and life. And it would be a term
15 that's consecutive to the crime of violence. There's also a
16 fine not to exceed $250,000 or both fine and imprisonment, a
17 term of supervised release of no more than five years. The $100
18 assessment fee also applies.
19     Now, this isn't what's called for in your plea
20 agreement. I'm explaining to you now what the maximum
21 punishment is, called for by the statute. Understand?
22     THE DEFENDANT: Yes, ma'am. I understand.
23     THE COURT: Supervised release is a period of time when
24 you are under strict terms and conditions to govern your
25 behavior, monitored by the probation office. If you violate the

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

13

1  representation by the lawyers who are representing you or any
2  other lawyers, whether or not you can afford to represent
3  them -- to pay them, that is, for their representation. You
4  have the right to have the government's witnesses cross-examined
5  by your lawyers. And if there are witnesses you want to have
6  testify, the Court would facilitate that by having subpoenas
7  issued for them. You'd have no duty to go and get any witnesses
8  at all because as I said before, it's up to the government to
9  establish your guilt and to establish it beyond a reasonable
10 doubt.
11     By the same token, if you decided you wanted to
12 testify, you could do so. You couldn't be forced to do it,
13 because the Constitution protects your right against
14 self-incrimination. If you chose to testify, the United States
15 couldn't use that fact against you in any form or fashion.
16     All these rights I've just described come with a trial
17 by jury when one enters a plea of not guilty. When you change
18 that plea, you lose those rights. Is that understood?
19     THE DEFENDANT: Yes, ma'am.
20     THE COURT: If the United States proceeded to trial
21 against you on count one and count two, it would be up to the
22 United States to establish each and every element necessary to
23 convict you, as charged. For the bank robbery, there are two
24 elements, one, that you knowingly took from the person or the
25 presence of the person described in the indictment money or

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104 334-240-2405

United States of America v. Malik Elawad                February 6, 2006

14

1   property then in the possession of a federally insured bank, as
2   charged; two, that you did so by means of force and violence or
3   by means of intimidation.
4        For the case charged in count two relating to
5   discharging a firearm during a crime of violence, the government
6   would have to establish that you committed a crime of violence,
7   as charged, and that would be the bank robbery described in
8   count one. The government would have to establish that during
9   and in relation to committing that bank robbery, you discharged
10  a firearm. And finally, the government would have to establish
11  that you discharged that firearm knowingly. Understand?
12       THE DEFENDANT: Yes, ma'am.
13       THE COURT: Now we're at the time when it's
14  necessary --
15       MS. KEMP: Your Honor, the government would have to
16  prove, as far as the discharge of the firearm, that his
17  codefendant was responsible for discharging the firearm,
18  alternatively.
19       THE COURT: I'm reading from the plea agreement.
20       Mr. Brown, do you wish to be heard? The reference here
21  is to the defendant, not to the codefendant.
22       MR. BROWN: Right. The elements of the offense are
23  listed in accordance with the -- with the pattern jury
24  instructions. He's -- the defendant's also charged under 18
25  U.S.C., Section 2, which is aiding and abetting. So although

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

---

United States of America v. Malik Elawad                February 6, 2006

15

1   the elements reference the defendant, the defendant in this
2   case, it's actually the codefendant who discharged the firearm.
3        THE COURT: All right. So you don't take exception to
4   anything Attorney Kemp has said.
5        MR. BROWN: No, ma'am. She's correct.
6        THE COURT: Thank you very much. It's a matter of
7   record, then.
8        We now need, Mr. Elawad, to know exactly what it is you
9   did on May 2, 2005, in Russell County that has you desiring or
10  intending to plead guilty to bank robbery and to the second
11  count of discharging a firearm during a crime of violence.
12       Does either counsel wish to probe him with specific
13  questions? If not, the Court will proceed.
14       MS. KEMP: I'll ask him some questions, Your Honor.
15       THE COURT: All right, Ms. Kemp.
16       MS. KEMP: Mr. Elawad, on May 2nd, 2005, in Russell
17  County, did you and Morgan -- were you and Morgan Chigawa
18  present?
19       THE DEFENDANT: Yes, we were.
20       MS. KEMP: And did you and Morgan Chigawa, by force or
21  intimidation, take $10,000 from the Regions Bank?
22       THE DEFENDANT: Yes, we did.
23       MS. KEMP: And was that Regions Bank located in Phenix
24  City, Alabama?
25       THE DEFENDANT: Yes, it was.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

---

United States of America v. Malik Elawad                February 6, 2006

16

1        MS. KEMP: And in committing that offense, did Morgan
2   Chigawa discharge a firearm?
3        THE DEFENDANT: Yes, he did.
4        MS. KEMP: And was that -- to your knowledge, do you
5   have any reason to believe that that bank was not insured by the
6   FDIC?
7        THE DEFENDANT: No.
8        THE COURT: Is the United States satisfied?
9        MR. BROWN: Yes, Your Honor. I think it was clear that
10  the $10,000 -- $10,000 plus was money that belonged to the bank
11  and not patrons of the bank.
12       THE COURT: You weren't given $10,848 as a gift by
13  anybody at Regions Bank, were you, Mr. Elawad?
14       THE DEFENDANT: No, ma'am.
15       THE COURT: All right. You and Mr. Morgan Chigawa used
16  force or intimidation to actually get somebody there to give up
17  the money that belonged to this federally insured institution?
18       THE DEFENDANT: Yes, ma'am.
19       THE COURT: In the process, Mr. Chigawa discharged a
20  dangerous weapon.
21       THE DEFENDANT: Yes, he did.
22       THE COURT: All right. Sir, is there any question you
23  have about your plea agreement or about this proceeding before I
24  give you the privilege -- the opportunity now to change your
25  plea?

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

---

United States of America v. Malik Elawad                February 6, 2006

17

1        THE DEFENDANT: No, ma'am.
2        THE COURT: How do you now plead to this indictment in
3   count one and count two?
4        THE DEFENDANT: Guilty.
5        THE COURT: Guilty to both counts?
6        THE DEFENDANT: Yes, ma'am.
7        THE COURT: The Court enters your plea of guilty and,
8   being satisfied with your sworn testimony, makes the following
9   findings in the case of Malik Elawad.
10       The Court finds that you are fully competent and
11  capable of entering an informed plea; that you are aware of the
12  nature of the charges and the consequences of the plea; and that
13  your plea of guilty is a knowing plea, it's a voluntary plea,
14  and it is a plea that is supported by an independent basis in
15  fact which contains each of the essential elements of the
16  offense charged in count one and the offense charged in count
17  two of the indictment. Therefore, to the extent of this Court's
18  authority, your plea is accepted. And you will be referred to
19  the assigned district judge, Coogler, who will also review your
20  plea and make a final determination and a final adjudication of
21  your guilt based on your entry of the guilty plea which has been
22  here accepted.
23       Sir, now the probation office will begin to investigate
24  your background in order to assist the sentencing judge in
25  deciding whether to honor the sentencing considerations set

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

18

1   forth in your plea agreement. You may be asked to give
2   information for the presentence report. You have the right to
3   insist that your lawyers be present when you provide that
4   information. You're going to get a chance to see the report, to
5   read it. If there are misstatements, inaccuracies, anything
6   that's objectionable, your lawyers will have the opportunity to
7   assert or file those objections and be heard on those
8   objections. You're going to be sentenced by District Judge
9   Coogler on April 26th.
10       Lawyers, that is the date the Court presently has. If
11  it's changed, you'll get notice and you'll get notice of the
12  time.
13       Before he actually sentences you, Mr. Elawad, he'll
14  give you a chance to say anything you wish to on your behalf,
15  also give your lawyers a chance to be heard. Any questions you
16  have, sir?
17       THE DEFENDANT: No, ma'am.
18       THE COURT: Lawyers?
19       MR. BROWN: Satisfied, Your Honor.
20       MS. KEMP: Nothing further.
21       THE COURT: The defendant is remanded to the custody of
22  the United States Marshal pending his sentence.
23       (Proceedings concluded at 1:15 p.m.)
24            * * * * * * * * * *
25

19

1           COURT REPORTER'S CERTIFICATE
2       I certify that the foregoing is a correct transcript
3   from the record of proceedings in the above-entitled matter.
4       This 22nd day of February, 2006.
5
6
            RISA L. ENTREKIN, RDR, CRR
7               Official Court Reporter
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | )     CASE NO:3:05-CR-121-MHT |
| | ) |
| MALIK ELAWAD | ) |

## NOTICE OF FILING OF ADDITIONAL EXHIBIT
## IN SUPPORT OF SENTENCING POSITION

COMES NOW the Defendant, Malik Elawad, by and through undersigned counsel, and

gives notice of filing of an Affidavit from Sudanese Culture Expert Osman Fadl as exhibit number

twenty-eight (28) in support of his sentencing position.

Respectfully submitted,

s/ Christine Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Defendant
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

1



## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO:3:05-CR-121-MHT |
| | ) | |
| MALIK ELAWAD | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2007, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

Assistant United States Attorney Todd Brown, One Court Square, Suite 201, Montgomery, Alabama

36104.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Defendant
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

UNITED STATES OF AMERICA       )
                               )
     V.                        )        CASE NO:3:05-CR-121-LSC
                               )
MALIK ELAWAD                   )

AFFIDAVIT

STATE OF GEORGIA       )
COUNTY OF DEKALB       )

I, OSMAN FADL, being duly sworn, states as follows:

1.    I was born in Korti, in the extreme Northern portion of the Sudan, on the river Nile. I was raised in Khartoum, Sudan. I was educated at the University of Khartoum.   In 1968, I received my Ph.D. in Agriculture from the University of Aberdeen, located in Scotland.  After receiving my Ph.D., I worked on agricultural research. Subsequently, I became a professor of Agriculture, and eventually Dean of Agricultural Science at the University of Gezira.

2     I came to Cairo, Egypt as a refugee in 1992. While there from 1999 until 2004, I was the Coordinator of the Sudanese Organization Against Torture. I , along with my family, came to the United States in January of 2004 as a refugee.

3.    I have had contact with the Refugee Family Service Center in Clarkston, Georgia since January of 2004. Also since that time, I have been invited to give presentations and discussions on the Sudanese culture.

4.    On June 1, 2006, I spoke with Attorney Patricia Kemp regarding the Malik Elawad case. I viewed various photographs of Mr. Elawad and reviewed letters written by Mr. Elawad's family.

1



DEFENDANT'S
EXHIBIT
28

5.    I also discussed what bearing Mr. Elawad's Sudanese culture may have had on Mr. Elawad's behavior during the events leading up to the charges pending in this case. The following information represents the various aspects of the Sudanese culture that may have affected Mr. Elawad's behavior:

6.    The Sudanese people abide by a strict code of friendship. If you are friends with someone, that bond requires that you remain friends with that person no matter what. Even when an individual is engaging in unsavory conduct, rarely is the friendship broken.

7.    The Sudanese people also have a deep respect for its elders. In the Sudanese culture, an elder is some one that is older than you. For example, it is a common saying in the Sudanese culture that "If someone is older than you by one day, they are more knowledgeable than you by one year." Thus, you must respect someone who is older than you.

8.    The Sudanese culture also places immense value on belonging to a group of people with whom you have things in common or belonging to a group of friends. Often, when a person from the Sudan comes to the United States and initially cannot find friends or other individuals with whom he can share the same cultural experiences, that person becomes open to being influenced by a group where he can find acceptance.

9.    The Sudanese culture also places great value on honoring promises. Promises should not be broken when they are made to a parent, sibling, or member of the community.

10.    All of these aspects of the Sudanese culture may have had some bearing on Mr. Elawad's inability to leave Mr. Chigawa, if Mr. Chigawa was someone that Mr. Elawad viewed as his friend.

