**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MALIK ELAWAD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08cv38-MHT** |
| | ) | **(CR No. 3:05-cr-00121-MHT-CSC)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**UNITED STATES'S COMPLIANCE WITH COURT'S**
**FEBRUARY 19, 2008 ORDER REGARDING THE SENTENCING**
**TRANSCRIPT IN THIS CASE**

COMES NOW the United States of America ("the Government") by and through its

attorneys, Leura G. Canary, United States Attorney, and Sandra J. Stewart, Assistant United

States Attorney, and in compliance with this Court's February 19, 2008 Order requiring the

Government to file with this Court a copy of the transcript of the sentencing hearing and provide

a copy of this transcript to the petitioner, responds as follows:

1.      On February 19, 2008, this Court, in addition to granting the Government an

extension of time within which to file its response in this case, ordered that the Government file

the transcript of the sentencing hearing in the above-referenced case on or before March 13,

2008.  Attached to this response is a copy of that two-volume transcript.

2.      Furthermore, the Government represents that it has served copies of that

sentencing transcript on Petitioner Malik Elawad.  Government's Exhibits G and H to the United

States's Response To § 2255 Motion are the two volumes of transcript of the sentencing hearing,

and  they were supplied to Elawad, along with its response and the other exhibits to the response.

1

Respectfully submitted this 10th day of March, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MALIK ELAWAD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08cv38-MHT** |
| | ) | **(CR No. 3:05-cr-00121-MHT-CSC)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2008, I electronically filed the foregoing response with

the Clerk of the Court using the CM/ECF system and mailed, postage prepaid, a copy of this

response to the *pro se* Defendant/Petitioner as follows:

Malik Elawad
Rg. #56894-019 (Beta A)
FCI Talladega
PMB 1000
Talladega, AL  35160

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

3

1                    IN THE UNITED STATES DISTRICT COURT
                                   FOR
2                        THE MIDDLE DISTRICT OF ALABAMA

3

4

5

6    THE UNITED STATES
        OF AMERICA
7                                           CRIMINAL ACTION NO.
             vs.
8                                           3:05-CR-121-MHT
     MALIK ELAWAD
9

10

11

12

13
                              VOLUME I OF II
14                        SENTENCING PROCEEDINGS

15

16

17

18                    *  *  *  *  *  *  *  *  *  *

19

20

21   HEARD BEFORE:       The Hon. Myron H. Thompson

22   HEARD AT:           Montgomery, Alabama

23   HEARD ON:           January 18, 2007

24   APPEARANCES:        Kent Brunson, Esq.

25                       Christine A. Freeman, Esq.

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.      G

| | |
|---|---|
| 1 | WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON. |
| | MYRON H. THOMPSON ON JANUARY 18, 2007 AT THE UNITED STATES |
| 2 | COURTHOUSE IN MONTGOMERY, ALABAMA: |
| 3 | |
| 4 | THE COURT:  The Court calls the case of *United States* |
| 5 | *of America vs. Malik Elawad.*  Is that the way he pronounces his |
| 6 | last name? |
| 7 | MS. FREEMAN:  That's correct, Your Honor. |
| 8 | THE COURT:  Would you have him step forward at the |
| 9 | lectern. |
| 10 | This is criminal action number three oh five one |
| 11 | twenty-one M. H. T. |
| 12 | MS. FREEMAN:  Your Honor, present in the courtroom |
| 13 | today are Mr. Elawad's mother and father, his four brothers and |
| 14 | a family friend, Grace Asmalan (ph.). |
| 15 | THE COURT:  Very good. |
| 16 | Now, Mr. Elawad, have you and your attorney reviewed |
| 17 | the *Presentence Report*, including any revisions that may have |
| 18 | been made after the initial disclosure? |
| 19 | THE DEFENDANT:  Yes, sir, we have. |
| 20 | THE COURT:  Now was there a plea in this case? |
| 21 | MS. FREEMAN:  There was, Your Honor. |
| 22 | THE COURT:  Was there a plea agreement? |
| 23 | MS. FREEMAN:  Yes, sir. |
| 24 | THE COURT:  Would you state the plea agreement. |
| 25 | MS. FREEMAN:  Your Honor, the plea agreement set out |

1    a specific calculation in which the Government agreed on

2    certain guideline calculations; that was, that they would file

3    both -- Mr. Elawad would qualify for the two level reduction of

4    acceptance of responsibility, and the Government would file a

5    motion for the third point for acceptance of responsibility.

6    The Government agreed that he was entitled to a two level

7    reduction for his minor role.

8         We also agreed again that certain cross-references

9    and enhancements would not apply.  In return, Mr. Elawad also

10    agreed that to the base offense level of twenty, there would be

11    seven points added; one level for the amount of the theft being

12    greater than ten thousand, two levels for the fact that a bank

13    was involved, and four levels for the fact that an officer

14    sustained injury as a result of the accomplice's actions during

15    the escape.

16         THE COURT:  What officer sustained injury?

17         MS. FREEMAN:  There was a confrontation with the

18    police officer approximately four hours after the bank robbery

19    occurred at a mall in Georgia.

20         THE COURT:  But I know that his accomplice was

21    killed, is that correct?

22         MS. FREEMAN:  Your Honor, that occurred a couple of

23    days afterwards.  Mr. Elawad and his accomplice weren't

24    actually taken into custody until four days after the robbery.