2

Further Affiant saith not.

_____

OSMAN FALD

June 1, 2006

DATE


WITNESS

3

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

<table>
<tr><td>UNITED STATES OF AMERICA</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>V.</td><td>)</td><td>CASE NO:3:05-CR-121-MHT</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>MALIK ELAWAD</td><td>)</td><td></td></tr>
</table>

GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.    E

## DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCING POSITION

COMES NOW the Defendant, Malik Salman Elawad ("Mr. Elawad") by and through undersigned counsel, and respectfully submits the following in support of his sentencing position that the appropriate and reasonable sentence to be imposed is a total sentence of no greater than fourteen years. Mr. Elawad is before the Court for sentencing on a plea of guilty to one count of bank robbery pursuant to 18 U.S.C. §§2113(a) and (d) and one count of use of a firearm during a crime of violence pursuant to 18 U.S.C. §924(c)(1)(A)(iii).

In support of this memorandum, the defendant would show:

### Offense

From the outset, Mr. Elawad fully has accepted responsibility for his behavior and repeatedly expressed remorse for his conduct, poor judgment, and the pain and anguish caused to his family by this offense. Mr. Elawad's family fully cooperated with the Federal Bureau of Investigation ("FBI") to apprehend Malik Elawad. (Exh19, Ledger-Enquirer Newspaper Article entitled, "Family apologizes to wounded officer, asks son to surrender" dated May 5, 2005.)

Both Mr. Elawad's father and brother called the FBI to relay information that they had regarding what they knew of a plan to get money that was vaguely alluded to by Mr. Chigawa. (Exh 19). According to Mr. Elawad, he feared being killed by police and wanted to surrender peacefully.

However, he knew that Mr. Chigawa would not allow him to do so. As a result, Mr. Elawad called

his home, prior to his apprehension, in a secret attempt to notify his parents of his location. During

that call, Dr. Elawad urged his son to surrender to law enforcement. (Exh 19). Immediately after the

Elawad family learned that Mr. Chigawa had injured a police officer during the commission of the

instant offense, the Elawad family personally visited the wounded officer, apologized for what had

happened to him, and thanked the officer for performing his duty. (Exh 19). Further, the Elawad

family visited the wounded officer while he was recovering in the hospital.

### Plea Agreement

On February 6, 2006, a plea agreement was filed in this case. (D.E.. 23; Exh 1. *Plea*

*Agreement Filed on February 6, 2006).*[1] Pursuant to that agreement, Mr. Elawad pled guilty to

counts one and two of the indictment. In this agreement, Mr. Elawad agreed to the imposition of six

level enhancements: a two level enhancement pursuant to United States Sentencing Guidelines

("U.S.S.G.") §2B3.1(b)(1), for property taken from a financial institution, and a four level

enhancement pursuant to U.S.S.G.§2B3.1(b)(3)(B), for his accomplice injuring a police officer.

In exchange for Mr. Elawad's plea of guilty and acceptance of the offense level

enhancements, the government agreed to a two level reduction in the applicable offense level for

acceptance of responsibility and a two level reduction for Mr. Elawad's minor role in the instant

---

[1]On October 3, 2006, Mr. Elawad filed twenty-seven (27) exhibits with this Court in support of his sentencing position in a document titled, *Notice of Exhibits.* (D.E. 39). On January 9, 2007, Mr. Elawad filed exhibit number twenty-eight, an affidavit from Osman Fadl, in support of his sentencing position. Those filings contained a "Table of Exhibits" in which a number and description for each exhibit was provided. In the interest of convenience for this Court in the reading of the instant memorandum, each of the exhibits referred to in this memorandum have the same exhibit number and contain the same description as previously provided in Mr. Elawad's *Notice of Exhibits.* However, as all twenty-eight exhibits have already been filed, they are not being filed again as an attachment to this sentencing memorandum.

offense, pursuant to U.S.S.G. §§3E1.1(a) and 3B1.2(b) respectively. Because Mr. Elawad assisted law enforcement, the Pre-sentence Report in this case indicates that an additional one level reduction would be made to the offense level, resulting in a total three level reduction for acceptance of responsibility. The government further agreed that no enhancements under U.S.S.G.§2B3.1(b)(2)(A) were applicable in this case because a sentence will be imposed for the discharge of a firearm pursuant to 18 U.S. C. §924 (c)(1)(A)(iii) and that no cross-referencing to U.S.S.G.§1B1.5 was applicable.

In the plea agreement, the government acknowledges that Mr. Elawad never fired any weapon and that he should be sentenced at the low end of the applicable guideline range. As Mr. Elawad is in criminal history Category I and his offense level for count one is 22, pursuant to the Plea Agreement, the applicable guideline range in this case is between forty-one and fifty-one months. The plea agreement does not limit any defense motions for downward departure and Mr. Elawad has preserved his right to file a direct appeal of an upward departure from the applicable guideline range.

*United States v. Booker*, 542 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), struck down the provisions that rendered the Federal Sentencing Guidelines mandatory. Thus, those Guidelines are merely advisory and should be considered as such in the sentencing of Mr. Elawad.

"Although the district courts are no longer required to apply the range dictated by the Sentencing Guidelines, they are still obligated to consult those Guidelines and take them into account when sentencing."*United States v. Gibson*, 434 F.3d 1234, 1243 (11th Cir. 2006)(citing *Booker*, 125 S.Ct. at 767.). Further, Mr. Elawad agreed in the plea agreement to the applicability of the Sentencing Guidelines. (D.E. 23; Exh 1. *Plea Agreement Filed on February 6, 2006*, p. 5).

U.S.S.G. §1B1.4, entitled "Information to be Used in Imposing Sentence (Selecting a Point

3

within the Guideline Range or Departing from the Guidelines)," instructs this Court that "[i]n determining the sentencing to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by the law. See 18 U.S.C.§3661."

18 U.S.C.§3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

In this case, consideration of Mr. Elawad's background, character, and conduct support a finding that the total sentence of fourteen years is reasonable.

"After [a] district court has calculated correctly the defendant's Guideline range, it 'may impose a more severe or more lenient sentence' that [is] review[ed] for reasonableness." *United States v. Winingear*, 422 F.3d 1241, 1244 (11th Cir. 2005)(quoting *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005)). 18 U.S.C.§3553(a) provides:

> (a) Factors to be considered in imposing a sentence.-- The court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed –
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (    C ) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for –

4

***

(5) any pertinent policy statement –

***

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense. (emphasis added).

As the sentencing guidelines are no longer mandatory, "judges [are] to take account of the [g]uidelines together with other sentencing goals." *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005)(citing 18 U.S.C.A. §3553(a)(Supp.2004)). "In sum, in every case, a court must now consider *all* of the §3553(a) factors, not just the guidelines." *United States v. Ranum*, 353 F.Supp.2d 984, 986 (E.D. Wis. 2005)(emphasis in original)."[C]ourts are free to disagree, in individual cases in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the §3553(a) factors." *United States v. Rodriguez*, 406 F.3d 1261, 1288 (11th Cir. 2005)(citing *Ranum*, 353 F.Supp.2d at 987).

**Malik Elawad's Family Background**

    Mr. Elawad was born on February 26, 1985 in Sudan, Africa to Dr. Salman Elawad ("Dr. Elawad") and Mrs. Maimoona Elawad ("Mrs. Elawad"). (Exh. 2, *Photograph of Dr. & Mrs. Salaman & Maimoona Elawad*).

    Dr. Elawad is a college biology professor. He has been teaching biology for several years. He began teaching biology at the University of Khartoum, located in Sudan, Africa. Dr. Elawad received a doctorate degree in biology from the University of West Florida in 1981 as a part of a Sudanese government-sponsored program that sent its educators to America to receive advanced degrees.

5

In 1989, a military coup of the democratically elected Sudanese government was orchestrated by Omar Hassan Ahmad al-Bashir ("Bashir"). (Exh 3, *Wikipedia, Internet Encyclopedia Article re: Omar Hassan Ahmad al-Bashir*). Bashir fueled an existing civil war between the northern and southern portions of the Sudan by sending military troops into the southern region of the country to drive out all non-Arab men, women, and children via torture, rape, slaughter, and the burning of villages. (Exh 3). When Mr. Elawad was approximately five years old, he and his family fled to the United States subsequent to his father being imprisoned along with other intellectuals as a result of Bashir's rise to power. (D.E. 36, *Forensic Expert Report by Dr. Marianne Rosenzweig*).[2] Under threats of political imprisonment and death, the Elawad family sought asylum in the United States in 1990.

Upon arriving in the United States, the Elawad family settled in Pensacola, Florida. There, Dr. Elawad obtained employment as a biology professor at the University of West Florida.

After the Elawad family reached the United States, Dr. Elwad taught biology at the University of West Florida. He has been a biology professor at Chattahoochee Valley Community College ("CVCC"), located in Phenix City, Alabama, for six years.

Mr. Elawad's mother obtained a bachelors degree in mathematics from the University of Khartoum. She has also obtained an associates degree in mathematics from Pensacola Junior College. She currently works full time as a health care worker in Phenix City, Alabama for Direct Service Home Net Corp.

---

[2]The Forensic Report by Dr. Marianne Rosenzweig was separately filed under seal with this Court on October 3, 2006. It was not made a part of Mr. Elawad's *Notice of Exhibits*, also filed on October 3, 2006.

Mr. Elawad turned twenty-one (21) years old on February 26, 2006. He is the fourth of five children born to Dr. And Mrs. Elawad. The other four children are his brothers: Hassan, Aymen, Gamal, and Rayyan.

Hassan, Aymen, and Gamal are each full time college students. Each of them are scheduled to graduate from college in May of this year. Hassan and Aymen will receive masters degrees from Columbus State University ("CSU") in computer information systems and computer engineering respectively. Gamal will receive a bachelors degree in medical biology. Gamal will be attending medical school in Dahlonega, Georgia this fall. Rayyan, is currently a straight "A" student at Central High School, and he also takes college classes through the high school's college preparation program.

As a young boy, Mr. Elawad was active in and excelled at school sports, such as soccer and basketball. He received several awards and trophies for his participation in these sports. (Exh 5, *Photograph of Soccer Trophies received by Mr. Elawad Between 1992 and 1995*). In 1999 and 2000, he received awards for his participation with the Marcus Point Baptist Church "Stay In Bounds" basketball league and in 2001, Mr. Elawad received an award for his participation on the Wm. J. Woodham High School Junior Varsity Basketball league. (Exh 6, *Photograph of Marcus Point Baptist Church and Woodham High School Basketball Trophies from 1999 to 2001*).

Mr. Elawad also excelled academically. While attending both Workman Middle School and Booker T. Washington High School, he received awards for his school work and for the outstanding character and leadership he exhibited in the various organizations of which he was a member. (Exh 7, *Workman Middle School Certificate for Excellence in Keyboarding, awarded on May 21, 1998*; Exh 8, *Booker T. Washington High School National Beta Club Certificate awarded in May of 2000*

7

*and* Exh 9, *Secretary of Navy Scholastic Leadership Award* ). While attending Wm J. Woodham High School, he maintained an "A" grade point average of 3.8750, just .125 points below a perfect 4.0 gpa. (Exh 10, *Wm J. Woodham High School Grades Transcript*).

Following the Elawad family's relocation to Phenix City, Alabama in 2001, Mr. Elawad was enrolled at Central High School where he continued his academic success. He was awarded "Sports Medicine Student of the Year" for the 2001-2002 school year. (Exh 11, *Photograph of "Sports Medicine Student of the Year" Award; Science and Math Club Trophy*). In 2002, he received an award for placing first in a Science and Math Club basketball tournament. (Exh 11). Also in 2002, Mr. Elawad placed first in a Health Occupations Students of America Dental Spelling Contest. (Exh 12, *Health Occupations Students of America Certificate Awarded on December 18, 2002*).