25    But for a few hours, I believe, after the bank robbery, there

```
 1    was a confrontation at a mall in Columbus, Georgia and shots
 2    were fired by the codefendant, Mr. Chikawa (ph.) and an officer
 3    was hit at that time.  Then a couple of days later when they
 4    were surrounded at a hotel in Georgia, Mr. Chikawa (ph.) was
 5    killed in a confrontation with the police.
 6            Mr. Elawad was still in the motel room during that
 7    confrontation, and he surrendered peacefully.  The Government
 8    has agreed that at none of these times did Mr. Elawad carry a
 9    loaded weapon.  He had a BB gun --
10            THE COURT:  I know, but I just want to talk about the
11    plea agreement.  The plea agreement, then, is a three level
12    reduction for acceptance of responsibility?
13            MS. FREEMAN:  Yes, sir.
14            THE COURT:  And a two level reduction for minor role?
15            MS. FREEMAN:  Yes, sir.
16            THE COURT:  And the Government agreed to recommend a
17    sentence at the low end of the guideline range for count one?
18            MR. BRUNSON:  Yes, Your Honor.
19            THE COURT:  And that the sentences run concurrently
20    with any offense the defendant is charged with by the State of
21    Georgia?
22            MS. FREEMAN:  That's correct, Your Honor.
23            MR. BRUNSON:  To any degree this Court has that
24    authority.
25            THE COURT:  Now he's looking at a mandatory minimum
```

```
1    on count two of ten years, is that correct?

2            MS. FREEMAN:  Yes, sir.

3            THE COURT:  Is that an actual sentence of ten years,

4    or just a mandatory minimum of ten years?

5            MS. FREEMAN:  It's a sentencing enhancement that's

6    required where there is a finding that the firearm was

7    discharged.  So that would make it a mandatory sentence of ten

8    years.

9            THE COURT:  Of ten years.

10           MR. BRUNSON:  Yes, Your Honor.

11           THE COURT:  So he's looking at ten years, period.

12           MS. FREEMAN:  On count two.

13           THE COURT:  So the only room for play, we'll call it,

14   is as to count one.

15           MS. FREEMAN:  That's correct, Your Honor.

16           THE COURT:  So anything I give him would be in

17   addition to the ten years?

18           MS. FREEMAN:  That's correct.

19           THE COURT:  Does it have to be consecutive?

20           MR. BRUNSON:  Yes, Your Honor.

21           THE COURT:  So whatever I give him on count one,

22   that's really the only issue we're disputing here today.

23           MR. BRUNSON:  That's correct, Your Honor.

24           THE COURT:  I understand Probation has some concerns

25   with the plea agreement?
```

| | |
|---|---|
| 1 | THE PROBATION OFFICER: Yes, Your Honor. But before |
| 2 | I go to that, I would also like to state that based on a nine |
| 3 | twenty-four C, it would be not less than ten years. I don't |
| 4 | think it specifies that it has to be -- |
| 5 | THE COURT: So you're saying I have to give him more |
| 6 | than ten years. |
| 7 | What's the maximum he can get on count two? |
| 8 | THE PROBATION OFFICER: It says "less than ten," and |
| 9 | I would assume it could go up to life. |
| 10 | THE COURT: No one is disputing it should be not less |
| 11 | than ten years? |
| 12 | MR. BRUNSON: Mr. Lee is correct. |
| 13 | THE COURT: So no one is asking for more than ten |
| 14 | years? |
| 15 | THE PROBATION OFFICER: Right. It's a sentence of |
| 16 | not less than ten years. |
| 17 | THE COURT: With regard to the plea agreement, you |
| 18 | said you had some problems with the plea agreement? |
| 19 | THE PROBATION OFFICER: That was a reduction for the |
| 20 | two levels of a minor role. In applying the guidelines, it |
| 21 | contradicts application of the guidelines. |
| 22 | THE COURT: What type of plea is this? If I agree |
| 23 | with Probation that he should not receive a minor role, does |
| 24 | that mean he can withdraw his plea? |
| 25 | MR. BRUNSON: Yes, Your Honor. It's an eleven C one |

1    C plea.

2              THE COURT:  Is that correct, Ms. Freeman?

3              MS. FREEMAN:  Yes, sir.

4              THE COURT:  So the first issue is whether he should

5    receive a minor role pursuant to the plea agreement, is that

6    correct?

7              MS. FREEMAN:  Yes, sir.

8              THE COURT:  I can accept the plea agreement.

9              And I believe, Ms. Freeman, you've also asked for a

10   downward departure based on five K two?

11             MS. FREEMAN:  That's correct, Your Honor.

12             THE COURT:  And I believe you've given a number of

13   circumstances that you want the Court to consider?

14             MS. FREEMAN:  Yes, sir.

15             THE COURT:  Now do you intend to present any evidence

16   at all on this?

17             MS. FREEMAN:  Well, Your Honor, I would ask the Court

18   to adopt and admit the twenty-nine exhibits that we have

19   already filed with the Court.

20             THE COURT:  Okay.  Let's see, they have been filed

21   already?

22             MS. FREEMAN:  Yes, sir.  They were filed from October

23   to a week ago, and they're numbered.

24             THE COURT:  Do you have copies here today?

25             MS. FREEMAN:  Yes, sir, I do.

```
 1              THE COURT:  Could I see them so I'll know what you
 2    want me to consider?
 3              (Whereupon, the Court examined said documents.)
 4              MS. FREEMAN:  Your Honor, there are two additional
 5    exhibits that were filed that are not in that.  They are the
 6    two psychological reports that were filed under seal.
 7              THE COURT:  Right.
 8              MS. FREEMAN:  I have unmarked copies of the two
 9    psychological reports that have been filed with the Court.
10              THE COURT:  They're not included there?
11              MS. FREEMAN:  They're not included there, but they
12    are filed with the Court under seal.
13              THE COURT:  Could I see those?
14              (Whereupon, the Court examined said documents.)
15              MS. FREEMAN:  And this was filed last week.
16              THE COURT:  Now Probation is recommending a sentence
17    as to count one of how much?
18              THE PROBATION OFFICER:  The recommendation would be
19    for fifty-one months, Your Honor, which is in compliance with
20    the plea agreement for the low end of the guidelines.
21              THE COURT:  That assumes I accept the plea agreement.
22              THE PROBATION OFFICER:  That's correct, Your Honor.
23              THE COURT:  Now if I don't accept the plea agreement,
24    what is your recommended sentence?
25              THE PROBATION OFFICER:  If you accept the plea
```

1    agreement, the sentencing range goes from, I think it's

2    forty-one -- The low end is forty-one.

3            MR. BRUNSON:  To fifty-one, Your Honor.

4            THE PROBATION OFFICER:  Right.  I would stand on the

5    fifty-one months being appropriate, Your Honor.

6            THE COURT:  Under the plea agreement, his sentencing

7    range would be what?

8            MR. BRUNSON:  Forty-one to fifty-one months.  That

9    would be a total offense level of twenty-two, so it would be

10   forty-one to fifty-one months, plus the hundred and twenty

11   months for count one -- or excuse me, for count two.