As a result of Mr. Elawad's successful passage of both honors courses and the college courses he took as a part of his high school's college preparation program, on May 23, 2003, Mr. Elawad graduated from Central High School with an advanced technical diploma. (Exh 13, *Central High School Advanced Technical Diploma, awarded on May 23, 2003*).

Following his high school graduation, Mr. Elawad attended Chattahoochee Valley Community College ("CVCC") until the summer of 2004. (Exh 14, *Chattahoochee Valley Community College Grade Transcript*). There, Mr. Elawad maintained an above average grade point of 3.056 and earned enough credits to receive an associates degree in one year.

Thereafter, Mr. Elawad transferred his CVCC credits and enrolled at Columbus State University ("CSU") in Columbus, Georgia, in the fall of 2004. At that time, Mr. Elawad intended to pursue a bachelor's degree in biology. In approximately April of 2005, just prior to start of Mr. Elawad's erratic criminal behavior in May, he dropped out of school at CSU, unbeknownst to his

family and friends.

### Malik Elawad's Character

As reflected in the Pre-sentence Report ("PSR"), Mr. Elawad was arrested on petty theft charges when he was thirteen years old, of which no criminal proceedings ever resulted. (Exh15, *Pre-sentence Report prepared on March 15, 2006, p.6-7*). The PSR accurately reflects that Mr. Elawad has no prior criminal record. (Exh 15, *p. 6*). Nothing in Mr. Elawad's character or behavior foreshadowed his involvement in the instant offense.

Because of the outstanding conduct that Mr. Elawad had consistently exhibited, both his family and friends were shocked to learn of his involvement criminal activity. In fact, when the initial stages of this case were being handled by Natasha Silas, Esq. ("Ms. Silas"), an Associate Federal Defender in Atlanta, Georgia, friends close to the Elawad family wrote Ms. Silas in a show of support. All of those letters express "surprise" and "total shock and disbelief" that Mr. Elawad was involved in any kind of criminal activity. (Exh 16, *Character Letters Written in Support of Mr. Elawad, dated May 9 and 10 of 2005*).

Just prior to the commission of the offense, Mr. Elawad began to spend a great deal of time with Morgan Chigawa ("Mr. Chigawa"). Mr. Chigawa had a violent and tragic past. He and his brother, Manken Chigawa, came to the United States from Malawi, Africa, following the assassination of both of their parents. Mr. Chigawa's parents were targeted as a part of a military coup due to Mr. Chigawa's father's position as a Commander of the Malawian Army. (Exh 17, *Malawi Update, Issue No 13, dated April 1995*).

After his arrival to the United States, Mr. Chigawa bragged to Mr. Elawad about past fist fights he had been involved in and about his having shot and killed a man at a Malawian night club.

9

Mr. Chigawa stated his dissatisfaction over the fact that he no longer lived the opulent lifestyle that he had become accustomed to in Malawi as the son of a high ranking military official. Due to his unhappiness with not having a lot of money at his disposal, Mr. Chigawa planned and executed the bank robbery. Mr. Chigawa supplied the firearms used in the bank robbery and he planned the get-away from the robbery location. Mr. Chigawa would have been charged in the indictment, but he was killed by police officers while being apprehended for the bank robbery.

While spending time with Mr. Chigawa, Mr. Elawad also began to drink alcohol heavily and smoke marijuana on a daily basis. This heavy drug and alcohol abuse clouded Mr. Elawad's judgment and significantly contributed to his becoming involved in behavior that was the total antitheses to his otherwise law abiding life.

Since Mr. Elawad's incarceration, he has acknowledged that he does have a substance abuse problem and is in need of assistance. On October 28, 2005, Dr. Nancy Sack ("Dr. Sack") evaluated Mr. Elawad's mental health.  During that evaluation, Mr. Elawad admitted that he had been unable to stop using marijuana although he knew he needed to discontinue its use.  (Exh18, *Psychological Evaluation, dated October 28, 2005, p. 2*).[3]

In addition to Mr. Elawad's acknowledgment that he needed substance abuse help, Dr. Sack documented that Mr. Elawad was having reoccurring nightmares since his incarceration and that he was suffering from situational depression. (Exh 18, *p. 3-4*).

After learning of Mr. Elawad's depression, undersigned counsel arranged to have Mr. Elawad re-evaluated by forensic and clinical psychologist Marianne Rosenzweig, Ph.D ("Dr. Rosenzweig").

---

[3]Due to the sensitive and confidential information obtained in Dr. Sack's Evaluation, Exhibit 16 was filed under seal on January 3, 2007. A redacted copy has previously been provided to the Probation Officer who prepared the Presentence Report.

Dr. Rosenzweig's Forensic Expert Report, dated May 26, 2006, was filed under seal with this Court on October 3, 2006. (D.E. 36).

Dr. Rosenzweig's report documents that due to economic difficulties, the Elawad family moved between five and six times in a ten year period. (D.E. 36, p.2). When the Elawad family moved to Phenix City, Alabama, Mr. Elawad was approximately fifteen or sixteen years old. Mr. Elawad found the move distressing because he had to leave all of his friends, resulting in heightened feelings of alienation. (D.E. 36, p.2).

Dr. Rosenzweig's report documents that Mr. Elawad was sexually molested on two separate occasions when he was a young boy. (D.E. 36, p.2). The first incident of sexual abuse occurred when Mr. Elawad was between five and six years old. In this instance a twelve year old neighbor boy forced Mr. Elawad to perform oral sex on him and in turn, the neighbor boy performed oral sex on Mr. Elawad. (D.E. 36, p.2). The second incident of sexual abuse occurred when Mr. Elawad was eleven years old. In this instance, Mr. Elawad was grabbed and fondled by an adult male stranger on the street while Mr. Elawad was staying in the Sudan on a family vacation. (D.E. 36, p.2).

These occurrences of abuse caused Mr. Elawad to worry that he was attracting homosexual advances. (D.E. 36, p.2). These incidences of sexual molestation further made him question his masculinity and passivity. As a result, Mr. Elawad felt he had to "prove" his masculinity by drinking alcohol and smoking marijuana when interacting with other males. (D.E. 36, p.3).

Dr. Rosenzweig's report documents that Mr. Elawad first met Morgan Chigawa ("Mr. Chigawa") in the fall of 2004. (D.E. 36, p.4). Mr. Elawad moved into an apartment with Mr. Chigawa and another male friend around February of 2004. (D.E. 36, p.4). Mr. Chigawa drank alcohol continuously and prepared multiple marijuana cigarettes laced with cocaine, of which Mr.

11

Elawad would smoke two to three daily. (D.E. 36, p.4). For the first time Mr. Elawad used ecstasy, and PCP on several occasions. (D.E. 36, p.4). Malik reported to Dr. Rosenzweig that a week prior to the robbery, his drug abuse had greatly increased and impaired his mental state.(D.E. 36, p.4). Malik further reported that immediately prior to the commission of the robbery, he drank alcohol and smoked a marijuana cigarette laced with cocaine. (D.E. 36, p.4).

Dr. Rosenzweig's report documents that Mr. Elawad had become alarmed and fearful of the high degree of possessiveness and aggression that Mr. Chigawa had been demonstrating towards him. (D.E. 36, p. 4). In particular, Mr. Chigawa was controlling and often made decisions for Mr. Elawad without consulting him first. (D.E. 36, p. 4). Additionally, Mr. Chigawa had taken on a persona of invincibility and always kept a loaded firearm on his person.(D.E. 36, p. 4). Thus, despite wanting to flee from Mr. Chigawa, Mr. Elawad's fear of Mr. Chigawa kept him from doing so. (D.E. 36, p. 4).

Mr. Elawad reported to Dr. Rosenzweig that he was afraid of being shot and killed by Mr. Chigawa if he refused to participate in the robbery that Mr. Chigawa had planned.(D.E. 36, p. 5). Mr. Elawad was also afraid of being shot if he attempted to flee from Mr. Chigawa at any time while they were eluding the police after the commission of the robbery. (D.E. 36, p. 5).

The results of the Personality Assessment Inventory ("PAI") examination administered by Dr. Rosenzweig revealed, in part, that Mr. Elawad was depressed. (D.E. 36, p. 7). The incidences of past sexual abuse and the bank robbery had continued to remain a source of great distress for him.(D.E. 36, p. 7). Dr. Rosenzweig opines in her report:

> It is likely that Malik's preoccupation with the molestations was a factor that contributed to the onset of what appears to have been an episode of clinical depression in his junior year of high school. The depression in turn seems to have been the triggering event for his abuse of marijuana, which he used in a self-

12

medicating fashion. . . .With respect to his involvement in the bank robbery, Malik's account of l:aving done so only because he felt intimidated and fearful of Morgan is believable given his history and the test results. Furthermore, Morgan's [referring to Mr. Chigawa] actions during the two shootouts with the police attest to the validity of Malik's perceptions in the days prior to the robbery that Morgan was a dangerous man capable of causing serious harm to others, including Malik. It is also very likely that Malik's thinking was highly clouded as a result of his abuse of substances, and thus his ability to generate solutions to the problem of dealing with Morgan's intimidation of him was probably grossly impaired. (D.E. 36, p. 8).

In addition to Mr. Elawad's fear of Mr. Chigawa, Mr. Elawad's Sudanese culture may have further influenced his inability to flee from Mr. Chigawa. Osman Fadl ("Mr. Fadl"), an expert in Sudanese culture, stated in an affidavit that the Sudanese people abide by a strict code of friendship that requires individuals to remain friends, even when one friend may be engaging in unsavory conduct. (D.E. 44; Exh 28, Osman Fadl Affidavit, p. 2).[4] The Sudanese people have an ingrained reverence for elders. (D.E. 44; Exh 28, p.2). The Sudanese believe that an elder is anyone older than oneself. (D.E. 44; Exh 28, p.2). "It is a common saying in the Sudanese culture that 'If someone is older than you by one day, they are more knowledgeable than you by one year.' Thus, you must respect someone who is older than you." (D.E. 44; Exh 28, p.2). Mr. Chigawa was approximately 4 years older than Malik at the time of the offense.

Because of the great importance placed on belonging to a group of friends with whom you have things in common,"when a person from the Sudan comes to the United States and initially cannot find friends or other individuals with whom he can share the same cultural experiences, that person becomes open to being influenced by a group where he can find acceptance."(D.E. 44; Exh 28, p.2).

---

[4]The Osman Fadl Affidavit was separately filed as exhibit number twenty eight on January 9, 2007.

Dr. Rosenzweig's report documents the following:

In the fall of 2004, Malik [,then age nineteen] first met the other perpetrator in the bank robbery, Morgan Chigawa, when he transferred to Columbus State University where Morgan was also a student. However, he did not really get to know Morgan until the spring semester of 2005. Morgan told him he was 22 years old (after his arrest, he learned Morgan was 25), and had moved to the U.S. from Malawi, Africa at age 16-17 after his parents had been assassinated in a military coup. Malik liked Morgan as he reports that he was always smiling, and he felt that they had a number of things in common - their African birth and upbringing, an interest in sports and physical fitness, and a penchant for partying with alcohol and marijuana.(D.E. 36, p. 4).

### Malik Elawad's Minor Role in the Instant Offense

A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal."

"When determining whether a minor-role reduction is warranted, a district court should consider (1) whether the defendant played a minor role in relation to the relevant conduct for which he was held accountable and (2) where appropriate, the culpability of the defendant as measured against that of other participants in the relevant conduct.