12           MS. FREEMAN:  I agree with that, Your Honor.

13           MR. BRUNSON:  That would be a hundred and sixty-one

14   months.

15           THE COURT:  Under the plea agreement, are you

16   supposed to make a recommendation at the low end?

17           MR. BRUNSON:  Yes, it is.

18           THE COURT:  So you would be recommending forty-one

19   months?

20           MR. BRUNSON:  Yes, Your Honor.

21           THE COURT:  And with the ten years, how much would

22   that be?

23           MR. BRUNSON:  A hundred and sixty-one months, Your

24   Honor.

25           THE COURT:  So that would be --

```
 1              MR. BRUNSON:  A hundred and twenty plus forty-one.

 2              THE COURT:  Right.  That would be what, thirteen

 3     years five months?

 4              MS. FREEMAN:  Yes, sir.

 5              THE COURT:  Is that right?

 6              MS. FREEMAN:  Yes, sir.

 7              THE COURT:  Now you're asking for a sentence of what,

 8     Ms. Freeman?

 9              MS. FREEMAN:  We're asking the Court to go lower than

10     forty-one months with a downward departure.

11              THE COURT:  So you're saying a reasonable sentence

12     would be what?

13              MS. FREEMAN:  Ten years, Your Honor.

14              THE COURT:  So you want zero for count one?

15              MS. FREEMAN:  Let's say ten years and one day.

16              THE COURT:  Ten years and one day.

17              MS. FREEMAN:  Yes, sir.

18              THE COURT:  Okay.  Well, I'm not sure that's

19     different from zero.  On page four of the memorandum I thought

20     you said a sentence of fourteen years was reasonable.

21              MS. FREEMAN:  We actually said on the very first page

22     a total sentence of fourteen years would be a reasonable

23     sentence.  But we're asking for more, Your Honor.

24              THE COURT:  Right.  Thirteen five would be even less

25     than the fourteen years.  And that's under your plea agreement,
```

```
1    assuming I accept it.
2            MS. FREEMAN:  Yes.
3            THE COURT:  Well why don't we discuss your plea
4    agreement.  Why don't we discuss whether I should accept the
5    plea agreement first, and then we'll go into the downward
6    departure motion after that.  And you can walk me through that.
7            The first issue is why does Probation say that he
8    should not receive two levels for being -- for a minor role?
9            THE PROBATION OFFICER:  Your Honor, in applying the
10   guidelines and looking at his relevant conduct, Mr. Elawad
11   jointly undertook this criminal activity with knowing all
12   foreseeable acts.  And in the official -- or in the instances
13   that occurred after they entered the bank and left --
14           THE COURT:  What was his conduct in the actual
15   offense?  Let's go over that first.
16           THE PROBATION OFFICER:  He went into the bank with
17   Mr. Chikawa (ph.) having a weapon.  Whether or not his --
18           THE COURT:  Who was carrying the weapon?
19           THE PROBATION OFFICER:  They both had a weapon.
20           MS. FREEMAN:  Mr. Elawad had a BB gun.
21           THE COURT:  They both had what appeared to be guns?
22           THE PROBATION OFFICER:  That's correct, Your Honor.
23   While in the bank they basically demanded money.  Mr. Chikawa
24   (ph.) in one area of the bank, Mr. Elawad in the other.
25           THE COURT:  Who actually made statements?
```

```
 1              THE PROBATION OFFICER:  From the information we
 2     received, both individuals demanded money.
 3              THE COURT:  Do you know what Mr. Elawad is supposed
 4     to have said?
 5              THE PROBATION OFFICER:  There is an instance in
 6     paragraph eight of the report, Your Honor, where Mr. Elawad
 7     brandished a firearm later determined to be a BB gun, and he
 8     pointed it at a bank employee.  He instructed her to get down,
 9     and upon her compliance he dragged her by the shirt from an
10     office.  He continued to point the gun at her head and said
11     something to the effect of, "Don't make me kill you."
12              Prior to leaving the bank he went back to the
13     employee and said, "Stay calm."  This was within the bank.
14              THE COURT:  But did he actually say, "Give me your
15     money," too?
16              THE PROBATION OFFICER:  Yes.  Paragraph seven
17     indicates that Mr. Elawad joined Mr. Chikawa (ph.) in demanding
18     money from the teller.
19              MS. FREEMAN:  I'm not certain he asked for money
20     directly.  He certainly didn't distance himself from what Mr.
21     Chikawa (ph.) said or did, but Mr. Chikawa (ph.) took money and
22     screamed the quote given in paragraph seven as he jumped over
23     the counter.
24              THE COURT:  Now Mr. Elawad brandished the BB gun,
25     right?
```

```
 1              MS. FREEMAN:  That's correct Your Honor.

 2              THE COURT:  Pointed it at an employee and instructed

 3    her to get down?

 4              MS. FREEMAN:  That's correct.

 5              THE COURT:  He's also supposed to have drugged the

 6    employee by the shirt while continuing to point the gun at her

 7    head.  And I think he's supposed to have made statements to

 8    her, don't make me kill you?

 9              MS. FREEMAN:  Yes.  And then he told her to remain

10    calm, Your Honor.

11              THE COURT:  Why is the Government -- Why should I

12    accept this plea agreement that Mr. Elawad should receive a two

13    point reduction for a minor role in light of what I understand

14    that he pointed the gun at the bank employee, instructed her to

15    get down, dragged her, pointed a gun at her head and made the

16    statement, "Don't make me kill you"?

17              MR. BRUNSON:  Your Honor, appearing on behalf of Mr.

18    Brown, who is out of the office, and he prepared the plea

19    agreement, he has briefed me on his thinking and both the

20    Presentence Report and the sentencing memorandum of

21    Ms. Freeman.  His position is that Mr. Elawad pled guilty to

22    the offense, which he is clearly guilty of that's going to

23    result in a sentence of not less than a hundred and twenty

24    months.  He's also agreed through the plea agreement to four

25    levels being enhanced because the police officer who was shot,
```

1  that's not conduct at the bank as I understand, but that's a

2  separate incident.