*United States v. Abrams*, 2006 WL 690850 at *13 (11th Circuit 2006)(citing *United States v. DeVaron*, 175 F.3d 930, 944 (11th Cir. 1999)).

Mr. Elawad did not initiate the idea of committing a robbery. He did not procure the firearms used by Mr. Chigawa during the robbery. He personally carried an unloaded BB gun. Mr. Elawad did not plan the bank robbery or the escape. Mr. Chigawa tried to elude capture by police by obscuring the get-away car license plate with tape. This offense was orchestrated by Mr. Chigawa.

While Mr. Elawad will be sentenced under 18 U.S.C. §924(c)(1)(A)(iii) for use of a firearm during a crime of violence, all of the evidence shows that at no time during either robbery or the escape did Mr. Elawad personally discharge any firearm. The government agrees that Mr. Elawad never fired any weapon. The government agrees that Mr. Chigawa was solely responsible for firing at and injuring law a police officer during the commission of the instant offense. (D.E.1, *p. 4-5*). Mr.

14

Elawad never carried a loaded firearm at any time during the instant offense.

When Mr. Elawad's relevant conduct is measured against that of Mr. Chigawa's conduct, it becomes apparent that Mr. Elawad played a minor role in the offense of conviction.

## Basis For Downward Departure

"Departures under section §5K2.0 are 'reserved for 'unusual' cases where there is something atypical about the defendant **or** the circumstances surrounding the commission of the crime which significantly differ from the normal or 'heartland' conduct in the commission of the crime.'" *United States v.Onofre-Segarra*, 126 F.3d 1308, 1310 (11th Cir 1997) (citing *United States v. Gonzalez-Lopez*, 911 F.2d 542, 549 (11th Cir. 1990)(emphasis added).

§5K2.0 ( C ) permits departures based on multiple circumstances even if one such circumstance would not ordinarily be relevant to a determination of whether a departure is warranted. Mr. Elawad's involvement in this crime was atypical behavior for him. Mr. Elawad has no prior criminal record. Mr. Elwad was an exceptional college student who had done extremely well academically. He had a history of receiving accolades and awards for his participation in sports and school activities, and he had earned the respect of his family and community for his overall scholastic aptitude. His family members were and are supportive and committed to the pursuit of education and a law abiding life.

A sentencing departure is also warranted in this case due to the high probability that, as a first time offender, Mr. Elawad may be subjected to the assaults and rape that commonly occur in federal prisons. As mentioned *supra*, Mr. Elawad just recently turned twenty-one years old. Mr. Elawad has a very youthful appearance. As this is his first offense and he has no prior history of incarceration, absent his current confinement at the Montgomery City Jail, Mr. Elawad is totally unfamiliar with

15

the dangerous realities of federal prison culture. "Indeed, brutal assault and homosexual rape are facts of daily life in men's prisons." Majorie Rifkin, *Farmer v. Brennan: Spotlight on an Obvious Risk of Rape in a Hidden World*, 26 Colum.Hum.Rts.L.Rev. 273, 277 (1995).

> Justice Blackmun, concurring in *Farmer*, recognized the terrors encountered by. . . prisoners who are at the mercy of larger, stronger, and ruthless inmates. In an earlier opinion, he noted that "(a) youthful inmate can expect to be subjected to homosexual gang rape his first night in jail, or . . . even in the van on the way to jail." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 853 (1994)).

"Judges and juries from nearly every circuit routinely hear grisly evidence of prisoner violence." *Id.* "Homosexual rape or other violence among prison inmates serves absolutely no penological purpose." *Farmer*, 511 U.S. at 852. "Such brutality is the equivalent of torture, and is offensive to any modern standard of human brutality."*Id.* (citation omitted).

Additionally, although it may appear that Mr. Elawad's lack of criminal history has already been considered by the guidelines due to the fact that he is in a Category I for criminal history, the sentencing guidelines do not differentiate between an individual such as Mr. Elawad who has no prior criminal history and the individual who has a very limited criminal history that would also allow for a criminal history of Category I. Particularly, when viewed in the aggregate, all of the above combine to create a situation that takes Mr. Elawad's case out of the "heartland" of cases governed by the sentencing guidelines, warranting a departure pursuant to U.S.S.G.§5K2.0.

<u>**Standards for a "Reasonable"Sentence**</u>

This Court must also assess what constitutes a reasonable sentence and meets the sentencing objectives identified in 18 U.S.C. §3553(a). At all times prior to the instant offense, Mr. Elawad lived a law abiding life and appeared to have respect for rules and authority. Such a conclusion can reasonably be drawn based on Mr. Elawad's lack of previous criminal history and his background.

16

In addition, the nature and circumstances of this case establish that Mr. Elawad played a minor role in the offense of conviction because he did not orchestrate this offense, he did not carry a loaded firearm, and he did not discharge any firearm at any time during the commission of the offense.

Sentencing Mr. Elawad to a term of imprisonment that is greater than fourteen years will not only punish him based on the seriousness of the offense and respect for the law, but it will also provide a more than adequate deterrence to any further criminal conduct by an individual who, at all times prior to this offense, appeared to lack any propensity toward criminal behavior. Based on Mr. Elawad's behavior prior to the offense of conviction, it is reasonable to conclude that he was well on his way to being a productive member of society. The likelihood of recidivism in his case is very low. Thus, a total sentence of fourteen years imprisonment will provide protection to the public from further crimes. Further, Mr. Elawad's incarceration within a federal facility the offers its inmates educational programs will assist Mr. Elawad with continuing his goal of continuing his education.

Mr. Elawad is not, by any stretch of the imagination, a life long criminal. Additionally, his behavior before his arrest for the instant offense would not lead anyone to believe that he is on his way to becoming a career criminal. Thus, sentencing Mr. Elawad to more than fourteen years would amount to a sentence that is greater than necessary and thus, in violation of the reasonableness standard under 18 U.S.C.§3553(a).

**WHEREFORE,** the defendant respectfully prays that this Sentencing Position be adopted.

Respectfully submitted,

**s/Patricia Kemp**
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Malik Elawad

17

Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: patricia_kemp@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2007, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the following:

Todd A. Brown, Esquire, Assistant United States Attorney, One Court Square, Suite 201,

Montgomery, Alabama 36104.

**s/Patricia Kemp**
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Malik Elawad
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: patricia_kemp@fd.org

_____IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO:3:05-CR-121-MHT |
| | ) | |
| MALIK ELAWAD | ) | |

## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

**COMES NOW** the Defendant, Malik Salman Elawad, by and through undersigned counsel,

and respectfully moves this Court to either depart downward or sentence Mr. Elawad at the low end

of the applicable guideline range for the reasons fully set out in Defendant's Sentencing

Memorandum filed with this Court on January 12, 2007. (D.E. 45).

**WHEREFORE,** for the reasons stated above and in the Defendant's Sentencing

Memorandum, Mr. Elawad respectfully requests that this Motion be granted.

Respectfully submitted,

<u>s/Patricia Kemp</u>
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Malik Elawad
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: patricia_kemp@fd.org



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.    F

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2007, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the following:

Todd A. Brown, Esquire, Assistant United States Attorney, One Court Square, Suite 201,

Montgomery, Alabama 36104.


**s/Patricia Kemp**
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Malik Elawad
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: patricia_kemp@fd.org

2

```
 1                IN THE UNITED STATES DISTRICT COURT
                                 FOR
 2                  THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5

 6    THE UNITED STATES
         OF AMERICA
 7                                      CRIMINAL ACTION NO.
            vs.
 8                                      3:05-CR-121-MHT
      MALIK ELAWAD
 9

10

11

12

13
                             VOLUME I OF II
14                        SENTENCING PROCEEDINGS

15

16

17

18                      *  *  *  *  *  *  *  *  *  *

19

20

21    HEARD BEFORE:      The Hon. Myron H. Thompson

22    HEARD AT:          Montgomery, Alabama

23    HEARD ON:          January 18, 2007

24    APPEARANCES:       Kent Brunson, Esq.

25                       Christine A. Freeman, Esq.
```

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.    G

| | |
|---|---|
| 1 | WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON. |
| | MYRON H. THOMPSON ON JANUARY 18, 2007 AT THE UNITED STATES |
| 2 | COURTHOUSE IN MONTGOMERY, ALABAMA: |
| 3 | |
| 4 | THE COURT:  The Court calls the case of *United States* |
| 5 | *of America vs. Malik Elawad.*  Is that the way he pronounces his |
| 6 | last name? |
| 7 | MS. FREEMAN:  That's correct, Your Honor. |
| 8 | THE COURT:  Would you have him step forward at the |
| 9 | lectern. |
| 10 | This is criminal action number three oh five one |
| 11 | twenty-one M. H. T. |
| 12 | MS. FREEMAN:  Your Honor, present in the courtroom |
| 13 | today are Mr. Elawad's mother and father, his four brothers and |
| 14 | a family friend, Grace Asmalan (ph.). |
| 15 | THE COURT:  Very good. |
| 16 | Now, Mr. Elawad, have you and your attorney reviewed |
| 17 | the *Presentence Report*, including any revisions that may have |
| 18 | been made after the initial disclosure? |
| 19 | THE DEFENDANT:  Yes, sir, we have. |
| 20 | THE COURT:  Now was there a plea in this case? |
| 21 | MS. FREEMAN:  There was, Your Honor. |
| 22 | THE COURT:  Was there a plea agreement? |
| 23 | MS. FREEMAN:  Yes, sir. |
| 24 | THE COURT:  Would you state the plea agreement. |
| 25 | MS. FREEMAN:  Your Honor, the plea agreement set out |

1   a specific calculation in which the Government agreed on

2   certain guideline calculations; that was, that they would file

3   both -- Mr. Elawad would qualify for the two level reduction of

4   acceptance of responsibility, and the Government would file a

5   motion for the third point for acceptance of responsibility.

6   The Government agreed that he was entitled to a two level

7   reduction for his minor role.

8        We also agreed again that certain cross-references

9   and enhancements would not apply.  In return, Mr. Elawad also

10  agreed that to the base offense level of twenty, there would be

11  seven points added; one level for the amount of the theft being

12  greater than ten thousand, two levels for the fact that a bank

13  was involved, and four levels for the fact that an officer

14  sustained injury as a result of the accomplice's actions during

15  the escape.

16        THE COURT:  What officer sustained injury?

17        MS. FREEMAN:  There was a confrontation with the

18  police officer approximately four hours after the bank robbery

19  occurred at a mall in Georgia.

20        THE COURT:  But I know that his accomplice was

21  killed, is that correct?

22        MS. FREEMAN:  Your Honor, that occurred a couple of

23  days afterwards.  Mr. Elawad and his accomplice weren't

24  actually taken into custody until four days after the robbery.

25  But for a few hours, I believe, after the bank robbery, there

1    was a confrontation at a mall in Columbus, Georgia and shots

2    were fired by the codefendant, Mr. Chikawa (ph.) and an officer

3    was hit at that time.  Then a couple of days later when they

4    were surrounded at a hotel in Georgia, Mr. Chikawa (ph.) was

5    killed in a confrontation with the police.

6         Mr. Elawad was still in the motel room during that

7    confrontation, and he surrendered peacefully.  The Government

8    has agreed that at none of these times did Mr. Elawad carry a

9    loaded weapon.  He had a BB gun --

10         THE COURT:  I know, but I just want to talk about the

11    plea agreement.  The plea agreement, then, is a three level

12    reduction for acceptance of responsibility?

13         MS. FREEMAN:  Yes, sir.

14         THE COURT:  And a two level reduction for minor role?

15         MS. FREEMAN:  Yes, sir.

16         THE COURT:  And the Government agreed to recommend a

17    sentence at the low end of the guideline range for count one?