3          What happened in the bank is what resulted in the

4  hundred and twenty months, this is my understanding.  But

5  because Mr. Elawad, according to Mr. Brown, was less culpable

6  than the other person, did not fire the shot --

7          THE COURT:  Fire the shot when?

8          MR. BRUNSON:  When the policeman was shot.  The four

9  point enhancement, as I understand it, is not a result of the

10 conduct that you have gone through in looking through the

11 record.

12         MS. FREEMAN:  That's correct.  It's as a result of

13 the conduct described in paragraph ten of the *Presentence*

14 *Report*.

15         THE COURT:  Say this again.  In the four point --

16         MS. FREEMAN:  The four point enhancement relates to

17 relevant conduct that is described in paragraph ten of the

18 *Presentence Report*.  And that is that sometime after the

19 robbery, within a short period of time, Mr. Chikawa (ph.) and

20 Mr. Elawad were at a mall in Columbus, Georgia.  Police

21 officers approached them, and Chikawa (ph.) fired his gun at

22 the officers and an officer suffered an injury as a result.

23 That is the four point enhancement.

24         MR. BRUNSON:  And that's Mr. Brown's position, that

25 in that conduct, Mr. Elawad --

1           THE COURT:  I guess what we need to define here is

2    what is relevant conduct.  So if we look at what happened

3    solely at the bank, that could be one scenario we look at.  And

4    I guess what you're saying is, I should be looking at the

5    conduct over the entire period of time, which includes the bank

6    robbery and the events after the bank robbery, including the

7    matter with the police officer and everything else.  And if you

8    look at the whole picture, you're saying that his conduct could

9    be considered relevant because he's getting enhancements for

10   all of this, not just for the bank robbery.

11          MR. BRUNSON:  That's what I was trying to indicate to

12   the Court.  He has admitted through his plea agreement a four

13   point enhancement.  But that's not the conduct at the bank

14   robbery, that's separate conduct.  I'm agreeing with the way

15   you just stated it.

16          THE COURT:  So what you're saying is, that if we look

17   at all of the conduct for which he has received enhancements,

18   including the four points, you're saying that he was not as

19   involved in everything and therefore you want to give him two

20   points downward because some of his involvement was minor.

21          MR. BRUNSON:  That is Mr. Brown's position.

22          THE COURT:  Some parts of the overall conduct, in

23   particular the conduct for which he received the extra four

24   points.

25          MR. BRUNSON:  Yes, Your Honor.

```
1          MS. FREEMAN:  And, Your Honor, that meets the
2    Eleventh Circuit's analysis for minor role reduction.
3          THE COURT:  How does that mean the --
4          MS. FREEMAN:  They said that specifically you look at
5    whether or not the defendant played a minor role in relation to
6    the relevant conduct for which he is held accountable.
7          THE COURT:  So I would be looking at it too narrowly
8    if I just looked at the bank incident.
9          MS. FREEMAN:  That's correct.
10         THE COURT:  What about that?
11         THE PROBATION OFFICER:  Your Honor, I think the Court
12   should be aware that when the officers approached Mr. Chikawa
13   (ph.) and Mr. Elawad at the mall, they were in an attempt to
14   apprehend them for the conduct at the bank.  That's why they
15   were there.  So I think if you look at relevant conduct, you
16   have to say that they -- the incident that happened at the mall
17   was in their attempt to evade arrest for the bank incident.
18   And it is all combined.
19         I don't think you can separate his role.  He did not
20   cease and desist.  There were other people on the scene that
21   stopped and were later questioned.  He fled.  He used that
22   incident to flee further.
23         MS. FREEMAN:  However, Your Honor, the four point
24   enhancement is not for merely fleeing, it is for the serious
25   bodily injury.
```

1              THE COURT:  Now the four point enhancement was four

2    points in addition to what?

3              MS. FREEMAN:  That is four points in addition to the

4    other offense level points.

5              THE COURT:  How many points?

6              MS. FREEMAN:  He starts with twenty for the battle.

7    We add one for the amount taken, two because it's a financial

8    institution.  So he's at twenty-three.  Added to that are four

9    points for the serious bodily injury.  So he was already at

10    twenty-three points.

11              Then has this four points added to that.  Then has

12    the hundred twenty months added to that as well.  And, Your

13    Honor, I would point out that the plea agreement also agrees as

14    the guidelines state because he was pleading to the nine

15    twenty-four C count.  He could not get an enhancement under the

16    guidelines for the use of the gun at the bank robbery.  The use

17    of the gun at the bank robbery would have resulted in a seven

18    point enhancement under the bank robbery guideline, which would

19    only have put his -- would only have brought the sentence for

20    count one up to a hundred and eight months.  But instead, he's

21    agreed to the count two conviction, which adds a full hundred

22    and twenty months to this sentence.

23              So, in fact, the four point enhancement that he

24    agreed to for separate conduct would have been on top of a

25    hundred and eight month sentence, and he's still getting more

1    than that with the hundred and twenty months sentence.

2          THE COURT:  So, Probation, you want me to give him a

3    hundred and seventy-one months, assuming he doesn't withdraw

4    his plea, and under the plea agreement, assuming that I don't

5    agree with the downward departure, he would be looking at a

6    hundred and sixty-one months.

7          MR. BRUNSON:  That is correct, Your Honor.

8          MS. FREEMAN:  Yes, Your Honor.

9          THE COURT:  Okay.  I think it's clear that if I

10    focused on just the conduct at the bank, that he would not be

11    considered having played a minor role.  I am disturbed by his

12    conduct at the bank, which was clearly extremely egregious.

13    It's clear that the relevant conduct includes conduct beyond

14    the conduct at the bank.

15          Having considered the case in its totality, which I

16    agree with the defendant I must do, when it comes to relevant

17    conduct, I'll accept the plea agreement.  So I'll give him the

18    two point reduction for a minor role.

19          We'll now move to your request for a downward

20    departure.

21          MS. FREEMAN:  Thank you, Your Honor.

22          We presented a number of exhibits to the Court and a

23    number of different arguments in our sentencing memorandum.  I

24    want to summarize very briefly what I believe those exhibits

25    show to the Court.

1          First, they show that Mr. Elawad was considered by

2    all who knew him until the time of this event as an exceptional

3    child.  Not just a good kid, but an exceptional kid.  He had an

4    outstanding academic record.  He had the high opinion of

5    teachers and counselors and other adults who he encountered.