18         MR. BRUNSON:  Yes, Your Honor.

19         THE COURT:  And that the sentences run concurrently

20    with any offense the defendant is charged with by the State of

21    Georgia?

22         MS. FREEMAN:  That's correct, Your Honor.

23         MR. BRUNSON:  To any degree this Court has that

24    authority.

25         THE COURT:  Now he's looking at a mandatory minimum

```
1    on count two of ten years, is that correct?

2           MS. FREEMAN:  Yes, sir.

3           THE COURT:  Is that an actual sentence of ten years,

4    or just a mandatory minimum of ten years?

5           MS. FREEMAN:  It's a sentencing enhancement that's

6    required where there is a finding that the firearm was

7    discharged.  So that would make it a mandatory sentence of ten

8    years.

9           THE COURT:  Of ten years.

10          MR. BRUNSON:  Yes, Your Honor.

11          THE COURT:  So he's looking at ten years, period.

12          MS. FREEMAN:  On count two.

13          THE COURT:  So the only room for play, we'll call it,

14   is as to count one.

15          MS. FREEMAN:  That's correct, Your Honor.

16          THE COURT:  So anything I give him would be in

17   addition to the ten years?

18          MS. FREEMAN:  That's correct.

19          THE COURT:  Does it have to be consecutive?

20          MR. BRUNSON:  Yes, Your Honor.

21          THE COURT:  So whatever I give him on count one,

22   that's really the only issue we're disputing here today.

23          MR. BRUNSON:  That's correct, Your Honor.

24          THE COURT:  I understand Probation has some concerns

25   with the plea agreement?
```

```
1              THE PROBATION OFFICER:  Yes, Your Honor.  But before
2      I go to that, I would also like to state that based on a nine
3      twenty-four C, it would be not less than ten years.  I don't
4      think it specifies that it has to be --
5              THE COURT:  So you're saying I have to give him more
6      than ten years.
7              What's the maximum he can get on count two?
8              THE PROBATION OFFICER:  It says "less than ten," and
9      I would assume it could go up to life.
10             THE COURT:  No one is disputing it should be not less
11     than ten years?
12             MR. BRUNSON:  Mr. Lee is correct.
13             THE COURT:  So no one is asking for more than ten
14     years?
15             THE PROBATION OFFICER:  Right.  It's a sentence of
16     not less than ten years.
17             THE COURT:  With regard to the plea agreement, you
18     said you had some problems with the plea agreement?
19             THE PROBATION OFFICER:  That was a reduction for the
20     two levels of a minor role.  In applying the guidelines, it
21     contradicts application of the guidelines.
22             THE COURT:  What type of plea is this?  If I agree
23     with Probation that he should not receive a minor role, does
24     that mean he can withdraw his plea?
25             MR. BRUNSON:  Yes, Your Honor.  It's an eleven C one
```

```
 1    C plea.

 2            THE COURT:  Is that correct, Ms. Freeman?

 3            MS. FREEMAN:  Yes, sir.

 4            THE COURT:  So the first issue is whether he should

 5    receive a minor role pursuant to the plea agreement, is that

 6    correct?

 7            MS. FREEMAN:  Yes, sir.

 8            THE COURT:  I can accept the plea agreement.

 9            And I believe, Ms. Freeman, you've also asked for a

10    downward departure based on five K two?

11            MS. FREEMAN:  That's correct, Your Honor.

12            THE COURT:  And I believe you've given a number of

13    circumstances that you want the Court to consider?

14            MS. FREEMAN:  Yes, sir.

15            THE COURT:  Now do you intend to present any evidence

16    at all on this?

17            MS. FREEMAN:  Well, Your Honor, I would ask the Court

18    to adopt and admit the twenty-nine exhibits that we have

19    already filed with the Court.

20            THE COURT:  Okay.  Let's see, they have been filed

21    already?

22            MS. FREEMAN:  Yes, sir.  They were filed from October

23    to a week ago, and they're numbered.

24            THE COURT:  Do you have copies here today?

25            MS. FREEMAN:  Yes, sir, I do.
```

1              THE COURT:  Could I see them so I'll know what you
2      want me to consider?
3              (Whereupon, the Court examined said documents.)
4              MS. FREEMAN:  Your Honor, there are two additional
5      exhibits that were filed that are not in that.  They are the
6      two psychological reports that were filed under seal.
7              THE COURT:  Right.
8              MS. FREEMAN:  I have unmarked copies of the two
9      psychological reports that have been filed with the Court.
10             THE COURT:  They're not included there?
11             MS. FREEMAN:  They're not included there, but they
12     are filed with the Court under seal.
13             THE COURT:  Could I see those?
14             (Whereupon, the Court examined said documents.)
15             MS. FREEMAN:  And this was filed last week.
16             THE COURT:  Now Probation is recommending a sentence
17     as to count one of how much?
18             THE PROBATION OFFICER:  The recommendation would be
19     for fifty-one months, Your Honor, which is in compliance with
20     the plea agreement for the low end of the guidelines.
21             THE COURT:  That assumes I accept the plea agreement.
22             THE PROBATION OFFICER:  That's correct, Your Honor.
23             THE COURT:  Now if I don't accept the plea agreement,
24     what is your recommended sentence?
25             THE PROBATION OFFICER:  If you accept the plea

1    agreement, the sentencing range goes from, I think it's

2    forty-one -- The low end is forty-one.

3            MR. BRUNSON:  To fifty-one, Your Honor.

4            THE PROBATION OFFICER:  Right.  I would stand on the

5    fifty-one months being appropriate, Your Honor.

6            THE COURT:  Under the plea agreement, his sentencing

7    range would be what?

8            MR. BRUNSON:  Forty-one to fifty-one months.  That

9    would be a total offense level of twenty-two, so it would be

10   forty-one to fifty-one months, plus the hundred and twenty

11   months for count one -- or excuse me, for count two.

12           MS. FREEMAN:  I agree with that, Your Honor.

13           MR. BRUNSON:  That would be a hundred and sixty-one

14   months.

15           THE COURT:  Under the plea agreement, are you

16   supposed to make a recommendation at the low end?

17           MR. BRUNSON:  Yes, it is.

18           THE COURT:  So you would be recommending forty-one

19   months?

20           MR. BRUNSON:  Yes, Your Honor.

21           THE COURT:  And with the ten years, how much would

22   that be?

23           MR. BRUNSON:  A hundred and sixty-one months, Your

24   Honor.

25           THE COURT:  So that would be --

```
 1              MR. BRUNSON:  A hundred and twenty plus forty-one.
 2              THE COURT:  Right.  That would be what, thirteen
 3    years five months?
 4              MS. FREEMAN:  Yes, sir.
 5              THE COURT:  Is that right?
 6              MS. FREEMAN:  Yes, sir.
 7              THE COURT:  Now you're asking for a sentence of what,
 8    Ms. Freeman?
 9              MS. FREEMAN:  We're asking the Court to go lower than
10    forty-one months with a downward departure.
11              THE COURT:  So you're saying a reasonable sentence
12    would be what?
13              MS. FREEMAN:  Ten years, Your Honor.
14              THE COURT:  So you want zero for count one?
15              MS. FREEMAN:  Let's say ten years and one day.
16              THE COURT:  Ten years and one day.
17              MS. FREEMAN:  Yes, sir.
18              THE COURT:  Okay.  Well, I'm not sure that's
19    different from zero.  On page four of the memorandum I thought
20    you said a sentence of fourteen years was reasonable.
21              MS. FREEMAN:  We actually said on the very first page
22    a total sentence of fourteen years would be a reasonable
23    sentence.  But we're asking for more, Your Honor.
24              THE COURT:  Right.  Thirteen five would be even less
25    than the fourteen years.  And that's under your plea agreement,
```

```
 1    assuming I accept it.

 2            MS. FREEMAN:  Yes.

 3            THE COURT:  Well why don't we discuss your plea

 4    agreement.  Why don't we discuss whether I should accept the

 5    plea agreement first, and then we'll go into the downward

 6    departure motion after that.  And you can walk me through that.

 7            The first issue is why does Probation say that he

 8    should not receive two levels for being -- for a minor role?

 9            THE PROBATION OFFICER:  Your Honor, in applying the

10    guidelines and looking at his relevant conduct, Mr. Elawad

11    jointly undertook this criminal activity with knowing all

12    foreseeable acts.  And in the official -- or in the instances

13    that occurred after they entered the bank and left --

14            THE COURT:  What was his conduct in the actual

15    offense?  Let's go over that first.

16            THE PROBATION OFFICER:  He went into the bank with

17    Mr. Chikawa (ph.) having a weapon.  Whether or not his --

18            THE COURT:  Who was carrying the weapon?

19            THE PROBATION OFFICER:  They both had a weapon.

20            MS. FREEMAN:  Mr. Elawad had a BB gun.

21            THE COURT:  They both had what appeared to be guns?

22            THE PROBATION OFFICER:  That's correct, Your Honor.

23    While in the bank they basically demanded money.  Mr. Chikawa

24    (ph.) in one area of the bank, Mr. Elawad in the other.

25            THE COURT:  Who actually made statements?
```

```
1              THE PROBATION OFFICER:  From the information we
2     received, both individuals demanded money.
3              THE COURT:  Do you know what Mr. Elawad is supposed
4     to have said?
5              THE PROBATION OFFICER:  There is an instance in
6     paragraph eight of the report, Your Honor, where Mr. Elawad
7     brandished a firearm later determined to be a BB gun, and he
8     pointed it at a bank employee.  He instructed her to get down,
9     and upon her compliance he dragged her by the shirt from an
10    office.  He continued to point the gun at her head and said
11    something to the effect of, "Don't make me kill you."
12             Prior to leaving the bank he went back to the
13    employee and said, "Stay calm."  This was within the bank.
14             THE COURT:  But did he actually say, "Give me your
15    money," too?
16             THE PROBATION OFFICER:  Yes.  Paragraph seven
17    indicates that Mr. Elawad joined Mr. Chikawa (ph.) in demanding
18    money from the teller.
19             MS. FREEMAN:  I'm not certain he asked for money
20    directly.  He certainly didn't distance himself from what Mr.
21    Chikawa (ph.) said or did, but Mr. Chikawa (ph.) took money and
22    screamed the quote given in paragraph seven as he jumped over
23    the counter.
24             THE COURT:  Now Mr. Elawad brandished the BB gun,
25    right?
```

1          MS. FREEMAN:  That's correct Your Honor.

2          THE COURT:  Pointed it at an employee and instructed

3    her to get down?

4          MS. FREEMAN:  That's correct.

5          THE COURT:  He's also supposed to have drugged the

6    employee by the shirt while continuing to point the gun at her

7    head.  And I think he's supposed to have made statements to

8    her, don't make me kill you?

9          MS. FREEMAN:  Yes.  And then he told her to remain

10   calm, Your Honor.

11         THE COURT:  Why is the Government -- Why should I

12   accept this plea agreement that Mr. Elawad should receive a two

13   point reduction for a minor role in light of what I understand

14   that he pointed the gun at the bank employee, instructed her to

15   get down, dragged her, pointed a gun at her head and made the

16   statement, "Don't make me kill you"?