6    He had the high opinion of his friends, at least one of whom

7    has submitted a letter to the Court in which he describes

8    trying to -- I believe he's quoted in an evaluation, but at

9    least one of his friends acknowledges that he tried to persuade

10   Mr. Elawad to do something wrong when he was younger and Mr.

11   Elawad had refused.  And for that reason he had always

12   respected him a great deal.

13         Then we have evidence through both Dr. Sax and

14   Dr. Rosensweig's evaluations that due in part to a few

15   traumatic events that Mr. Elawad has not fully disclosed to his

16   family but that are described in the materials that we

17   submitted, he had suffered from depression off and on that was

18   aggravated by the many moves the family made, including the

19   last move where he was again away from the close friends that

20   he had made but also isolated in part by race and economics.

21   And also in part by being -- having a feeling of being an

22   international person in a community that did not have other

23   international citizens at hand.

24         When he transferred to the second college he

25   attended, he began to congregate with other international

1　　students, and it was only then that he met and became close to

2　　Morgan Chikawa (ph.).  So the psychological evaluations that

3　　we've submitted, Your Honor, show both depression and a

4　　posttraumatic stress disorder to some extent, but they also

5　　show a dependent personality.  The affidavit we've submitted

6　　from Mr. Fidell (ph.), which describes the Sudanese culture, I

7　　think gives a perfect and very understandable explanation for

8　　how a person of such exceptional character and achievement

9　　could under these circumstances allow himself to become

10　　controlled by an agreement with the actions of Morgan Chikawa

11　　(ph.).

12　　　　　　　Morgan Chikawa (ph.) himself was like a spark to a

13　　pool of oil.  He, because of his own personal background came

14　　with a streak of violence in him, came from a violent history

15　　with a great deal of anger.  Both of his parents were murdered

16　　in an assassination in his native country, and he showed

17　　nothing but violence in his encounters with friends and Mr.

18　　Elawad.  So we have an exceptional young man who has some

19　　depression, some dependent personality characteristics --

20　　　　　　　THE COURT:  How old was he when he met Chikawa (ph.)?

21　　　　　　　MS. FREEMAN:  He was nineteen, your Honor, and this

22　　offense was committed shortly after when he was twenty.

23　　　　　　　He has no history of violence or criminal behavior

24　　whatsoever.  And in fact --

25　　　　　　　THE COURT:  How did he meet Chikawa (ph.)?

```
1              MS. FREEMAN:  They both were attending the university
2    together, the community college.
3              THE COURT:  Chikawa (ph.) was how old?
4              MS. FREEMAN:  He was twenty-five at the time they
5    met.  And they were both involved in a group of African
6    students who were attending the school.
7              So, Your Honor, because this conduct was completely
8    atypical for Mr. Elawad, and because he had these other
9    personality matters -- depression, posttraumatic stress
10   problems and a dependent personality -- and because he
11   encountered someone who was exceptionally violent and
12   exceptionally dangerous, and then, Your Honor, because of the
13   nature and characteristics of Mr. Elawad himself and the danger
14   we feel is a reality for him in a lengthy prison sentence, all
15   of those circumstances, Your Honor, we believe under five K two
16   point zero would permit the Court to find that this -- the
17   facts of this case and of this defendant, are outside of the
18   heartland and support a downward departure.
19             THE COURT:  Now five K two point zero allows a
20   departure where there is something atypical about the defendant
21   or the circumstances?
22             MS. FREEMAN:  I think it permits a departure based on
23   the totality of the circumstances.
24             THE COURT:  What's the Government's position?
25             MR. BRUNSON:  Your Honor, on behalf of Mr. Brown I
```

1    stand by the plea agreement that he entered that Mr. Elawad

2    pled guilty to.

3            THE COURT:  Let me ask you this.  Under the plea

4    agreement, can't I depart downward?  Is that permissible?

5            MS. FREEMAN:  We believe you can, Your Honor.  There

6    is no bar against a motion for downward departure in the plea

7    agreement.

8            MR. BRUNSON:  I don't find a bar to your

9    consideration of five K departures.

10           THE COURT:  Go ahead, then.

11           MR. BRUNSON:  I can't agree with Ms. Freeman that

12   these factors that she has raised warrant a departure.  As

13   you've already noted in your analysis of what happened at the

14   bank robbery, it was a very dangerous situation.  For that Mr.

15   Elawad is going to serve ten years in prison.  I don't see that

16   any other of his conduct, or any other factors that have been

17   raised, warrant reduction of the forty-one months that he's

18   subject to for count one of this offense.

19           THE COURT:  Did he ever live with Chikawa (ph.)?

20           MS. FREEMAN:  Yes, sir.  I believe for approximately

21   two weeks before this robbery he and Chikawa (ph.) and a couple

22   of other young men who were college students were sharing an

23   apartment.

24           MR. BRUNSON:  That's what I understood, Your Honor.

25           THE COURT:  Were the other young men involved in the

1    robbery?

2         MS. FREEMAN:  No, Your Honor.

3         THE COURT:  I know that you had him examined, and I

4    see the reports here, and I actually did look at them as you

5    were filing them earlier, but in your psychological evaluations

6    did you find anything to indicate where his violent conduct

7    came from?  I mean I know we have the abuse and so forth, but

8    the conduct was just so extreme at the bank.

9         MS. FREEMAN:  Your Honor, I think first of all we're

10   all of us basing our description of that conduct on one or two

11   lines in police reports.  And on the understandable trauma that

12   the tellers themselves felt while they were involved in the

13   bank robbery.  The fact is that those same lines support the

14   statement that Mr. Elawad tried to tell one of the tellers to

15   "Be calm," which is not only not a threatening statement, it's

16   a statement of reassurance.

17        THE COURT:  Did he do anything other than to tell the

18   teller to "Be calm"?

19        MS. FREEMAN:  No, Your Honor.  What Dr. Rosensweig

20   found was that he had a dependent personality fed into by his

21   depression and by his own concerns over the trauma that had

22   occurred earlier.  What Mr. Fidell says from his affidavit --

23   that we did not have at the time Dr. Rosensweig wrote her

24   report, and neither of them have conferred with each other, but

25   I think it actually fits exactly -- is that the Sudanese

1    culture calls on people to be extremely loyal to friends and to

2    respect anyone who is even a day holder than they are.