17         MR. BRUNSON:  Your Honor, appearing on behalf of Mr.

18   Brown, who is out of the office, and he prepared the plea

19   agreement, he has briefed me on his thinking and both the

20   *Presentence Report* and the sentencing memorandum of

21   Ms. Freeman.  His position is that Mr. Elawad pled guilty to

22   the offense, which he is clearly guilty of that's going to

23   result in a sentence of not less than a hundred and twenty

24   months.  He's also agreed through the plea agreement to four

25   levels being enhanced because the police officer who was shot,

1  that's not conduct at the bank as I understand, but that's a
2  separate incident.
3       What happened in the bank is what resulted in the
4  hundred and twenty months, this is my understanding.  But
5  because Mr. Elawad, according to Mr. Brown, was less culpable
6  than the other person, did not fire the shot --
7       THE COURT:  Fire the shot when?
8       MR. BRUNSON:  When the policeman was shot.  The four
9  point enhancement, as I understand it, is not a result of the
10  conduct that you have gone through in looking through the
11  record.
12       MS. FREEMAN:  That's correct.  It's as a result of
13  the conduct described in paragraph ten of the *Presentence*
14  *Report*.
15       THE COURT:  Say this again.  In the four point --
16       MS. FREEMAN:  The four point enhancement relates to
17  relevant conduct that is described in paragraph ten of the
18  *Presentence Report*.  And that is that sometime after the
19  robbery, within a short period of time, Mr. Chikawa (ph.) and
20  Mr. Elawad were at a mall in Columbus, Georgia.  Police
21  officers approached them, and Chikawa (ph.) fired his gun at
22  the officers and an officer suffered an injury as a result.
23  That is the four point enhancement.
24       MR. BRUNSON:  And that's Mr. Brown's position, that
25  in that conduct, Mr. Elawad --

1          THE COURT:  I guess what we need to define here is

2     what is relevant conduct.  So if we look at what happened

3     solely at the bank, that could be one scenario we look at.  And

4     I guess what you're saying is, I should be looking at the

5     conduct over the entire period of time, which includes the bank

6     robbery and the events after the bank robbery, including the

7     matter with the police officer and everything else.  And if you

8     look at the whole picture, you're saying that his conduct could

9     be considered relevant because he's getting enhancements for

10    all of this, not just for the bank robbery.

11         MR. BRUNSON:  That's what I was trying to indicate to

12    the Court.  He has admitted through his plea agreement a four

13    point enhancement.  But that's not the conduct at the bank

14    robbery, that's separate conduct.  I'm agreeing with the way

15    you just stated it.

16         THE COURT:  So what you're saying is, that if we look

17    at all of the conduct for which he has received enhancements,

18    including the four points, you're saying that he was not as

19    involved in everything and therefore you want to give him two

20    points downward because some of his involvement was minor.

21         MR. BRUNSON:  That is Mr. Brown's position.

22         THE COURT:  Some parts of the overall conduct, in

23    particular the conduct for which he received the extra four

24    points.

25         MR. BRUNSON:  Yes, Your Honor.

1    MS. FREEMAN:  And, Your Honor, that meets the

2    Eleventh Circuit's analysis for minor role reduction.

3    THE COURT:  How does that mean the --

4    MS. FREEMAN:  They said that specifically you look at

5    whether or not the defendant played a minor role in relation to

6    the relevant conduct for which he is held accountable.

7    THE COURT:  So I would be looking at it too narrowly

8    if I just looked at the bank incident.

9    MS. FREEMAN:  That's correct.

10   THE COURT:  What about that?

11   THE PROBATION OFFICER:  Your Honor, I think the Court

12   should be aware that when the officers approached Mr. Chikawa

13   (ph.) and Mr. Elawad at the mall, they were in an attempt to

14   apprehend them for the conduct at the bank.  That's why they

15   were there.  So I think if you look at relevant conduct, you

16   have to say that they -- the incident that happened at the mall

17   was in their attempt to evade arrest for the bank incident.

18   And it is all combined.

19   I don't think you can separate his role.  He did not

20   cease and desist.  There were other people on the scene that

21   stopped and were later questioned.  He fled.  He used that

22   incident to flee further.

23   MS. FREEMAN:  However, Your Honor, the four point

24   enhancement is not for merely fleeing, it is for the serious

25   bodily injury.

1          THE COURT:  Now the four point enhancement was four

2     points in addition to what?

3          MS. FREEMAN:  That is four points in addition to the

4     other offense level points.

5          THE COURT:  How many points?

6          MS. FREEMAN:  He starts with twenty for the battle.

7     We add one for the amount taken, two because it's a financial

8     institution.  So he's at twenty-three.  Added to that are four

9     points for the serious bodily injury.  So he was already at

10    twenty-three points.

11          Then has this four points added to that.  Then has

12    the hundred twenty months added to that as well.  And, Your

13    Honor, I would point out that the plea agreement also agrees as

14    the guidelines state because he was pleading to the nine

15    twenty-four C count.  He could not get an enhancement under the

16    guidelines for the use of the gun at the bank robbery.  The use

17    of the gun at the bank robbery would have resulted in a seven

18    point enhancement under the bank robbery guideline, which would

19    only have put his -- would only have brought the sentence for

20    count one up to a hundred and eight months.  But instead, he's

21    agreed to the count two conviction, which adds a full hundred

22    and twenty months to this sentence.

23          So, in fact, the four point enhancement that he

24    agreed to for separate conduct would have been on top of a

25    hundred and eight month sentence, and he's still getting more

| | |
|---|---|
| 1 | than that with the hundred and twenty months sentence. |
| 2 | THE COURT:  So, Probation, you want me to give him a |
| 3 | hundred and seventy-one months, assuming he doesn't withdraw |
| 4 | his plea, and under the plea agreement, assuming that I don't |
| 5 | agree with the downward departure, he would be looking at a |
| 6 | hundred and sixty-one months. |
| 7 | MR. BRUNSON:  That is correct, Your Honor. |
| 8 | MS. FREEMAN:  Yes, Your Honor. |
| 9 | THE COURT:  Okay.  I think it's clear that if I |
| 10 | focused on just the conduct at the bank, that he would not be |
| 11 | considered having played a minor role.  I am disturbed by his |
| 12 | conduct at the bank, which was clearly extremely egregious. |
| 13 | It's clear that the relevant conduct includes conduct beyond |
| 14 | the conduct at the bank. |
| 15 | Having considered the case in its totality, which I |
| 16 | agree with the defendant I must do, when it comes to relevant |
| 17 | conduct, I'll accept the plea agreement.  So I'll give him the |
| 18 | two point reduction for a minor role. |
| 19 | We'll now move to your request for a downward |
| 20 | departure. |
| 21 | MS. FREEMAN:  Thank you, Your Honor. |
| 22 | We presented a number of exhibits to the Court and a |
| 23 | number of different arguments in our sentencing memorandum.  I |
| 24 | want to summarize very briefly what I believe those exhibits |
| 25 | show to the Court. |

1          First, they show that Mr. Elawad was considered by

2     all who knew him until the time of this event as an exceptional

3     child.  Not just a good kid, but an exceptional kid.  He had an

4     outstanding academic record.  He had the high opinion of

5     teachers and counselors and other adults who he encountered.

6     He had the high opinion of his friends, at least one of whom

7     has submitted a letter to the Court in which he describes

8     trying to -- I believe he's quoted in an evaluation, but at

9     least one of his friends acknowledges that he tried to persuade

10    Mr. Elawad to do something wrong when he was younger and Mr.

11    Elawad had refused.  And for that reason he had always

12    respected him a great deal.

13         Then we have evidence through both Dr. Sax and

14    Dr. Rosensweig's evaluations that due in part to a few

15    traumatic events that Mr. Elawad has not fully disclosed to his

16    family but that are described in the materials that we

17    submitted, he had suffered from depression off and on that was

18    aggravated by the many moves the family made, including the

19    last move where he was again away from the close friends that

20    he had made but also isolated in part by race and economics.

21    And also in part by being -- having a feeling of being an

22    international person in a community that did not have other

23    international citizens at hand.

24         When he transferred to the second college he

25    attended, he began to congregate with other international

```
 1    students, and it was only then that he met and became close to
 2    Morgan Chikawa (ph.).  So the psychological evaluations that
 3    we've submitted, Your Honor, show both depression and a
 4    posttraumatic stress disorder to some extent, but they also
 5    show a dependent personality.  The affidavit we've submitted
 6    from Mr. Fidell (ph.), which describes the Sudanese culture, I
 7    think gives a perfect and very understandable explanation for
 8    how a person of such exceptional character and achievement
 9    could under these circumstances allow himself to become
10    controlled by an agreement with the actions of Morgan Chikawa
11    (ph.).
12              Morgan Chikawa (ph.) himself was like a spark to a
13    pool of oil.  He, because of his own personal background came
14    with a streak of violence in him, came from a violent history
15    with a great deal of anger.  Both of his parents were murdered
16    in an assassination in his native country, and he showed
17    nothing but violence in his encounters with friends and Mr.
18    Elawad.  So we have an exceptional young man who has some
19    depression, some dependent personality characteristics --
20              THE COURT:  How old was he when he met Chikawa (ph.)?
21              MS. FREEMAN:  He was nineteen, your Honor, and this
22    offense was committed shortly after when he was twenty.
23              He has no history of violence or criminal behavior
24    whatsoever.  And in fact --
25              THE COURT:  How did he meet Chikawa (ph.)?
```

```
 1              MS. FREEMAN:  They both were attending the university
 2    together, the community college.
 3              THE COURT:  Chikawa (ph.) was how old?
 4              MS. FREEMAN:  He was twenty-five at the time they
 5    met.  And they were both involved in a group of African
 6    students who were attending the school.
 7              So, Your Honor, because this conduct was completely
 8    atypical for Mr. Elawad, and because he had these other
 9    personality matters -- depression, posttraumatic stress
10    problems and a dependent personality -- and because he
11    encountered someone who was exceptionally violent and
12    exceptionally dangerous, and then, Your Honor, because of the
13    nature and characteristics of Mr. Elawad himself and the danger
14    we feel is a reality for him in a lengthy prison sentence, all
15    of those circumstances, Your Honor, we believe under five K two
16    point zero would permit the Court to find that this -- the
17    facts of this case and of this defendant, are outside of the
18    heartland and support a downward departure.
19              THE COURT:  Now five K two point zero allows a
20    departure where there is something atypical about the defendant
21    or the circumstances?
22              MS. FREEMAN:  I think it permits a departure based on
23    the totality of the circumstances.
24              THE COURT:  What's the Government's position?
25              MR. BRUNSON:  Your Honor, on behalf of Mr. Brown I
```

1    stand by the plea agreement that he entered that Mr. Elawad

2    pled guilty to.

3          THE COURT:  Let me ask you this.  Under the plea

4    agreement, can't I depart downward?  Is that permissible?

5          MS. FREEMAN:  We believe you can, Your Honor.  There

6    is no bar against a motion for downward departure in the plea

7    agreement.

8          MR. BRUNSON:  I don't find a bar to your

9    consideration of five K departures.

10          THE COURT:  Go ahead, then.

11          MR. BRUNSON:  I can't agree with Ms. Freeman that

12    these factors that she has raised warrant a departure.  As

13    you've already noted in your analysis of what happened at the

14    bank robbery, it was a very dangerous situation.  For that Mr.

15    Elawad is going to serve ten years in prison.  I don't see that

16    any other of his conduct, or any other factors that have been

17    raised, warrant reduction of the forty-one months that he's

18    subject to for count one of this offense.

19          THE COURT:  Did he ever live with Chikawa (ph.)?

20          MS. FREEMAN:  Yes, sir.  I believe for approximately

21    two weeks before this robbery he and Chikawa (ph.) and a couple

22    of other young men who were college students were sharing an

23    apartment.

24          MR. BRUNSON:  That's what I understood, Your Honor.

25          THE COURT:  Were the other young men involved in the

1    robbery?

2         MS. FREEMAN:  No, Your Honor.

3         THE COURT:  I know that you had him examined, and I

4    see the reports here, and I actually did look at them as you

5    were filing them earlier, but in your psychological evaluations

6    did you find anything to indicate where his violent conduct

7    came from?  I mean I know we have the abuse and so forth, but

8    the conduct was just so extreme at the bank.