3         THE COURT:  Why wouldn't that have required him to go

4    to his parents?  Clearly he must have known and was definitely

5    at odds with what his mother and father had taught him.  If the

6    Sudanese culture is as you say, then why wouldn't he have been

7    in particular a person who would not have done this because of

8    his strong ties to his parents and the cultural requirements

9    that he honor his parents and not do what he did?

10         MS. FREEMAN:  He had begun excessive drug use, and

11   that's documented in both the interviews with Dr. Sax and

12   Dr. Rosensweig.

13         Secondly, he perceived Morgan Chikawa (ph.) as not

14   only older but dangerous, and he was afraid of him and felt

15   intimidated by him, and also feared that he would do something

16   to Mr. Elawad's family.

17         THE COURT:  Do I have evidence of Mr. Chikawa (ph.)

18   actually threatening Mr. Elawad's family?

19         MS. FREEMAN:  There are descriptions in

20   Dr. Rosensweig's reports of Chikawa (ph.) threatening Mr.

21   Elawad when he had conversations with his brother of

22   continuously wearing a gun.

23         THE COURT:  Where are these in the report?  What are

24   you talking about?  In the report I have in my hands right now?

25         MS. FREEMAN:  Yes, sir.  On page four, Your Honor, at

```
1    the bottom of the page there's a description of
2    Dr. Rosensweig's report.
3              THE COURT:  I have it right here.  Page four?
4              MS. FREEMAN:  Yes, sir.  At the bottom.
5              THE COURT:  How does the paragraph start?
6              MS. FREEMAN:  The top of that page says, "Defendant's
7    account of events".  And the next to last paragraph talks about
8    an encounter with Mr. Elawad's brother.
9              THE COURT:  It says the same Thursday?
10             MS. FREEMAN:  Yes.  That describes an argument where
11   Chikawa (ph.) gets mad at Malik because he is having an
12   encounter with his brother Hassan.  And then the paragraph
13   after that describes Morgan as "acting crazy and invincible,"
14   "always carried the gun stuck in the waistband of his pants and
15   frequently fingered it."  That Mr. Elawad feared what Mr.
16   Morgan might do to him.
17             He also felt that Morgan Chikawa (ph.) had purposely
18   kept the actual weapon for himself so that Malik Elawad would
19   not have a weapon to defend himself against Chikawa (ph.).
20             In addition, Your Honor, as I believe the Presentence
21   Report states in our sentencing memorandum, it states that Mr.
22   Elawad called his home while they were being sought for the
23   bank robbery, and he called his parents knowing they had caller
24   I D in an attempt to give them information about where he was.
25   And in that conversation he asked for the phone number of a
```

1    friend in Atlanta, which again was another clue to give to his

2    parents that he was in that region.  And as a result, his

3    parents immediately called the F. B. I. and were able to give

4    their approximate location, and it was that phone call that in

5    part led to their being located in the motel in the Atlanta

6    area and captured.

7         Mr. Elawad was in the motel room during the shootout

8    with the police.  Mr. Elawad did not threaten anyone in any way

9    and surrendered peacefully.  All of that, again, I think shows

10   how the fact that he was an exceptional young man, even when

11   present in the midst of this horrifying crime.

12        THE COURT:  Now is there anything to indicate exactly

13   why they decided to commit the robbery?  I understand that the

14   defendant contends that he was not informed they were going to

15   do the robbery until the day of the robbery, is that correct?

16        MS. FREEMAN:  That's correct, Your Honor.

17        THE COURT:  So is there any indication as to exactly

18   what the motive for the robbery was?  Were they out of money?

19   Were they in need of money for drugs?  Is there anything to

20   indicate why?

21        MS. FREEMAN:  There's an indication that Morgan

22   Chikawa (ph.) wanted money; that he was upset for not having as

23   much financial security as he had when he lived in Milowee

24   (ph.).  There really isn't any better explanation than that.

25        There is also certainly a record that Malik had been

1   using drugs nonstop for several days up to and including the

2   day of the robbery.

3         THE COURT:  What's Probation's position on the motion

4   for downward departure?

5         THE PROBATION OFFICER:  Your Honor, we'll defer to

6   the Court, but I would just have the Court consider also that

7   Lieutenant Mark Starling of the Columbus Police Department

8   continues to walk around daily with a bullet that lies in his

9   chest.  And if it moves --

10        THE COURT:  This is because of --

11        THE PROBATION OFFICER:  Because of the incident at

12   the mall.  So his career has been altered.  And he also walks

13   with --

14        THE COURT:  What do you mean?

15        THE PROBATION OFFICER:  He was a detective.  Now his

16   duties have changed.  Because of the incident, he has a sixteen

17   percent disability and he has a bullet lying in his chest that

18   at any time could move.

19        THE COURT:  Where was the defendant when this

20   happened?

21        THE PROBATION OFFICER:  He was with Chikawa (ph.) at

22   the Peach Tree Mall.

23        THE COURT:  Has anyone found out what effect, if any,

24   all of this conduct has had on the tellers?

25        THE PROBATION OFFICER:  I spoke to Mr. Hutchins of

1    Regions Financial Corporation, who informed me that that was
2    something that they handled in-house and I was not allowed to
3    speak with the tellers personally.
4              THE COURT:  Anything else, Counsel?
5              MS. FREEMAN:  No, Your Honor.
6              THE COURT:  Well whatever I decide, one thing is for
7    sure, Mr. Elawad, I'm sure it breaks your parents' hearts that
8    you're involved in this conduct at all.  But I'm sure it's
9    doubly painful because you were so promising.  No question
10   there.  But for this, you had a very promising life ahead of
11   you.
12             Let me just take some time to think about this and
13   I'll let you know something.
14             MS. FREEMAN:  Thank you, Your Honor.
15             (Whereupon, a recess was taken.)
16             THE COURT:  Ms. Freeman, I would like to look at the
17   law on this a little bit more, and I'd like to look at the
18   evidence a little bit more closely.  So I'm going to resume
19   tomorrow at ten o'clock.  Does that pose a problem for you?
20             MS. FREEMAN:  No, Your Honor.  Does the Court wish us
21   to submit any law on five K two?
22             THE COURT:  No.  If you find any this afternoon you
23   can get them to me as well.  We're going to be looking at them
24   too.  Just call us up and tell us what cases you would like us
25   to read.  I don't think you need to give me a memo, but if

1    there are any cases you want me to read, make sure you let us

2    know the citation, and let opposing counsel know, too.