9         MS. FREEMAN:  Your Honor, I think first of all we're

10   all of us basing our description of that conduct on one or two

11   lines in police reports.  And on the understandable trauma that

12   the tellers themselves felt while they were involved in the

13   bank robbery.  The fact is that those same lines support the

14   statement that Mr. Elawad tried to tell one of the tellers to

15   "Be calm," which is not only not a threatening statement, it's

16   a statement of reassurance.

17        THE COURT:  Did he do anything other than to tell the

18   teller to "Be calm"?

19        MS. FREEMAN:  No, Your Honor.  What Dr. Rosensweig

20   found was that he had a dependent personality fed into by his

21   depression and by his own concerns over the trauma that had

22   occurred earlier.  What Mr. Fidell says from his affidavit --

23   that we did not have at the time Dr. Rosensweig wrote her

24   report, and neither of them have conferred with each other, but

25   I think it actually fits exactly -- is that the Sudanese

1     culture calls on people to be extremely loyal to friends and to

2     respect anyone who is even a day holder than they are.

3          THE COURT:  Why wouldn't that have required him to go

4     to his parents?  Clearly he must have known and was definitely

5     at odds with what his mother and father had taught him.  If the

6     Sudanese culture is as you say, then why wouldn't he have been

7     in particular a person who would not have done this because of

8     his strong ties to his parents and the cultural requirements

9     that he honor his parents and not do what he did?

10          MS. FREEMAN:  He had begun excessive drug use, and

11     that's documented in both the interviews with Dr. Sax and

12     Dr. Rosensweig.

13          Secondly, he perceived Morgan Chikawa (ph.) as not

14     only older but dangerous, and he was afraid of him and felt

15     intimidated by him, and also feared that he would do something

16     to Mr. Elawad's family.

17          THE COURT:  Do I have evidence of Mr. Chikawa (ph.)

18     actually threatening Mr. Elawad's family?

19          MS. FREEMAN:  There are descriptions in

20     Dr. Rosensweig's reports of Chikawa (ph.) threatening Mr.

21     Elawad when he had conversations with his brother of

22     continuously wearing a gun.

23          THE COURT:  Where are these in the report?  What are

24     you talking about?  In the report I have in my hands right now?

25          MS. FREEMAN:  Yes, sir.  On page four, Your Honor, at

1   the bottom of the page there's a description of

2   Dr. Rosensweig's report.

3           THE COURT:  I have it right here.  Page four?

4           MS. FREEMAN:  Yes, sir.  At the bottom.

5           THE COURT:  How does the paragraph start?

6           MS. FREEMAN:  The top of that page says, "Defendant's

7   account of events".  And the next to last paragraph talks about

8   an encounter with Mr. Elawad's brother.

9           THE COURT:  It says the same Thursday?

10          MS. FREEMAN:  Yes.  That describes an argument where

11  Chikawa (ph.) gets mad at Malik because he is having an

12  encounter with his brother Hassan.  And then the paragraph

13  after that describes Morgan as "acting crazy and invincible,"

14  "always carried the gun stuck in the waistband of his pants and

15  frequently fingered it."  That Mr. Elawad feared what Mr.

16  Morgan might do to him.

17          He also felt that Morgan Chikawa (ph.) had purposely

18  kept the actual weapon for himself so that Malik Elawad would

19  not have a weapon to defend himself against Chikawa (ph.).

20          In addition, Your Honor, as I believe the *Presentence*

21  *Report* states in our sentencing memorandum, it states that Mr.

22  Elawad called his home while they were being sought for the

23  bank robbery, and he called his parents knowing they had caller

24  I D in an attempt to give them information about where he was.

25  And in that conversation he asked for the phone number of a

1    friend in Atlanta, which again was another clue to give to his

2    parents that he was in that region.  And as a result, his

3    parents immediately called the F. B. I. and were able to give

4    their approximate location, and it was that phone call that in

5    part led to their being located in the motel in the Atlanta

6    area and captured.

7            Mr. Elawad was in the motel room during the shootout

8    with the police.  Mr. Elawad did not threaten anyone in any way

9    and surrendered peacefully.  All of that, again, I think shows

10   how the fact that he was an exceptional young man, even when

11   present in the midst of this horrifying crime.

12           THE COURT:  Now is there anything to indicate exactly

13   why they decided to commit the robbery?  I understand that the

14   defendant contends that he was not informed they were going to

15   do the robbery until the day of the robbery, is that correct?

16           MS. FREEMAN:  That's correct, Your Honor.

17           THE COURT:  So is there any indication as to exactly

18   what the motive for the robbery was?  Were they out of money?

19   Were they in need of money for drugs?  Is there anything to

20   indicate why?

21           MS. FREEMAN:  There's an indication that Morgan

22   Chikawa (ph.) wanted money; that he was upset for not having as

23   much financial security as he had when he lived in Milowee

24   (ph.).  There really isn't any better explanation than that.

25           There is also certainly a record that Malik had been

1    using drugs nonstop for several days up to and including the

2    day of the robbery.

3            THE COURT:  What's Probation's position on the motion

4    for downward departure?

5            THE PROBATION OFFICER:  Your Honor, we'll defer to

6    the Court, but I would just have the Court consider also that

7    Lieutenant Mark Starling of the Columbus Police Department

8    continues to walk around daily with a bullet that lies in his

9    chest.  And if it moves --

10           THE COURT:  This is because of --

11           THE PROBATION OFFICER:  Because of the incident at

12   the mall.  So his career has been altered.  And he also walks

13   with --

14           THE COURT:  What do you mean?

15           THE PROBATION OFFICER:  He was a detective.  Now his

16   duties have changed.  Because of the incident, he has a sixteen

17   percent disability and he has a bullet lying in his chest that

18   at any time could move.

19           THE COURT:  Where was the defendant when this

20   happened?

21           THE PROBATION OFFICER:  He was with Chikawa (ph.) at

22   the Peach Tree Mall.

23           THE COURT:  Has anyone found out what effect, if any,

24   all of this conduct has had on the tellers?

25           THE PROBATION OFFICER:  I spoke to Mr. Hutchins of

```
 1    Regions Financial Corporation, who informed me that that was
 2    something that they handled in-house and I was not allowed to
 3    speak with the tellers personally.
 4              THE COURT:  Anything else, Counsel?
 5              MS. FREEMAN:  No, Your Honor.
 6              THE COURT:  Well whatever I decide, one thing is for
 7    sure, Mr. Elawad, I'm sure it breaks your parents' hearts that
 8    you're involved in this conduct at all.  But I'm sure it's
 9    doubly painful because you were so promising.  No question
10    there.  But for this, you had a very promising life ahead of
11    you.
12              Let me just take some time to think about this and
13    I'll let you know something.
14              MS. FREEMAN:  Thank you, Your Honor.
15              (Whereupon, a recess was taken.)
16              THE COURT:  Ms. Freeman, I would like to look at the
17    law on this a little bit more, and I'd like to look at the
18    evidence a little bit more closely.  So I'm going to resume
19    tomorrow at ten o'clock.  Does that pose a problem for you?
20              MS. FREEMAN:  No, Your Honor.  Does the Court wish us
21    to submit any law on five K two?
22              THE COURT:  No.  If you find any this afternoon you
23    can get them to me as well.  We're going to be looking at them
24    too.  Just call us up and tell us what cases you would like us
25    to read.  I don't think you need to give me a memo, but if
```

1    there are any cases you want me to read, make sure you let us

2    know the citation, and let opposing counsel know, too.

3         MS. FREEMAN:  Yes, sir.

4         THE COURT:  We'll resume tomorrow at ten.

5         (Whereupon, the proceedings were concluded.)

6                    * * * * * * * *

7

8              COURT REPORTER'S CERTIFICATE

9

10

11     I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled

13   matter as prepared by me to the best of my ability.

14

15     I further certify that I am not related to any of

16   the parties hereto, nor their counsel, and I have no

17   interest in the outcome of said cause.

18

19     Dated this 27th day of January 2008.

20

21

22                \s\ Mitchell P. Reisner, CM, CRR
                  MITCHELL  P.  REISNER,  CM,  CRR
23                Official US Dist. Court Reporter
                  Registered Professional Reporter
24                Certified  Real-Time  Reporter

25

```
 1                IN THE UNITED STATES DISTRICT COURT
                                  FOR
 2               THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5

 6   THE UNITED STATES
         OF AMERICA
 7                                      CRIMINAL ACTION NO.
             vs.
 8                                      3:05-CR-121-MHT

 9   MALIK ELAWAD

10

11

12

13

14                          VOLUME II OF II
                          SENTENCING PROCEEDINGS
15

16

17

18                   *   *   *   *   *   *   *   *   *

19

20

21   HEARD BEFORE:      The Hon. Myron H. Thompson

22   HEARD AT:          Montgomery, Alabama

23   HEARD ON:          January 19, 2007

24   APPEARANCES:       Kent Brunson, Esq.

25                      Christine A. Freeman, Esq.
```

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO. H

1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON.
    MYRON H. THOMPSON ON JANUARY 19, 2007 AT THE UNITED STATES
2   COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4           THE COURT:   The Court calls the case of *United States*

5   *of America vs.* Malik Elawad.   This is a continuation of

6   sentencing.

7           The Court has had an opportunity to carefully examine

8   the record more thoroughly, to do some more research on the

9   law, and in particular as to the defendant's request for a five

10  K two zero downward departure as well as the Court's own sua

11  sponte consideration as to whether there should be a downward

12  departure braced on duress.   I've looked at the law, and I

13  believe defense counsel has furnished the Court with a number

14  of cases.   And the Court is of the opinion that while it has

15  the authority to depart under five K two point zero, as well as

16  based on duress, the circumstances of this case do not warrant

17  such.

18          So the motion for downward departure by the defendant

19  is denied, and the Court's sua sponte consideration of whether

20  there should be a downward departure based on duress is also

21  denied.

22          We're ready for sentencing.   And my understanding is

23  that I have sustained the plea agreement over Probation's

24  objection, so I believe the offense level should be twenty-two,

25  is that correct, Probation?

```
 1          THE PROBATION OFFICER:  That's correct, Your Honor.
 2          THE COURT:  And the guideline range would therefore
 3   be forty-one to fifty-one months rather than fifty-one to
 4   sixty-three?
 5          THE PROBATION OFFICER:  That's correct, Your Honor.
 6          THE COURT:  Would the supervised release period still
 7   be three to five years?
 8          THE PROBATION OFFICER:  Yes, Your Honor.
 9          THE COURT:  And I believe the fine range would then
10   be seven thousand five hundred to seventy-five thousand
11   dollars?
12          THE PROBATION OFFICER:  That's correct, Your Honor.
13          THE COURT:  Will the defendant come forward, then,
14   with Ms. Freeman.
15          Under the plea agreement was there an agreement that
16   the sentencing range for count one would be at the low end of
17   the guideline?
18          MR. BRUNSON:  There was, Your Honor.
19          THE COURT:  Anything else before I announce the
20   proposed sentence?  I'll give the defendant another opportunity
21   to comment before I decide whether to impose the sentence as
22   announced.
23          THE DEFENDANT:  I just want to apologize to the
24   community and to my family and to the Court, and just apologize
25   with remorse.
```