3              MS. FREEMAN:  Yes, sir.

4              THE COURT:  We'll resume tomorrow at ten.

5              (Whereupon, the proceedings were concluded.)

6                        * * * * * * * *

7

8                   COURT REPORTER'S CERTIFICATE

9

10

11       I certify that the foregoing is a correct transcript

12    from the record of proceedings in the above-entitled

13    matter as prepared by me to the best of my ability.

14

15       I further certify that I am not related to any of

16    the parties hereto, nor their counsel, and I have no

17    interest in the outcome of said cause.

18

19       Dated this 27th day of January 2008.

20

21

22                        \s\ Mitchell P. Reisner, CM, CRR
                          MITCHELL  P.  REISNER,  CM,  CRR
23                        Official US Dist. Court Reporter
                          Registered Professional Reporter
24                        Certified  Real-Time  Reporter

25

1                   IN THE UNITED STATES DISTRICT COURT
                             FOR

2               THE MIDDLE DISTRICT OF ALABAMA

3

4

5

6   THE UNITED STATES
      OF AMERICA

7                              CRIMINAL ACTION NO.
        vs.

8                              3:05-CR-121-MHT

9   MALIK ELAWAD

10

11

12

13

14                       VOLUME II OF II

15                  SENTENCING PROCEEDINGS

16

17

18                 *  *  *  *  *  *  *  *  *  *

19

20

21   HEARD BEFORE:       The Hon. Myron H. Thompson

22   HEARD AT:           Montgomery, Alabama

23   HEARD ON:           January 19, 2007

24   APPEARANCES:        Kent Brunson, Esq.

25                    Christine A. Freeman, Esq.



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.  H

```
 1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON.
     MYRON H. THOMPSON ON JANUARY 19, 2007 AT THE UNITED STATES
 2   COURTHOUSE IN MONTGOMERY, ALABAMA:

 3

 4        THE COURT:  The Court calls the case of United States

 5   of America vs. Malik Elawad.  This is a continuation of

 6   sentencing.

 7        The Court has had an opportunity to carefully examine

 8   the record more thoroughly, to do some more research on the

 9   law, and in particular as to the defendant's request for a five

10   K two zero downward departure as well as the Court's own sua

11   sponte consideration as to whether there should be a downward

12   departure braced on duress.  I've looked at the law, and I

13   believe defense counsel has furnished the Court with a number

14   of cases.  And the Court is of the opinion that while it has

15   the authority to depart under five K two point zero, as well as

16   based on duress, the circumstances of this case do not warrant

17   such.

18        So the motion for downward departure by the defendant

19   is denied, and the Court's sua sponte consideration of whether

20   there should be a downward departure based on duress is also

21   denied.

22        We're ready for sentencing.  And my understanding is

23   that I have sustained the plea agreement over Probation's

24   objection, so I believe the offense level should be twenty-two,

25   is that correct, Probation?
```

```
1          THE PROBATION OFFICER:  That's correct, Your Honor.
2          THE COURT:  And the guideline range would therefore
3     be forty-one to fifty-one months rather than fifty-one to
4     sixty-three?
5          THE PROBATION OFFICER:  That's correct, Your Honor.
6          THE COURT:  Would the supervised release period still
7     be three to five years?
8          THE PROBATION OFFICER:  Yes, Your Honor.
9          THE COURT:  And I believe the fine range would then
10    be seven thousand five hundred to seventy-five thousand
11    dollars?
12         THE PROBATION OFFICER:  That's correct, Your Honor.
13         THE COURT:  Will the defendant come forward, then,
14    with Ms. Freeman.
15         Under the plea agreement was there an agreement that
16    the sentencing range for count one would be at the low end of
17    the guideline?
18         MR. BRUNSON:  There was, Your Honor.
19         THE COURT:  Anything else before I announce the
20    proposed sentence?  I'll give the defendant another opportunity
21    to comment before I decide whether to impose the sentence as
22    announced.
23         THE DEFENDANT:  I just want to apologize to the
24    community and to my family and to the Court, and just apologize
25    with remorse.
```

1          THE COURT:  I would say that, Mr. Elawad, in fact I
2    am saying that when you make a mistake, you make a big one,
3    don't you.  But you know that.  The sentence is pretty harsh,
4    I'll have to admit that.  So the issue for you really is not
5    that you're receiving adequate punishment, but rather how
6    you're going to deal with it.

7          You are twenty-one now, is that correct?
8          THE DEFENDANT:  Yes, sir.
9          THE COURT:  So the ten years plus the three
10   and-a-half years I'm giving you on count one means that you'll
11   be in prison until your thirties.  And the question becomes
12   whether you can continue to make something of yourself.  I know
13   at twenty-one that must seem like forever, and for a twenty-one
14   year old it is forever.  Literally half of your life over
15   again.  But you can do it.  You can make it through this, and
16   you can still come out of prison after the thirteen or fourteen
17   years and still make something of yourself.