1          THE COURT:  I would say that, Mr. Elawad, in fact I
2     am saying that when you make a mistake, you make a big one,
3     don't you.  But you know that.  The sentence is pretty harsh,
4     I'll have to admit that.  So the issue for you really is not
5     that you're receiving adequate punishment, but rather how
6     you're going to deal with it.
7          You are twenty-one now, is that correct?
8          THE DEFENDANT:  Yes, sir.
9          THE COURT:  So the ten years plus the three
10    and-a-half years I'm giving you on count one means that you'll
11    be in prison until your thirties.  And the question becomes
12    whether you can continue to make something of yourself.  I know
13    at twenty-one that must seem like forever, and for a twenty-one
14    year old it is forever.  Literally half of your life over
15    again.  But you can do it.  You can make it through this, and
16    you can still come out of prison after the thirteen or fourteen
17    years and still make something of yourself.
18         You should consider very carefully the injury you've
19    done to the people who were in the bank.  I think I can pretty
20    reasonably conclude that for them it's an experience that they
21    will never forget, and in particular the woman that you
22    confronted.  If there is anything you can do to make up for
23    that, I think it would be good for you.  But after the thirteen
24    or fourteen years when you come out, you still have quite a bit
25    of your life ahead of you, and you can do something with it.

```
1              Now your family is now in where?
2              MS. FREEMAN:  They're in Columbus, Your Honor.
3              THE COURT:  I'm going to recommend that you be placed
4    at a facility near your family.  Where would that be?
5              MS. FREEMAN:  Your Honor, there are facilities in
6    northern Alabama and in northern Florida.
7              THE COURT:  So what would be the recommendation; to
8    say that he be placed as near as possible to a facility near
9    Columbus, Georgia.  Is that what I should say?
10             MS. FREEMAN:  They're actually in Phenix City.
11             THE PROBATION OFFICER:  As close as possible.
12             THE COURT:  As close as possible to Phenix City?
13             THE PROBATION OFFICER:  That's correct.
14             MS. FREEMAN:  Your Honor, his parents are en route
15   right now.  They're about five minutes away from the
16   courthouse.
17             THE COURT:  I'm going to continue sentencing until
18   his folks are here.  I want them here.
19             MS. FREEMAN:  Thank you, Your Honor.
20             (Whereupon, a recess was taken.)
21             THE COURT:  Where are his parents?
22             MS. FREEMAN:  Right there.
23             THE COURT:  They can come forward too if they want.
24             This is Mr. and Mrs. Elawad?
25             MS. FREEMAN:  Yes, Your Honor.
```

1      THE COURT:  As I was telling your son, he made an
2  awful mistake, but it's not the end of his life and I am sure
3  that you two will be there for him over the next thirteen or
4  fourteen years.  It's a long time for him, but I'm sure he'll
5  be there.
6      THE DEFENDANT'S FATHER:  Definitely, Your Honor.
7  Thank you very much.
8      THE COURT:  So are you ready for me to announce the
9  proposed sentence?
10     MS. FREEMAN:  Yes, Your Honor.
11     THE COURT:  In compliance with the opinion in *United*
12 *States vs. Booker*, the Court, while not bound to apply the
13 guidelines, has consulted them and has taken them into account
14 on the issue of the appropriate range of sentence to be imposed
15 in this case.  Having made findings as to the objections to the
16 *Presentence Report*, the Court adopts the factual statements
17 contained in the report with specific findings that the offense
18 level is twenty-two, the criminal history category is one, the
19 guideline range is from forty-one to fifty-one months, the
20 supervised release period is three to five years, and the fine
21 range is from seven thousand five hundred to seventy-five
22 thousand dollars.
23     The Court, having considered and consulted the
24 sentencing guidelines and evaluated the reasonableness of a
25 sentence through the lens of Title Eighteen United States Code,

1    Section three five five three, it is the order, judgment and

2    decree of the Court that the defendant, Malik Elawad, be

3    imprisoned for a total term of one hundred and sixty-one

4    months.  The term consists of forty-one months on count one and

5    one hundred and twenty months on count two, to be served

6    consecutively to count one.

7         It is further ordered that upon release from

8    imprisonment the defendant shall be placed on supervised

9    release for a term of three years.  Within seventy-two hours of

10   release from custody he shall report to the probation office in

11   the district in which he is released.  While on supervised

12   release he shall comply with the mandatory and standard

13   conditions of supervised release on file with the Court.

14        The Court also orders the following special

15   conditions.  The defendant shall participate in drug testing

16   and drug treatment.  He shall contribute to the cost of any

17   treatment based on his ability to pay and the availability of

18   third party payments.

19        He shall submit to a search of his person, residence,

20   office and vehicle pursuant to the search policy of the Court.

21        He shall cooperate in the collection of D N A.

22        He shall pay to the United States District Court

23   Clerk a special assessment fee of two hundred dollars which is

24   due immediately.

25        It is further ordered that he shall make restitution

```
 1   to Regions Financial Corporation, care of Chris E. Huchins,

 2   Twenty-five Washington avenue, first floor, Montgomery,

 3   Alabama, three six one oh four.  In case number zero five

 4   fourteen twenty-three in the amount of one thousand seven

 5   hundred ninety-six dollars and sixty-six cents which is due

 6   immediately.  Any balance remaining at the start of supervision

 7   shall be paid at the rate of one hundred dollars a month.

 8   Because of his inability to pay, the Court waives the

 9   imposition of a fine.

10          The Court also recommends to the prison -- to the

11   United States Bureau of Prisons that he be placed in a facility

12   as near as possible to Phenix City, Alabama so that he can be

13   near his parents.

14          Could I see Ms. Freeman and Mr. Brunson for just a

15   second.

16          (Whereupon, an off-the-record bench conference

17   between both counsel and the Court was held.)

18          THE COURT:  It is further recommended that he be

19   placed in a facility where he can receive drug treatment and

20   mental health treatment.

21          Now I ask you at this time, Mr. Elawad, are there any

22   objections to the sentence imposed or to the manner in which

23   the Court pronounced it, other than those objections previously

24   stated for the record?  For example, do you have any objection

25   to the Court's ultimate findings of facts and conclusions of
```

1    law?  Furthermore, you are instructed that if you have an

2    objection, you must not only state the objection you must give

3    the grounds for the objection.

4            THE DEFENDANT:  I have no objection.

5            THE COURT:  Do you have anything to say as to why

6    this sentence as announced should not be imposed, or do you

7    have anything to say in mitigation of the sentence?

8            THE DEFENDANT:  I just want to apologize to the Court

9    and to my family,  to my Mom and Dad and my brothers and the

10   community, to the victims.  And I've really gone through

11   something and I understand fully and just apologize.

12           THE COURT:  It is the order, judgment and decree of

13   the Court that the sentence as announced is hereby imposed.

14           Now to the extent that you still have a right to

15   appeal, you have ten days to file any notice of appeal.  If you

16   cannot afford the cost of an appeal the Court will allow you to

17   appeal at no cost, including furnishing you with a free

18   transcript and a free attorney.

19           Anything else, Counsel?

20           MS. FREEMAN:  No, Your Honor.

21           MR. BRUNSON:  Not from the Government.

22           THE COURT:  You are in the custody of the marshal.

23   Court's in recess.

24           (Whereupon, the proceedings were concluded.)

25                   *  *  *  *  *  *  *

1

2                        COURT REPORTER'S CERTIFICATE

3

4

5          I certify that the foregoing is a correct transcript

6     from the record of proceedings in the above-entitled

7     matter as prepared by me to the best of my ability.

8

9          I further certify that I am not related to any of

10    the parties hereto, nor their counsel, and I have no

11    interest in the outcome of said cause.

12

13         Dated this 27th day of January 2008.

14

15

16                        \s\ Mitchell P. Reisner, CM, CRR
                          MITCHELL   P.   REISNER,   CM,   CRR
17                        Official US Dist. Court Reporter
                          Registered Professional Reporter
18                        Certified   Real-Time   Reporter

19

20

21

22

23

24

25

✎AO 245B     (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

MIDDLE                          District of                    ALABAMA

UNITED STATES OF AMERICA          **JUDGMENT IN A CRIMINAL CASE**
**V.**

MALIK ELAWAD                    Case Number:        3:05cr121-MHT

                                                    (WO)

                                USM Number:         56894-019

                                Christine A. Freeman
                                Defendant's Attorney

**THE DEFENDANT:**

X pleaded guilty to count(s)    One and Two of the Indictment  on 2/6/06

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. 2113(a) and (d) | Bank Robbery by Force | 5/5/2005 | 1 |
| 18 U.S.C. 924 (c)(1)(iii) and 2 | Discharge of a Firearm during the Commission of a Crime of Violence and Aiding and Abetting | 5/5/2005 | 2 |

The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____  ☐ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 19, 2007
Date of Imposition of Judgment

_____
Signature of Judge

MYRON H. THOMPSON, U.S. DISTRICT JUDGE
Name and Title of Judge

1/23/2007
Date

**GOVERNMENT EXHIBIT**

CASE NO.

EXHIBIT NO. 1

**SCANNED**

AO 245B   (Rev. 06/05) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT:        MALIK ELAWAD
CASE NUMBER:      3:05cr121-MHT

Judgment — Page    2    of    6

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

161 Mos. This term consist of 41 months on Count 1 and 120 months on Count 2 to be served consecutively to Count 1

X The court makes the following recommendations to the Bureau of Prisons:
    1. The court recommends that the defendant be designated to a facility near as possible to Phenix City, Alabama.
    2. The court recommends that the defendant be placed in a drug and mental health treatment facility.
    3. The court recommends, due to the defendant's non-violent background, youth, youthful appearance and prior life experiences, that the defendant be designated to a facility where he will not be subject to physical abuse by other prisoners.

The defendant does not request protective custody.
X The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐   at  _____   ☐ a.m.   ☐ p.m.   on  _____ .

    ☐   as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on  _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:


Defendant delivered on  _____   to  _____

at  _____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
          Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:      MALIK ELAWAD
CASE NUMBER:    3:05cr121-MHT

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

3 Years

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
     future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a
     student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

     If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

     The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of
     each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other
     acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any
     controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a
     felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any
     contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the
     permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal
     record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the
     defendant's compliance with such notification requirement.

AO 245B    (Rev. Case 3:05-cr-00121-MHT-CSC    Document 51    Filed 01/23/2007    Page 4 of 6
Sheet 3C — Supervised Release

Judgment—Page __4__ of __6__

DEFENDANT:        MALIK ELAWAD
CASE NUMBER:    3:05cr121-MHT

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in drug testing and drug treatment and shall contribute to the cost of any treatment based on ability to pay and availability of third party payments.

2. The defendant shall submit to a search of his person, residence, office, and vehicle pursuant to the search policy of this court.

AO 245B    (Rev. Case 3:05-cr-00121-MHT-CSC    Document 51    Filed 01/23/2007    Page 5 of 6
          Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:          MALIK ELAWAD
CASE NUMBER:     3:05cr121-MHT

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $    200 | $ | $ 1,796.66 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

X   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| Regions Financial Corp. | | $1,796.66 | |
| c/o Chris E. Hudgins | | | |
| 25 Washington Ave. 1ˢᵗ Floor | | | |
| Montgomery AL 36104 | | | |
| Case Number: 05-1423 | | | |

| **TOTALS** | $ _____0 | $ _____1796.66 |
|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for the    ☐  fine   ☐  restitution.

   ☐  the interest requirement for the    ☐  fine   ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

| | |
|---|---|
| DEFENDANT:     MALIK ELAWAD | Judgment — Page __6__ of __6__ |
| CASE NUMBER:    3:05cr121-MHT | |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**   X   Lump sum payment of $ __1,996.66__ due immediately, balance due

    ☐   not later than _____ , or
    ☐   in accordance    ☐ C,   ☐ D,   ☐   E, or   ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐ C,     ☐ D, or   ☐ F below); or

**C**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   X   Special instructions regarding the payment of criminal monetary penalties:

    All criminal monetary penalty payments shall be made to the Clerk, United States District Court, Middle District of Alabama, Post Office Box 711, Montgomery, Alabama 36101. Any balance remaining at the start of supervision shall be paid at the rate of $100 per month.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.