18         You should consider very carefully the injury you've
19   done to the people who were in the bank.  I think I can pretty
20   reasonably conclude that for them it's an experience that they
21   will never forget, and in particular the woman that you
22   confronted.  If there is anything you can do to make up for
23   that, I think it would be good for you.  But after the thirteen
24   or fourteen years when you come out, you still have quite a bit
25   of your life ahead of you, and you can do something with it.

```
1              Now your family is now in where?
2              MS. FREEMAN:  They're in Columbus, Your Honor.
3              THE COURT:  I'm going to recommend that you be placed
4    at a facility near your family.  Where would that be?
5              MS. FREEMAN:  Your Honor, there are facilities in
6    northern Alabama and in northern Florida.
7              THE COURT:  So what would be the recommendation; to
8    say that he be placed as near as possible to a facility near
9    Columbus, Georgia.  Is that what I should say?
10             MS. FREEMAN:  They're actually in Phenix City.
11             THE PROBATION OFFICER:  As close as possible.
12             THE COURT:  As close as possible to Phenix City?
13             THE PROBATION OFFICER:  That's correct.
14             MS. FREEMAN:  Your Honor, his parents are en route
15   right now.  They're about five minutes away from the
16   courthouse.
17             THE COURT:  I'm going to continue sentencing until
18   his folks are here.  I want them here.
19             MS. FREEMAN:  Thank you, Your Honor.
20             (Whereupon, a recess was taken.)
21             THE COURT:  Where are his parents?
22             MS. FREEMAN:  Right there.
23             THE COURT:  They can come forward too if they want.
24             This is Mr. and Mrs. Elawad?
25             MS. FREEMAN:  Yes, Your Honor.
```

1         THE COURT:  As I was telling your son, he made an

2  awful mistake, but it's not the end of his life and I am sure

3  that you two will be there for him over the next thirteen or

4  fourteen years.  It's a long time for him, but I'm sure he'll

5  be there.

6         THE DEFENDANT'S FATHER:  Definitely, Your Honor.

7  Thank you very much.

8         THE COURT:  So are you ready for me to announce the

9  proposed sentence?

10        MS. FREEMAN:  Yes, Your Honor.

11        THE COURT:  In compliance with the opinion in *United*

12  *States vs. Booker*, the Court, while not bound to apply the

13  guidelines, has consulted them and has taken them into account

14  on the issue of the appropriate range of sentence to be imposed

15  in this case.  Having made findings as to the objections to the

16  *Presentence Report*, the Court adopts the factual statements

17  contained in the report with specific findings that the offense

18  level is twenty-two, the criminal history category is one, the

19  guideline range is from forty-one to fifty-one months, the

20  supervised release period is three to five years, and the fine

21  range is from seven thousand five hundred to seventy-five

22  thousand dollars.

23        The Court, having considered and consulted the

24  sentencing guidelines and evaluated the reasonableness of a

25  sentence through the lens of Title Eighteen United States Code,

1   Section three five five three, it is the order, judgment and

2   decree of the Court that the defendant, Malik Elawad, be

3   imprisoned for a total term of one hundred and sixty-one

4   months.  The term consists of forty-one months on count one and

5   one hundred and twenty months on count two, to be served

6   consecutively to count one.

7          It is further ordered that upon release from

8   imprisonment the defendant shall be placed on supervised

9   release for a term of three years.  Within seventy-two hours of

10  release from custody he shall report to the probation office in

11  the district in which he is released.  While on supervised

12  release he shall comply with the mandatory and standard

13  conditions of supervised release on file with the Court.

14         The Court also orders the following special

15  conditions.  The defendant shall participate in drug testing

16  and drug treatment.  He shall contribute to the cost of any

17  treatment based on his ability to pay and the availability of

18  third party payments.

19         He shall submit to a search of his person, residence,

20  office and vehicle pursuant to the search policy of the Court.

21         He shall cooperate in the collection of D N A.

22         He shall pay to the United States District Court

23  Clerk a special assessment fee of two hundred dollars which is

24  due immediately.

25         It is further ordered that he shall make restitution

1   to Regions Financial Corporation, care of Chris E. Huchins,

2   Twenty-five Washington avenue, first floor, Montgomery,

3   Alabama, three six one oh four.  In case number zero five

4   fourteen twenty-three in the amount of one thousand seven

5   hundred ninety-six dollars and sixty-six cents which is due

6   immediately.  Any balance remaining at the start of supervision

7   shall be paid at the rate of one hundred dollars a month.

8   Because of his inability to pay, the Court waives the

9   imposition of a fine.

10          The Court also recommends to the prison -- to the

11   United States Bureau of Prisons that he be placed in a facility

12   as near as possible to Phenix City, Alabama so that he can be

13   near his parents.

14          Could I see Ms. Freeman and Mr. Brunson for just a

15   second.

16          (Whereupon, an off-the-record bench conference

17   between both counsel and the Court was held.)

18          THE COURT:  It is further recommended that he be

19   placed in a facility where he can receive drug treatment and

20   mental health treatment.

21          Now I ask you at this time, Mr. Elawad, are there any

22   objections to the sentence imposed or to the manner in which

23   the Court pronounced it, other than those objections previously

24   stated for the record?  For example, do you have any objection

25   to the Court's ultimate findings of facts and conclusions of

```
 1   law?  Furthermore, you are instructed that if you have an
 2   objection, you must not only state the objection you must give
 3   the grounds for the objection.
 4              THE DEFENDANT:  I have no objection.
 5              THE COURT:  Do you have anything to say as to why
 6   this sentence as announced should not be imposed, or do you
 7   have anything to say in mitigation of the sentence?
 8              THE DEFENDANT:  I just want to apologize to the Court
 9   and to my family,  to my Mom and Dad and my brothers and the
10   community, to the victims.  And I've really gone through
11   something and I understand fully and just apologize.
12              THE COURT:  It is the order, judgment and decree of
13   the Court that the sentence as announced is hereby imposed.
14              Now to the extent that you still have a right to
15   appeal, you have ten days to file any notice of appeal.  If you
16   cannot afford the cost of an appeal the Court will allow you to
17   appeal at no cost, including furnishing you with a free
18   transcript and a free attorney.
19              Anything else, Counsel?
20              MS. FREEMAN:  No, Your Honor.
21              MR. BRUNSON:  Not from the Government.
22              THE COURT:  You are in the custody of the marshal.
23   Court's in recess.
24              (Whereupon, the proceedings were concluded.)
25                        *  *  *  *  *  *  *
```

COURT REPORTER'S CERTIFICATE


     I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled

matter as prepared by me to the best of my ability.


     I further certify that I am not related to any of

the parties hereto, nor their counsel, and I have no

interest in the outcome of said cause.


     Dated this 27th day of January 2008.



                         \s\ Mitchell P. Reisner, CM, CRR
                         MITCHELL   P.   REISNER,   CM,   CRR
                         Official US Dist. Court Reporter
                         Registered Professional Reporter
                         Certified   Real-Time   Reporter

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500